# EXHIBIT 1

Eugene F. Jarrell, III, Esq.
334 W. Front Street
Media, PA 19063

0800234618 0078



1000

08002



U.S. POSTAGE PAID
FCL LETTER
MEDIA, PA
19063
FEB 18, 21
AMOUNT
$0.95
R2304E106777-08

David S. Neufeld, Esquire
Flaster Greenberg PC
1810 Chapel Avenue West
Cherry Hill, NJ 08002

MEDIA PA 19063-9998
FEB 18 2021
USPS

# EUGENE F. JARRELL, III

ATTORNEY AT LAW
334 W. FRONT STREET
MEDIA, PENNSYLVANIA 19063

———

(610) 565-6130
efjarrell@gmail.com

February 18, 2021

Virginia Palusky
111 N.W. 6th Street
Delray Beach, FL

**RE: Bodo Family LLC t/a Bodo Family of Media Limited Partnership, et. al. v. Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, et. al., Del. Co. CCP No. CV-2021-001678**

Dear Ms. Palusky:

Enclosed is the Writ of Summons issued against you as personal representative of the Estate of Brooke Powell Cottman, and individually, in the Court of Common Pleas of Delaware County, Pennsylvania.

Please bring this Writ to the attention of your legal representatives.

Sincerely,

Eugene F. Jarrell, III

EFJ/sb
cc:    David S. Neufeld, Esquire

# EUGENE F. JARRELL, III
ATTORNEY AT LAW
334 W. FRONT STREET
MEDIA, PENNSYLVANIA  19063

———

(610) 565-6130
efjarrell@gmail.com

February 18, 2021

Cynthia Cottman
254 Stanwich Road
Greenwich, CT 06830

**RE: Bodo Family LLC t/a Bodo Family of Media Limited Partnership, et. al. v. Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, et. al., Del. Co. CCP No. CV-2021-001678**

Dear Ms. Cottman:

Enclosed is the Writ of Summons issued against you as personal representative of the Estate of Brooke Powell Cottman, and individually, in the Court of Common Pleas of Delaware County, Pennsylvania.

Please bring this Writ to the attention of your legal representatives.

Sincerely,

Eugene F. Jarrell, III

EFJ/sb
cc:     David S. Neufeld, Esquire

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION-LAW

Bodo Family, LLC t/a Bodo Family of
Media Limited Partnership, directly and derivatively on
behalf of Media Station, Inc. t/a Media Station, L.P.,    :
Tunbridge, Inc. t/a Tunbridge, L.P., and Scarborough      :    No. CV-2021- 00 1 6 7 8
Mews, Inc. t/a Scarborough Mews, L.P.                     :    Filed
          Plaintiffs                                 2-16-2024

v.                                                             3:15 PM

Cynthia Cottman aka Cindy Cottman and Virginia Palusky :      Jury Trial Demanded    OJS
aka Virginia Powell Cottman Palusky as personal
representatives of the Estate of Brooke Powell Cottman, et. al.
**(See attached List of Defendants)**
          Defendants

**PRAECIPE FOR WRIT OF SUMMONS**

TO THE OFFICE OF JUDICIAL SUPPORT:

Issue summons in the civil action in the above case and forward to ( ) Sheriff or (X) Attorney.

          /s/ *Eugene F. Jarrell, III*
          Signature of Attorney / Pro Se
          Eugene F. Jarrell, III
          334 W. Front Street
          Media, PA 19063
          610-565-7070
          efjarrell@gmail.com
          Name/Address/Telephone Number of Attorney/Pro Se

Date:  February 16, 2021          Attorney Supreme Court ID Number 34748

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**WRIT OF SUMMONS IN CIVIL ACTION**

TO: Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman
Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family,
LLC t/a Cottman Family, LP., Cynthia Cottman aka Cindy Cottman, Virginia Powell Cottman
Palusky, Media Station, Inc. t/a Media Station, L.P., Tunbridge, Inc. t/a Tunbridge, L.P., and
Scarborough Mews, Inc. t/a Scarborough Mews, L.P.

YOU ARE NOTIFIED THAT THE ABOVE-NAMED PLAINTIFF(S) HAS/HAVE
COMMENCED AN ACTION AGAINST YOU.

Date: 2-16-2020

          Mary L. Walk, Esquire Director
          Office of Judicial Support

          ISSUED
          02-16-2021 03:41 PM
          OFFICE OF JUDICIAL SUPPORT
          DELAWARE COUNTY, PA

By

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CIVIL ACTION-LAW

Bodo Family, LLC t/a Bodo Family of Media Limited   :
Partnership, directly and derivatively on behalf of
Media Station, Inc. t/a Media Station, a limited partnership, :
Tunbridge, Inc. t/a Tunbridge, a limited partnership, and
Scarborough Mews, Inc. t/a Scarborough Mews, a limited   :    No. CV-2021- *001678*
partnership
202 Coventry Lane   :
Media, PA 19063

                 :

           Plaintiffs

                 :

      v.

                 :

Cynthia Cottman aka Cindy Cottman and Virginia Palusky
aka Virginia Powell Cottman Palusky as personal
representatives of the Estate of Brooke Powell Cottman,   :
254 Stanwich Road
Greenwich, CT 06830   :

                 :

Cottman Family, LLC t/a Cottman Family Limited   :
Partnership,
340 Media Station Road   :
Media, PA 19063

                 :

Cynthia Cottman aka Cindy Cottman,
254 Stanwich Road   :
Greenwich, CT 06830

                 :

Virginia Powell Cottman Palusky,
111 N.W. 6th Street   :
Delray Beach, FL

                 :

Media Station, Inc. t/a Media Station, a limited partnership,
340 Media Station Road
Media, PA 19063   :

Tunbridge, Inc. t/a Tunbridge, a limited partnership, and   :
340 Media Station Road
Media, PA 19063   :

Scarborough Mews, Inc. t/a Scarborough Mews, a limited   :
partnership
340 Media Station Road                                   :
Media, PA 19063
                          Defendants

## Supreme Court of Pennsylvania

### Court of Common Pleas
### Civil Cover Sheet

___DELAWARE___ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: CV-2021-001678 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S
E
C
T
I
O
N

A**

**Commencement of Action:**
- [ ] Complaint
- [x] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

Lead Plaintiff's Name:
Bodo Family LLC t/a Bodo Family of Media Limited Partn

Lead Defendant's Name:
Cynthia Cottman and Virgina Palusky pers. rep of Est. B

**Are money damages requested?** [x] Yes  [ ] No

Dollar Amount Requested: (check one)
- [ ] within arbitration limits
- [x] outside arbitration limits

**Is this a *Class Action Suit?*** [ ] Yes  [x] No

**Is this an *MDJ Appeal?*** [ ] Yes  [x] No

Name of Plaintiff/Appellant's Attorney:  Eugene F. Jarrell, III

- [ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**S
E
C
T
I
O
N

B**

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort*)
- [ ] Slander/Libel/ Defamation
- [x] Other:
  Breach of Fiduciary Duty

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other:

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

*Updated 1/1/2011*

# EXHIBIT 2

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**
By: Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8ᵗʰ Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                                    *Attorney for Defendant,*
mhaltzman@sanddlawyers.com                        *Cottman Family, LLC*

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA**

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

**PRAECIPE FOR RULE TO FILE COMPLAINT**

**TO THE OFFICE OF JUDICIAL SUPPORT:**

Pursuant to Pa.R.C.P. 1037(a), on behalf of Defendant Cottman Family, LLC t/a Cottman Family Limited Partnership, please issue a Rule upon Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership to file a Complaint within twenty (20) days hereof or suffer the entry of Judgment of Non Pros.

                                    **SILVERANG, ROSENZWEIG
                                    & HALTZMAN, LLC**

Dated: February 25, 2021          By:    /s/ Mark S. Haltzman
                                         Mark S. Haltzman, Esquire
                                         PA Atty. ID No. 38957

{01335832;1}                        1

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

## <u>RULE TO FILE COMPLAINT</u>

AND NOW,  this _____ day of _____, 2021, a Rule is hereby entered upon Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership to file a Complaint within twenty (20) days after service hereof or suffer the entry of Judgment of Non Pros pursuant to Pa.R.C.P. 1037(a).


_____
**OFFICE OF JUDICIAL SUPPORT**

{01335832;1}

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                          *Attorney for Defendants,*
mhaltzman@sanddlawyers.com     *Cottman Family, LLC*

### IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below the attached *Praecipe for Rule to File Complaint,* was served via the Court's ECF system and U.S. First Class Mail according to the Pennsylvania Rules of Civil Procedure, on all parties and/or counsel of record as follows:

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063
*Attorney for Plaintiffs*

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**

Dated:  February 25, 2021          By:    /s/ Mark S. Haltzman
                                                Mark S. Haltzman, Esquire
                                                PA Atty. ID No. 38957

{01335832;1}                    1

# EXHIBIT 3

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                                    *Attorney for Defendant,*
mhaltzman@sanddlawyers.com                        *Cottman Family, LLC*

### IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

### PRAECIPE TO ENTER JUDGMENT OF NON PROS

TO THE PROTHONOTARY:

Kindly enter a Judgment of Non Pros in favor of Defendant Cottman Family, LLC t/a Cottman

Family Limited Partnership ("Cottman Family, LLC") and against Plaintiffs Bodo Family, LLC t/a Bodo

Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media

Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews,

Inc. t/a Scarborough Mews, a limited partnership ("Plaintiffs") for failure to file a Complaint in the above-

captioned matter.

A Writ of Summons was issued on behalf of the Plaintiffs against Defendants on or about

February 18, 2021.  A true and correct copy of the Writ of Summons is hereto attached as

**Exhibit 1**.

{01348320;1}

A Rule to File Complaint was issued and served upon the Plaintiffs on February 25, 2021 pursuant to Pa.R.C.P. 1037(a).  A true and correct copy of the Rule to File Complaint is attached hereto as **Exhibit 2**.

Plaintiffs failed to file a Complaint within twenty (20) days of the issuance of the Rule to File Complaint.

After the passage of such twenty (20) days from the issuance of such rule without the filing of a complaint, i.e. on or before March 17, 2021, notice pursuant to Pa.R.C.P. 237.4 was served upon Plaintiffs and their counsel on March 19, 2021.  A true and correct copy of that notice is attached hereto as **Exhibit 3.**

More than 10 days have now passed since service of the notice pursuant to Rule 237.4, however, no Complaint has been filed by Plaintiffs in this action against Defendants.

Pursuant to Pa.R.Civ.P. 1037(a), kindly enter Judgment Non Pros against Plaintiffs and in favor of Defendant Cottman Family, LLC t/a Cottman Family Limited Partnership in the above-captioned action for failure to file a Complaint, in the form attached.

Respectfully submitted,

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**

Date: March 30, 2021        By:    /s/ Mark S. Haltzman
                                     Mark S. Haltzman, Esquire
                                     WOODLANDS CENTER
                                     900 East 8th Avenue, Suite 300
                                     King of Prussia, PA 19406
                                     (610) 263-0115
                                     *Attorney for Defendant,*
                                     *Cottman Family, LLC*

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA**

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

## JUDGMENT OF NON PROS

AND NOW, this _____ day of _____, 2021, Judgment is hereby entered against Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership and in favor of Defendant, Cottman Family, LLC t/a Cottman Family Limited Partnership ("Plaintiffs") for failure to file a Complaint within twenty (20) days of service of a Rule pursuant to Pa.R.Civ.P. 1037(a), and within ten (10) days of service of a Rule 237.4 Notice, dismissing with prejudice the above-captioned action and forever barring any further action by Plaintiffs and against Defendants under or related to this action which is the subject of the above-captioned case.

PROTHONOTARY


By: _____

# EXHIBIT 1

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION-LAW

Bodo Family, LLC t/a Bodo Family of
Media Limited Partnership, directly and derivatively on
behalf of Media Station, Inc. t/a Media Station, L.P.,
Tunbridge, Inc. t/a Tunbridge, L.P., and Scarborough
Mews, Inc. t/a Scarborough Mews, L.P.
         Plaintiffs

       v.

Cynthia Cottman aka Cindy Cottman and Virginia Palusky :
aka Virginia Powell Cottman Palusky as personal
representatives of the Estate of Brooke Powell Cottman, et. al.
**(See attached List of Defendants)**
         Defendants

No. CV-2021- OO 1 6 7 8
Filed
2-16-2021
3:15 PM
Jury Trial Demanded   OJS

**PRAECIPE FOR WRIT OF SUMMONS**

TO THE OFFICE OF JUDICIAL SUPPORT:

Issue summons in the civil action in the above case and forward to ( ) Sheriff or (X) Attorney.

        */s/ Eugene F. Jarrell, III*
        Signature of Attorney / Pro Se
        Eugene F. Jarrell, III
        334 W. Front Street
        Media, PA 19063
        610-565-7070
        efjarrell@gmail.com
        Name/Address/Telephone Number of Attorney/Pro Se

Date:__February 16, 2021__    Attorney Supreme Court ID Number 34748_____

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**WRIT OF SUMMONS IN CIVIL ACTION**

TO: Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman
Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family,
LLC t/a Cottman Family, LP., Cynthia Cottman aka Cindy Cottman, Virginia Powell Cottman
Palusky, Media Station, Inc. t/a Media Station, L.P., Tunbridge, Inc. t/a Tunbridge, L.P., and
Scarborough Mews, Inc. t/a Scarborough Mews, L.P.

YOU ARE NOTIFIED THAT THE ABOVE-NAMED PLAINTIFF(S) HAS/HAVE
COMMENCED AN ACTION AGAINST YOU.

Date: 2-16-2020

                Mary L. Walk, Esquire Director
                Office of Judicial Support

                             ISSUED
                          02-16-2021 03:41 PM
                          OFFICE OF JUDICIAL SUPPORT
                          DELAWARE COUNTY, PA
              By

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

Bodo Family, LLC t/a Bodo Family of Media Limited :
Partnership, directly and derivatively on behalf of
Media Station, Inc. t/a Media Station, a limited partnership, :
Tunbridge, Inc. t/a Tunbridge, a limited partnership, and
Scarborough Mews, Inc. t/a Scarborough Mews, a limited :      No. CV-2021- *001678*
partnership
202 Coventry Lane                                            :
Media, PA 19063

                                                             :

                    Plaintiffs

                                                             :

          v.

                                                             :

Cynthia Cottman aka Cindy Cottman and Virginia Palusky
aka Virginia Powell Cottman Palusky as personal
representatives of the Estate of Brooke Powell Cottman,      :
254 Stanwich Road
Greenwich, CT 06830                                          :

                                                             :

Cottman Family, LLC t/a Cottman Family Limited               :
Partnership,
340 Media Station Road                                       :
Media, PA 19063

                                                             :

Cynthia Cottman aka Cindy Cottman,
254 Stanwich Road                                            :
Greenwich, CT 06830

                                                             :

Virginia Powell Cottman Palusky,
111 N.W. 6th Street                                          :
Delray Beach, FL

                                                             :

Media Station, Inc. t/a Media Station, a limited partnership,
340 Media Station Road
Media, PA 19063                                              :

Tunbridge, Inc. t/a Tunbridge, a limited partnership, and    :
340 Media Station Road
Media, PA 19063                                              :

Scarborough Mews, Inc. t/a Scarborough Mews, a limited    :
partnership
340 Media Station Road                                    :
Media, PA 19063
                     Defendants

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ DELAWARE _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: CV-2021-001678 | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- [ ] Complaint
- [X] Writ of Summons
- [ ] Transfer from Another Jurisdiction
- [ ] Petition
- [ ] Declaration of Taking

| Lead Plaintiff's Name: Bodo Family LLC t/a Bodo Family of Media Limited Partne | Lead Defendant's Name: Cynthia Cottman and Virgina Palusky pers. rep of Est. B |
|---|---|
| **Are money damages requested?** [X] Yes [ ] No | Dollar Amount Requested: (check one) [ ] within arbitration limits [X] outside arbitration limits |
| **Is this a *Class Action Suit*?** [ ] Yes [X] No | **Is this an *MDJ Appeal*?** [ ] Yes [X] No |

Name of Plaintiff/Appellant's Attorney: Eugene F. Jarrell, III

- [ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability *(does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [X] Other:
  Breach of Fiduciary Duty

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other: _____

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional: _____

**CONTRACT** *(do not include Judgments)*
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other

- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other

- [ ] Other: _____

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [ ] Other: _____

**CIVIL APPEALS**
Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other

- [ ] Zoning Board
- [ ] Other: _____

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [ ] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other: _____

*Updated 1/1/2011*

# EXHIBIT 2

**SILVERANG, ROSENZWEIG
& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                          *Attorney for Defendant,*
mhaltzman@sanddlawyers.com      *Cottman Family, LLC*

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA**

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

**PRAECIPE FOR RULE TO FILE COMPLAINT**

**TO THE OFFICE OF JUDICIAL SUPPORT:**

Pursuant to Pa.R.C.P. 1037(a), on behalf of Defendant Cottman Family, LLC t/a Cottman Family Limited Partnership, please issue a Rule upon Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership to file a Complaint within twenty (20) days hereof or suffer the entry of Judgment of Non Pros.

                          **SILVERANG, ROSENZWEIG
                          & HALTZMAN, LLC**

Dated:  February 25, 2021          By:    /s/ Mark S. Haltzman
                                   Mark S. Haltzman, Esquire
                                   PA Atty. ID No. 38957

{01335832;1}                    1

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA**

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

## <u>RULE TO FILE COMPLAINT</u>

AND NOW,  this _____ day of _____, 2021, a Rule is hereby entered upon Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership to file a Complaint within twenty (20) days after service hereof or suffer the entry of Judgment of Non Pros pursuant to Pa.R.C.P. 1037(a).

_____
**OFFICE OF JUDICIAL SUPPORT**

{01335832;1}

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                              *Attorney for Defendants,*
mhaltzman@sanddlawyers.com                  *Cottman Family, LLC*

### IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below the attached *Praecipe for Rule to File Complaint,* was served via the Court's ECF system and U.S. First Class Mail according to the Pennsylvania Rules of Civil Procedure, on all parties and/or counsel of record as follows:

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063
*Attorney for Plaintiffs*

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**

Dated:  February 25, 2021        By:    /s/ Mark S. Haltzman
                                        Mark S. Haltzman, Esquire
                                        PA Atty. ID No. 38957

FILED
02-25-2021 02:36 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| BODO FAMILY, LLC<br>t/a BODO FAMILY OF MEDIA<br>LIMITED PARTNERSHIP, ET AL.<br><div align="right">*Plaintiffs,*</div> | : <br> : <br> : <br> : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| and | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal**<br>**representatives of the Estate of**<br>**Brooke Powell Cottman, ET AL.**<br><div align="right">*Defendants.*</div> | : <br> : <br> : <br> : | |

## RULE TO FILE COMPLAINT

AND NOW,  this  *25th* day of *February*    ,  2021, a Rule is hereby entered

upon Plaintiffs Bodo Family, LLC t/a Bodo Family Media Limited Partnership, directly and

derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge,

Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a

limited partnership to file a Complaint within twenty (20) days after service hereof or suffer the

entry of Judgment of Non Pros pursuant to Pa.R.C.P. 1037(a).

*Mary J. Walk*

**OFFICE OF JUDICIAL SUPPORT**

{01335832;1}



US POSTAGE
$01.20⁰
First-Class
Mailed From 19406
02/25/2021
032A 006184459³

OSENZWEIG
& HALTZMAN, LLC
ATTORNEYS AT LAW

ds Center
8th Avenue
Prussia, PA 19406

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063

# EXHIBIT 3

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                                              *Attorney for Defendant,*
mhaltzman@sanddlawyers.com                      *Cottman Family, LLC*

<div align="center">

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA**

</div>

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

**TO:**

| | |
|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership 202 Coventry Lane Media, PA 19063 | Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership Eugene F. Jarrell, III, Esquire Attorney at Law 334 W. Front Street Media, PA 19063 *Attorney for Plaintiffs* |

**DATE OF NOTICE:**  March 19, 2021

<div align="center">

**IMPORTANT NOTICE**
**PURSUANT TO PENNSYLVANIA RULE OF**
**CIVIL PROCEDURE 237.4**

</div>

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO FILE A COMPLAINT IN THIS CASE. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR RIGHT TO SUE THE DEFENDANT AND THEREBY LOSE PROPERTY OR OTHER IMPORTANT RIGHTS.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyers' Referral Service**
**Delaware County**
**Front and Lemon Streets**
**Media, PA 19063**
**(610) 566-6625**
**TTY (215) 451-6197**

**SILVERANG, ROSENZWEIG**
**& HALTZMAN LLC**

By: _____

Mark S. Haltzman, Esquire
Attorney ID No.: 238957
Woodlands Center
900 East 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115
*Attorneys for Defendant, Cottman Family,*
*LLC t/a Cottman Family Limited*
*Partnership*

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                               *Attorney for Defendant,*
mhaltzman@sanddlawyers.com          *Cottman Family, LLC*

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below the attached *10 day notice* and this *Certificate of Service,* was served pursuant to Pennsylvania Rules of Civil Procedure 237.4 via First Class Mail, upon the following:

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063
*Attorney for Plaintiffs*

Bodo Family, LLC
202 Coventry Lane
Media, PA 19063

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**

Date: March 19, 2021              By:     /s/ Mark S. Haltzman
                                                Mark S. Haltzman, Esquire
                                                Attorney ID No. 38957

{01344424;2}

SILVERANG
ROSENZWEIG
& HALTZMAN, LLC
———— ATTORNEYS AT LAW

Woodlands Center
900 East 8th Avenue
Suite 300
King of Prussia, PA 19406

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063



Mailed From 19406
03/19/2021
032A 006184593

US POSTAGE
$00.51⁹
First-Class

SILVERANG
ROSENZWEIG
& HALTZMAN, LLC

———— ATTORNEYS AT LAW

Woodlands Center
900 East 8th Avenue
Suite 300
King of Prussia, PA 19406

Bodo Family, LLC
202 Coventry Lane
Media, PA 19063



US POSTAGE
$00.51⁹
First-Class

Mailed From 19406
03/19/2021
032A 0061844593

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
By:  Mark S. Haltzman, Esquire
PA Atty. ID No. 38957
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
(610) 263-0115                                           *Attorney for Defendants,*
mhaltzman@sanddlawyers.com                    *Cottman Family, LLC*

### IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PA

| | | |
|---|---|---|
| **BODO FAMILY, LLC** | : | |
| **t/a BODO FAMILY OF MEDIA** | : | |
| **LIMITED PARTNERSHIP, ET AL.** | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **DOCKET NO. CV-2021-001678** |
| | : | |
| **CYNTHIA COTTMAN** | : | |
| | : | |
| **and** | : | |
| | : | |
| **VIRGINIA PALUSKY, as personal** | : | |
| **representatives of the Estate of** | : | |
| **Brooke Powell Cottman, ET AL.** | : | |
| *Defendants.* | : | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date set forth below the attached *Praecipe to Enter Judgment of Non Pros,* was served via the Court's ECF system and U.S. First Class Mail according to the Pennsylvania Rules of Civil Procedure, on all parties and/or counsel of record as follows:

Eugene F. Jarrell, III, Esquire
Attorney at Law
334 W. Front Street
Media, PA 19063
*Attorney for Plaintiffs*

**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**

Dated:  March 30, 2021                  By:      /s/ Mark S. Haltzman
                                                            Mark S. Haltzman, Esquire
                                                            PA Atty. ID No. 38957

{01348320;1}

# EXHIBIT 4

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA OFFICE OF JUDICIAL SUPPORT

## RULE OF CIVIL PROCEDURE NO. 236

Bodo Family LLC t/a Bodo Family of Media Limited
Partnership directly and derivatively on behalf of Media
Station Inc t/a Media Station LP Turnbridge Inc t/a
Turnbridge LP Scarborough Mews Inc t/a Scarborough
Mews Lp,

      Plaintiff                                                                 No. CV-2021-001678

v.

Cynthia Cottman Aka Cindy Cottman personal
representatives of the Estate of Brooke Powell Cottman
et al,

      Defendant.


NOTICE IS GIVEN UNDER PENNSYLVANIA RULE OF CIVIL PROCEDURE NO. 236 THAT A

JUDGMENT IN THE ABOVE CASE HAS BEEN ENTERED ON 03-31-2021.


                        SIGNED       2021-03-31

                        PER          Office of Judicial Support


### TIME AND LEGAL LIABILITY DO NOT PERMIT THE OFFICE OF JUDICIAL SUPPORT TO GIVE DOCKET INFORMATION BY TELEPHONE.
### NO EXCEPTIONS!

#### PUBLIC ACCESS INFORMATION:  www.co.delaware.pa.us

CC: JARRELL III,  EUGENE F, Cynthia Cottman Aka Cindy Cottman personal representatives
of the Estate of Brooke Powell Cottman, Virginia Palusky, Aka Virginia Powell Cottman Palusky
Personal Representative Of The Estate Of Brooke Powell Cottman, Cynthia Cottman Aka Cindy
Cottman, Virginia Powell Cottman Palusky, Media Station Inc t/a Media Station a limited
partnership, Tunbridge Inc t/a Tunbridge a limited partnership, Scarborough Mews inc t/a
Scarborough Mews a limited partnership, HALTZMAN,  MARK S


HALTZMAN,  MARK S  CV-2021-001678
595 E LANCASTER AVENUE
SUITE 203
ST DAVIDS PA 19087-0000

FILED
03-31-2021 11:30 AM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

# EXHIBIT 5

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

### COVER SHEET - NOTICE OF FILING OF MOTION OR PETITION UNDER
### LOCAL RULES OF CIVIL PROCEDURE

CASE CAPTION:                                                    CIVIL CASE NO.

Bodo Family LLC et al v. Cynthia Cottman, et al          CV-2021-001678

NATURE OF MATTER FILED: (*please check one*)

☑ Petition Pursuant to Rule 206.1      ☐ Response to Petition      ☐ Motion for Judgment on the
                                                                      Pleadings Pursuant to Rule 1034(a)

☐ Motion Pursuant to Rule 208.1       ☐ Response to Motion       ☐ Summary Judgment
                                                                      Pursuant to Rule 1035.2

☐ Family Law Petition/Motion Pursuant to Rule 206.8

## FILING PARTY IS RESPONSIBLE FOR SERVICE OF THE RULE RETURNABLE
## DATE OR HEARING DATE UPON <u>ALL</u> PARTIES

A motion or petition was filed in the above captioned matter on the 12th day of April , 2021 , which:

☑ Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk the entry of an Order in favor of the Petitioner.  Answers must be filed and time stamped by the Office of Judicial Support by 4:30 PM on the following date May 1 , 2021 .

___

☐ Requires all parties, to appear at a hearing/conference on the ____ day of _____, _____, at _____ in Courtroom ____, Delaware County Courthouse, Media, Pennsylvania.  At this hearing/conference you must be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

___

☐ Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter on: _____ _____, _____ at 10:00 AM in Courtroom _____.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that their witnesses will be present**.

___

☐ Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent nor the scheduling of a hearing in this matter.

___

☐ Has been assigned to Judge _____.

___

### FOR OFFICE USE ONLY

Mailing date: _____          Processed by: _____

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership | : : : : | No. CV-2021-001678 |
| Plaintiffs | : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as Personal representatives of the Estate of Brooke Powell Cottman; | : : : | |
| Cottman Family, LLC t/a Cottman Family Limited Partnership, et al. | : | |
| Defendants | : | |

## ORDER

ORDER, Now this            day of            2021, upon Plaintiffs' Petition to Open Judgment of Non Pros Pursuant to Pa.R.C.P. 237.3, and any response thereto, and said Petition being filed within 10 days after entry of a Judgment of Non Pros on the docket, the Court hereby ORDERS and DECREES that the Judgment of Non Pros is hereby OPENED.  Plaintiffs shall file the proposed Complaint within 10 days of notice of this Order.

By the Court:

_____
                                                                                           J.

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership | : : : | No. CV-2021-001678 |
| Plaintiffs | : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as Personal representatives of the Estate of Brooke Powell Cottman; | : : : | |
| Cottman Family, LLC t/a Cottman Family Limited Partnership, et al. | : | |
| Defendants | : | |

## PLAINTIFFS' PETITION TO OPEN JUDGMENT OF NON PROS PURSUANT TO PA.R.C.P. 237.3

1.      Petitioners Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership are Plaintiffs in the above caption action.

2.      Respondents are Defendants Cottman Family, LLC trading as Cottman Family Limited Partnership, and the remaining Defendants.

3.      On February 16, 2021, Plaintiffs, by and through their attorney Eugene F. Jarrell, III, initiated an action against the Respondents/Defendants by Praecipe for Writ of Summons.

4.    A Writ of Summons in Civil Action was issued against all the above named Defendants by the appropriate representative of the Office of Judicial Support on February 16, 2021.

5.    Plaintiffs' counsel's name, address, telephone number, email address and attorney I.D. number were set forth in the Praecipe for Writ of Summons.

6.    Plaintiffs' counsel has been a registered attorney with the Delaware County efile system since at least 2018 through the present.

7.    On or about February 25, 2021, attorney Mark S. Haltzman, Esquire entered his appearance on behalf of "Defendant, Cottman Family, LLC t/a Cottman Family Limited Partnership".

8.    On or about February 25, 2021, attorney Haltzman filed a Praecipe for Rule to File a Complaint which resulted in a Rule being issued upon Plaintiffs to file a Complaint.

9.    Plaintiffs counsel, Eugene F. Jarrell, III, Esquire, despite being registered with the Delaware County efile system and being identified by name, address, telephone number, email address and attorney I.D. number on the Praecipe for Writ of Summons, did not receive an email from the Delaware County efile system of attorney Haltzman's Entry of Appearance, Praecipe for Rule to File a Complaint or Rule to File a Complaint to any of the email addresses registered with the Delaware County efile system, specifically efjarrell@gmail.com, ef.jarrell@verizon.net and gene.jarrel@gmail.com.

10.    Although attorney Haltzman separately certified that the Entry of Appearance, Praecipe for Rule to File a Complaint and Rule to File a Complaint were served by U.S. first class mail to Eugene F. Jarrell, III, Esquire at his address identified on the Praecipe for Writ of Summons, attorney Jarrell did not receive the Entry of Appearance, Praecipe for Rule to File a Complaint and Rule to File a Complaint purportedly mailed to attorney Jarrell.

11.     On March 31, 2021, attorney Haltzman filed a Praecipe to Enter Judgment Non Pros which resulted in a Judgment of Non Pros being entered against Petitioners/Plaintiffs.

12.     Counsel for Plaintiffs Eugene F. Jarrell, III, Esquire did not receive the Praecipe to Enter Judgment of Non Pros or any of its accompanying exhibits or other filings from the Delaware County efile system to any of his registered email addresses.

13.     Attached to the Praecipe to Enter Judgment filed by attorney Haltzman included a certification that a 10-day notice of intent to enter a Judgment of Non Pros along with the certificate of service was served by first class mail to Plaintiffs' counsel Eugene F. Jarrell, III, Esquire and Bodo Family, LLC on March 19, 2021.

14.     Attorney Jarrell did not receive the said 10-day notice and certificate of service purportedly mailed March 19, 2021.  The address for Bodo Family, LLC is the former residence Lou Bodo, deceased, and was not received by any representative of Petitioners.

15.     On March 31, 2021, attorney Jarrell first became aware that a Judgment had been entered in this action after receiving an email from the Delaware County C-Track CMS Document Distribution System attached to which was a Rule 236 Notice of Judgment. A copy of the email and 236 Notice of Judgment are attached as Exhibits 1 and 2.

16.     The originating email address is identified as "noreplyctrack@co.delaware.pa.us which is different than the Delaware County efile notice originating email address which is "noreplyefile@co.delaware.pa.us".

17.     This led to attorney Jarrell discovering the above described filings by attorney Haltzman, the issuance of the Rule to File a Complaint and the entry of Judgment of Non Pros against Plaintiffs for failure to file a complaint.

18.    Attached hereto as Exhibit 3 is Plaintiffs proposed Complaint as required by Pa.R.C.P. 237.3(a), which states a meritorious cause of action against Respondents/Defendants.

19.    Pursuant to Rule 237.3(b)(1), "if the Petition is filed within 10 days from the entry of a judgment of *non pros* on the docket, the court shall open the judgment if the proposed Complaint states a meritorious cause of action.

20.    The filing of this Petition to Open pursuant to Rule 237.3(b)(1) on Monday, April 12, 2021 is timely under Pa.R.C.P. 106(b) as the tenth day falls on Saturday.

21.    "Rule 237.3(b) presumes that a petition filed within the ten-day period is both timely and with reasonable explanation or legitimate excuse for the inactivity or delay." Explanatory Comment to Rule 237.3 – 1994.

22.    Nevertheless, Plaintiffs have taken timely action by the filing of this Petition to Open and there is reasonable explanation and legitimate excuse for the delay in filing the Complaint.

**WHEREFORE,** Plaintiffs request this Honorable Court to open the Judgment of Non Pros to permit Plaintiffs to file the proposed Complaint attached hereto.

*Eugene F. Jarrell, III*
Eugene F. Jarrell, III, Esquire
Attorney for Plaintiffs
Attorney ID No.: 34748
334 W. Front Street
Media, PA  19063
(610) 565-6130
efjarrell@gmail.com

## **VERIFICATION**

I, Eugene F. Jarrell, III, attorney for the Petitioners/Plaintiffs, and authorized to make this verification, hereby verify that the facts set forth in Petitioners' Petition to Open Judgment of Non Pros Pursuant to Pa.R.C.P. 237.3 are true and correct to the best of my knowledge, or information and belief.  This verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

_/s/ Eugene F. Jarrell, III_
Eugene F. Jarrell, III

Exhibit 1

 **Gmail**

Gene Jarrell <efjarrell@gmail.com>

## Delaware County Court of Common Pleas - Document Distribution from CV-2021-001678
1 message

**noreplyctrack@co.delaware.pa.us** <noreplyctrack@co.delaware.pa.us>
To: efjarrell@gmail.com

Wed, Mar 31, 2021 at 11:34 AM

C-Track CMS

Attached, please find a single PDF attachment comprised of the following individual documents:
- Notice - 236 Notice of Judgment

Do not respond to this system-generated e-mail notification. For help with technical problems, please contact the system administrator

 **Notice-236 Notice of Judgment.pdf**
77K

Exhibit 2

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY,

## PENNSYLVANIA OFFICE OF JUDICIAL SUPPORT

### RULE OF CIVIL PROCEDURE NO. 236

Bodo Family LLC t/a Bodo Family of Media Limited
Partnership directly and derivatively on behalf of Media
Station Inc t/a Media Station LP Turnbridge Inc t/a
Turnbridge LP Scarborough Mews Inc t/a Scarborough
Mews Lp,

      Plaintiff

v.

No. CV-2021-001678

Cynthia Cottman Aka Cindy Cottman personal
representatives of the Estate of Brooke Powell Cottman
et al,

      Defendant.


NOTICE IS GIVEN UNDER PENNSYLVANIA RULE OF CIVIL PROCEDURE NO. 236 THAT A

JUDGMENT IN THE ABOVE CASE HAS BEEN ENTERED ON 03-31-2021.


SIGNED      2021-03-31

PER      Office of Judicial Support


**TIME AND LEGAL LIABILITY DO NOT PERMIT THE OFFICE OF JUDICIAL
SUPPORT TO GIVE DOCKET INFORMATION BY TELEPHONE.**
**NO EXCEPTIONS!**

PUBLIC ACCESS INFORMATION:  www.co.delaware.pa.us

CC: JARRELL III,  EUGENE F, Cynthia Cottman Aka Cindy Cottman personal representatives
of the Estate of Brooke Powell Cottman, Virginia Palusky, Aka Virginia Powell Cottman Palusky
Personal Representative Of The Estate Of Brooke Powell Cottman, Cynthia Cottman Aka Cindy
Cottman, Virginia Powell Cottman Palusky, Media Station Inc t/a Media Station a limited
partnership, Tunbridge Inc t/a Tunbridge a limited partnership, Scarborough Mews inc t/a
Scarborough Mews a limited partnership, HALTZMAN,  MARK S


JARRELL III,  EUGENE F      CV-2021-001678
334 W Front St
MEDIA PA 19063-0000

Exhibit 3

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership 202 Coventry Lane Media, PA 19063 | : : : : : | No. CV-2021-001678 |
| Plaintiffs | : : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as Personal representatives of the Estate of Brooke Powell Cottman 254 Stanwich Road Greenwich, CT 06830 | : : : : | |
| Cottman Family, LLC t/a Cottman Family Limited Partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Cynthia Cottman aka Cindy Cottman, 254 Stanwich Road Greenwich, CT 06830 | : : | |
| Virginia Powell Cottman Palusky, 6827 Van Hyning Road Deansboro, NY 13328 | : : | |
| Media Station, Inc. t/a Media Station, a limited partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Tunbridge, Inc. t/a Tunbridge, a limited partnership 340 Media Station Road Media, PA 19063 | : : | |

1

Scarborough Mews, Inc. t/a Scarborough Mews,
a limited partnership                                       :
340 Media Station Road
Media, PA 19063                                             :

               Defendants               :

## <u>COMPLAINT</u>

1.     Plaintiff Bodo Family LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 580 S. Heilbron Drive, Media, Pennsylvania 19063.

2.     Plaintiff Bodo Family of Media Limited Partnership is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 580 S. Heilbron Drive, Media, Pennsylvania 19063.

3.     Plaintiff Bodo Family LLC is the general partner to Plaintiff Bodo Family of Media Limited Partnership.

4.     Plaintiff Media Station Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Media Station, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Media Station LP") with a registered address and place of business at 340 Media Station Road, Media, PA 19063.

5.     Plaintiff Tunbridge Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Tunbridge, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Tunbridge LP") with a registered address at 340 Media Station Road, Media, PA  19063.

6.     Plaintiff Scarborough Mews Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Scarborough Mews, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Scarborough Mews LP") with a registered address at 340 Media Station Road, Media, PA  19063.

7.     Defendant Cynthia Cottman aka Cindy Cottman is an adult individual residing at 354 Stanwich Road, Greenwich, Connecticut 06830 and is a Personal Representative of the Estate of Brooke Powell Cottman, deceased.

8.     Defendant Virginia Palusky aka Virginia Powell Cottman Palusky is an adult individual residing at 6827 Van Hyning Road, Deansboro, New York 13328 and is a Personal Representative of the Estate of Brooke Powell Cottman, deceased.

9.     Defendant Cottman Family, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and is a general partner of Defendant Cottman Family Limited Partnership ("Cottman Family LP"), a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with a registered address of at 340 Media Station Road, Media, Pennsylvania 19063.

10.     Defendant Media Station, Inc. t/a Media Station LP, Tunbridge, Inc. t/a Tunbridge, and Scarborough Mews, Inc. t/a Scarborough Mews LP are identified herein as nominal defendants.

11.     Brooke Powell Cottman (hereinafter "Brooke Cottman") died February 13, 2020.

12.     Prior to his death, Brooke Cottman was at all relevant times hereto was a general partner of Defendant Cottman Family Limited Partnership.

13.     On or about March 9, 2021, Defendants Cynthia Cottman and Virginia Palusky were each appointed as Executrix and Personal Representative of the Estate of Brooke Cottman.  Subsequent

3

to Brooke Cottman's death, it is believed that the Estate of Brooke Cottman, through the Personal Representatives, was a general partner of Cottman Family Limited Partnership.

14.    Media Station LP, Tunbridge LP and Scarborough Mews LP (collectively, the "Limited Partnerships") were formed as single-purpose entities that own real estate and multi-family housing units located in Delaware County, Pennsylvania.

15.    Media Station LP owns Media Station Apartments located at 340 Media Station Road, Media, Delaware County, Pennsylvania 19063.

16.    Tunbridge LP owns Tunbridge Apartments located at 274 Glen Riddle Road, Media, Delaware County, Pennsylvania.

17.    Scarborough Mews LP owns the Scarborough Mews Townhouses located at 501 N. Orange Street, Media, Delaware County, Pennsylvania.

18.    Media Station LP was formed by Brooke Cottman and Lajos "Lou" Bodo, each of whom owned an equal interest in the limited partnership.

19.    Tunbridge LP and Scarborough Mews LP were formed by Brooke Cottman, Lou Bodo, and Edward W. Coslett, Jr., each of whom owned an equal interest in the limited partnership.

20.    Brooke Cottman and Lou Bodo also formed a separate entity, Media Station, Inc., to act as the corporate general partner for Media Station LP.

21.    Brooke Cottman, Lou Bodo, and Edward W. Coslett, Jr. also formed separate entities, Tunbridge, Inc. and Scarborough Mews, Inc., to act as the corporate general partner for Tunbridge LP and Scarborough Mews LP.

22.    Over time, Brooke Cottman's limited partner interests in the Limited Partnerships were transferred to the Cottman Family Limited Partnership.

4

23.     Over time, Lou Bodo's limited partner interests in the Limited Partnerships were transferred to the Bodo Family of Media Limited Partnership.

24.     Over time, Edward W. Coslett, Jr.'s limited partner interests in the Limited Partnerships were transferred to his family members and related entities collectively referred to as the Coslett Limited Partners.

25.     Prior to his death, and at all relevant times prior thereto, Brooke P. Cottman was President and a board Director Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

26.     At the time of the formation of Media Station, Inc., its shareholders were Brooke Cottman (500 shares of Class B stock) and Lou Bodo (500 shares of Class A stock).

27.     In March 2014, Lou Bodo died.

28.     At the time of the formation of Tunbridge Inc. and Scarborough Mews, Inc., its shareholders were Lou Bodo (Class A stock), Brooke Cottman (Class B stock) and Edward W. Coslett, Jr. (Class C stock) each Class representing an equal ownership of Tunbridge Inc. and Scarborough Mews, Inc.

29.     Upon his death, Lou Bodo's shares in Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc. were transferred in equal share amounts to his daughters, Shirley Bodo and Deborah Convery.

30.     Prior to his death, Brooke Cottman remained owner of the 500 Class B shares of the stock of Media Station, Inc.

31.     The affairs of Media Station, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Media Station, Inc. (the "Bylaws") is attached hereto as Exhibit A.

32.      Under the Bylaws, the Board of Directors of Media Station, Inc. is to consist of two Directors, one to be elected by the Class A shareholders and one to be elected by the Class B shareholders. *See* Bylaws, at § 4.03(a) (Exhibit A).

33.      Until his death, Brooke Cottman served as the Class B Director of Media Station, Inc.

34.      At all times relevant prior to his death, Brooke Cottman served as the Class B Director for Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc.

35.      Prior to his death, Brooke Cottman remained owner of the Class B shares of the stock of Tunbridge Inc. and Scarborough Mews, Inc.

36.      The affairs of Tunbridge, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Tunbridge, Inc. (the "Bylaws") is attached hereto as Exhibit B.

37.      Under the Bylaws, the Board of Directors of Tunbridge, Inc. is to consist of three Directors, one to be elected by the Class A shareholders, one to be elected by the Class B shareholders and one elected by the Class C shareholder. *See* Bylaws, at § 4.03(a) (Exhibit B).

38.      The affairs of Scarborough Mews, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Scarborough Mews, Inc. (the "Bylaws") is attached hereto as Exhibit C.

39.      Under the Bylaws, the Board of Directors of Scarborough Mews, Inc. is to consist of three Directors, one to be elected by the Class A shareholders, one to be elected by the Class B shareholders and one elected by the Class C shareholder. *See* Bylaws, at § 4.03(a) (Exhibit C).

40.     Each of the Bylaws was signed and consented to by Brooke Cottman as a shareholder of Media Station Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

41.     Until his death, Brooke Cottman served as the Class B Director of Tunbridge Inc. and Scarborough Mews, Inc.

42.     Brooke Cottman served as the President and Secretary of Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc., and served in those capacities until his death.

43.     The By-Laws for Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., each provide at Section 4.01 (a), that "the business and affairs of the Corporation shall be managed under the direction of the board of directors". Further, Section 5.08 provides that the president, who is subject "to the control of the board of directors", is authorized to sign only those contracts which are "authorized by the board of directors".

44.     Section 4.03(b) of each of the By-Laws provides that the "shareholders **shall** cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors." In the event that the "board is unable to reach a resolution by the required number of director votes on a particular matter or issue… The independent advisor will be permitted to cast one vote as if he or she were a director with the sole purpose of breaking the deadlock." [Emphasis added].

45.     Following the resignation of the last of the independent advisers for the Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., which occurred prior to 2015, a vacancy existed for the role of independent advisor for each of the corporate general partners until 2020.

46.     As a result of the independent advisor vacancy for Media Station, Inc., a deadlock existed regarding multiple matters and issues, including, but not limited to, the appointment of officers,

particularly the president, as well as significant other issues, such as renovations, management and financial issues.

47.     As a result of the independent advisor vacancy for Tunbridge Inc. and Scarborough Mews Inc., a deadlock existed regarding multiple matters and issues, including, but not limited to, the appointment of officers, particularly the president, as well as significant other issues, such as renovations, management and financial issues.

48.     As the President of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., Brooke Cottman exercised unilateral control and adverse domination over the corporations and therefore exercised unilateral control and adverse domination of the respective Limited Partnership of Media Station LP, Tunbridge LP and Scarborough Mews LP.

49.     In May 2017, Brooke Cottman formed AptRentz LLC, and he directed the filing of a Certificate of Organization on May 24, 2017 with the Commonwealth of Pennsylvania, Department of State, for AptRentz, LLC, a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania (hereafter "AptRentz").

50.     Prior to the death of Brooke Cottman, AptRentz was directly and/or indirectly owned by Brooke Cottman, and his children and/or grandchildren, Cynthia Cottman, Virginia Palusky and/or Graham Palusky, or entities controlled by Brooke Cottman and/or such persons.

51.     Since the death of Brooke Cottman, AptRentz has been directly and/or indirectly owned by the Estate of Brooke Cottman, and the children and/or grandchildren of Brooke Cottman, Cynthia Cottman, Virginia Palusky and/or Graham Palusky, or entities controlled by the Estate of Brooke Cottman and/or such persons.

52.     Brooke Cottman formed AptRentz to act as a management company for Media Station LP, Tunbridge LP and Scarborough Mews LP with the intent of receiving management fees and other

payments from the Limited Partnerships and to divert profits from the Limited Partnerships and distributions from being made to the limited partner or partners of the Limited Partnerships.

53.     Brooke Cottman's intent in creating AptRentz was to divert profits from Media Station LP and other distributions that would be due and owing to Bodo Family of Media Limited Partnership.

54.     Brooke Cottman's intent was to divert profits from Tunbridge LP and Scarborough Mews LP and other distributions to the limited partners Bodo Family of Media Limited Partnership and the Coslett Limited Partnership.

55.     On June 12, 2017, Brooke Cottman, as President of Media Station Inc., on behalf of Media Station Limited Partnership, unilaterally entered into a management agreement with AptRentz for the management of Media Station Apartments. A copy of the AptRentz agreement is attached hereto and made part of and marked Exhibit D.

56.     On June 12, 2017, Brooke Cottman, as President of Tunbridge Inc., on behalf of Tunbridge Limited Partnership, unilaterally entered into a management agreement with AptRentz for the management of Tunbridge Apartments. A copy of the AptRentz agreement is attached hereto and made part of and marked Exhibit E.

57.     On June 12, 2017, Brooke Cottman, as President of Scarborough Mews Inc., on behalf of Scarborough Mews LP, unilaterally entered into a management agreement with AptRentz for the management of Scarborough Mews Apartments. A copy of the AptRentz agreement is attached hereto, made part hereof and marked Exhibit F.

58.     The AptRentz agreements created by Brooke Cottman were standard form property management contracts which are available online, however Brooke Cottman altered the language of the standard form contract to exclude basic protections afforded the property owner, including

payment obligations to the property owner.  See the standard form property management contract attached as Exhibit G.

59.      Each of the AptRentz agreements is essentially identical in its terms and conditions which terms were not negotiated at arm's length but rather written to favor AptRentz and insulate AptRentz from the scrutiny of Bodo Family of Media Limited Partnership and the Coslett Limited Partners to the detriment of Media Station LP, Tunbridge LP, Scarborough Mews LP, Bodo Family of Media Limited Partnership and the Coslett Limited Partners.

60.      These management agreements were each signed by Jennie Mopsik, identified as "Managing Agent" of AptRentz, LLC who was hired by Brooke Cottman.

61.      The Pennsylvania Real Estate Licensing and Registration Act ("RELRA"), 63 P.S. §§ 455.101 *et seq*, specifically 63 P.S. § 455.301, requires that AptRentz LLC be a licensed entity with a registered broker of record in order to act as property manager.

62.      AptRentz has not been a RELRA licensed entity with a registered broker of record.

63.      The AptRentz management agreements are illegal.

64.      Section 8.04 (a) of each of the By-Laws provides that "a contract or transaction between the corporation and one or more of its directors or officers, or between the Corporation in another Corporation… or other enterprise in which one or more of its directors and officers… have a financial or other interest, shall not be void or voidable solely for that reason… if:

> (1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors **and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum."** [Emphasis added].

65.     Section 8.04 (a) of the By-Laws govern the required process of approval of the AptRentz management agreements as a result of Brooke Cottman's financial and other interests in AptRentz, and is consistent with the requirements set forth in 15 Pa.C.S.A. §1728(a) concerning interested directors and officers.

66.     Brooke Cottman entered into all three of the AptRentz management agreement without seeking a vote of the Directors of the corporate general partners to approve the agreements, or even notifying the other Directors until after the agreements were executed.

67.     Brooke Cottman entering into the AptRentz management agreements was not in the best interests of the Media Station Inc., Tunbridge Inc., or Scarborough Mews Inc., or any of the Limited Partnerships.

68.     By the terms of Section 8.04 (a) of the Media Station By-Laws, the contract between AptRentz and Media Station LP required approval by the affirmative vote of the sole disinterested director of the Class A shares, Kevin Flynn, or his successor, James Proud, Esquire, both of whom were directors appointed by Deborah Convery and Shirley Bodo.

69.     By the terms of Section 8.04 (a) of the Tunbridge, Inc. and Scarborough Mews, Inc. By-Laws, the contract between AptRentz and Tunbridge LP and Scarborough Mews LP required approval by the affirmative vote of the two disinterested directors, Branch Coslett (for the Coslett related Class C shareholders), and Kevin Flynn, or his successor, James Proud, Esquire for the Class A shareholder. In the event of a tie vote between the two disinterested directors, the tie-breaking vote would be cast by the independent advisor.

70.     A resolution for the approval of the contracts between the AptRentz and Media Station, Tunbridge, and Scarborough Mews was never put to a vote of the Directors or shareholders of Media Station, Inc., Tunbridge, Inc. or Scarborough Mews, Inc.

71.     Despite Brooke Cottman's allegations to the contrary, Flynn never approved of the contracts between AptRentz and Media Station LP, Tunbridge LP, or Scarborough Mews LP in any of their discussions on June 13, 2017, or at any other time.

72.     To the contrary, Kevin Flynn expressly disapproved of the AptRentz contracts and their terms.

73.     Flynn's successor, James Proud, never approved of the AptRentz contracts.

74.     Following June 12, 2017, AptRentz began taking ever increasing control of the financial aspects of Media Station LP, Tunbridge LP and Scarborough Mews LP, eventually taking control over receipt of all tenant rent payments and security deposits, lease executions and the payment of its own management fees and compensation, all in violation of the RELRA statutes.

75.     This control included opening one or more accounts with financial institutions to directly receive all tenant rent payments and security deposits of the Limited Partnerships, and used these accounts for the payment of management and other fees to itself, all in violation of the RELRA statutes.

76.     AptRentz does not manage any other apartment complexes.

77.     AptRentz performs little or no services set forth in the management agreements, but rather the services of operating the residential rental properties of the Limited Partnerships, and remodeling of the rental units, continues to be undertaken by the staff employed and paid by the Limited Partnerships, as it had been prior to the existence of the management agreements with AptRentz.

78.     On February 21, 2018, James Proud as the Class A shareholder Director of Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc., wrote a letter to Brooke Cottman concerning, among other things, the AptRentz management agreements and in reply to requests made to Bodo

Family of Media Limited Partnership, and Shirley Bodo and Deborah Convery for signed documentation and consents relating to proposed loans from New York Community Bank to Media Station LP and Tunbridge LP.  A copy of the February 21, 2018 Proud letter is attached hereto, made a part hereof and marked as Exhibit H.

79.      With the letter, James Proud enclosed the signed documentation requested of Bodo Family of Media Limited Partnership, Shirley Bodo and Deborah Convery, and consented to their submission to the Bank, conditioned upon AptRentz **not** acting as Construction manager or property manager.

80.     Brooke Cottman received the Proud letter and signed documentation, and submitted the documentation to the Bank, thereby agreeing to and accepting the terms of their usage.

81.     Thereafter, Brooke Cottman failed to terminate the AptRentz property management agreements.

82.     On July 30, 2018, Cottman circulated a letter via email in which he described votes which never occurred and informed the other two directors that he had already directed payments exceeding $52,000 to his entity, AptRentz, and was intending to pay $170,463.23 into escrow on August 1, 2018. The July 30, 2018 letter is attached hereto as Exhibit I.

83.     Brooke Cottman either failed to pay any such amounts into an escrow account or failed to maintain the escrow, as no Cottman director or other representative of the Cottman parties will supply evidence of its existence.

84.     From June 12, 2017 until his death, Brooke Cottman directed payments from the Limited Partnerships to AptRentz and distributions and/or other payments from AptRentz to himself, which payments were not in the best interests of the Limited Partnerships or their respective corporate general partners..

13

85.    During the same period Brooke Cottman directed distributions and other payments to Cindy Cottman, Virginia Palusky and/or Graham Palusky from AptRentz, which payments were not in the best interests of the Limited Partnerships or their respective corporate general partners..

86.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family Limited Partnership.

87.    Following the death of Brooke Cottman, Cynthia Cottman, Virginia Palusky and/or Graham Palusky have assumed control of AptRentz, and have caused distributions and other payments to themselves and/or other entities they control from AptRentz.

88.    Such distributions and payments were not in the best interests of the Limited Partnerships or their respective corporate general partners.

89.    Following the death of Brooke Cottman, Virginia Palusky became an officer of Media Station, Inc., and Cynthia Cottman became a director and officer of Tunbridge, Inc. and Scarborough Mews, Inc.

90.    Since becoming an officer and/or director of Media Station, Inc., Tunbridge, Inc. and/ or Scarborough Mews, Inc., Cynthia Cottman and Virginia Palusky have continued to receive and/or cause distributions and other payments from AptRentz to themselves and/or other entities they control, to the detriment and loss of Bodo Family of Media Limited Partnership, the other limited partner of Media Station LP, and Bodo Family of Media Limited Partnership and the Coslett Limited Partners, the other limited partners of Tunbridge LP and Scarborough Mews LP.

91.    Bodo Family LLC t/a Bodo Family of Media Limited Partnership brings the claims stated herein directly, and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP and Scarborough Mews, Inc. t/a Scarborough Mews LP.

92.      Prior demand to the Limited Partnerships pursuant to 15 Pa.C.S.A § 8692 is excused to prevent immediate and irreparable harm to the Limited Partnerships by the possible loss of the tolling of the statute of limitations provided in 20 Pa.C.S.A § 3383 of claims arising from the self-dealing conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky described herein.

## COUNT I
## Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

93.      The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 92 above as though fully set forth herein.

94.      Brooke Cottman, as President and Director of Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., and the person who exercised unilateral of these corporate general partners and thereby control over the Limited Partnerships, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d))  to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

95.      As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty by forming AptRentz, directing distributions and payments from the Limited Partnerships to AptRentz, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

96.      Following the death of Brooke Cottman, Cynthia Cottman as Director and officer of Tunbridge, Inc. and Scarborough Mews, Inc. owed a common law and statutory fiduciary duty of

loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

97.     Following the death of Brooke Cottman, Virginia Palusky as officer of Media Station, Inc., owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

98.     As set forth in detail above, Cynthia Cottman and Virginia Palusky have breached the fiduciary duty of loyalty by directing distributions and payments to AptRentz, and directing and or receiving distributions from AptRentz to themselves, Graham Palusky and or other family members.

99.     As a result of the aforesaid conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky, Bodo Family, LLC t/a Bodo Family of Media Limited Partnership has sustained a loss of distributions and other payments that they were entitled to from Media Station LP, Tunbridge LP and Scarborough Mews LP.

100.    The above described conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Plaintiffs and in disregard of their rights entitling Plaintiffs to punitive damages.

101.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

102.     Following the death of Brooke Cottman, Cynthia Cottman and Virginia Palusky acted on behalf of themselves and as agents and representatives of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

103.     Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

        **WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT II
## Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc., t/a Media Station LP v**. **Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Virginia Palusky individually**

104.     The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 103 above as though fully set forth herein.

105.     Brooke Cottman, as President and Director of Media Station, Inc., and the person who exercised unilateral control thereof and thereby control over Media Station LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and § 8649(b), (d)) to Media Station LP and Media Station, Inc.

17

106.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Media Station LP and Media Station, Inc.by forming AptRentz, directing distributions and payments to AptRentz from Media Station LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

107.    Following the death of Brooke Cottman, Virginia Palusky as an officer of Media Station, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512 (c), § 1712 (c), and § 8649(b), (d)) to Media Station LP and Media Station, Inc.

108.    Virginia Palusky breached the fiduciary duty of loyalty to Media Station LP and Media Station, Inc. by receiving payments from AptRentz while an officer of Media Station Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

109.    As a result of the aforesaid conduct of Brooke Cottman and Virginia Palusky, Media Station LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

110.    The above described conduct of Brooke Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Media Station LP and in disregard of its rights entitling Media Station LP to punitive damages.

111.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

112.    Following the death of Brooke Cottman, Virginia Palusky acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

18

113.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Media Station LP for the compensatory and punitive damages described above.

WHEREFORE, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT III
### Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc., t/a Tunbridge LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

114.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 113 above as though fully set forth herein.

115.    Brooke Cottman, as President and Director of Tunbridge, Inc., and the person who exercised unilateral control thereof and thereby control over Tunbridge LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

116.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Tunbridge LP and Tunbridge, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Tunbridge LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

19

117.    Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

118.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of loyalty to Tunbridge LP and Tunbridge, Inc. by receiving payments from AptRentz while an officer and Director of Tunbridge, Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

119.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Tunbridge LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

120.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Tunbridge LP and in disregard of its rights entitling Tunbridge LP to punitive damages.

121.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

122.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

123.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Tunbridge LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc. t/a Tunbridge LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

<div align="center">

**COUNT IV**
**Breach of Fiduciary Duty**

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

</div>

124.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 123 above as though fully set forth herein.

125.    Brooke Cottman, as President and Director of Scarborough Mews, Inc., and the person who exercised unilateral control thereof and thereby control over Scarborough Mews LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

126.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Scarborough Mews LP and Scarborough Mews, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Scarborough Mews LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

127.    Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not

limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

128.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of loyalty to Scarborough Mews LP and Scarborough Mews, Inc. by receiving payments from AptRentz while an officer and Director of Scarborough Mews, Inc., and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

129.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Scarborough Mews LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

130.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Scarborough Mews LP and in disregard of its rights entitling Scarborough Mews LP to punitive damages.

131.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

132.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

133.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews, Inc. t/a Scarborough Mews LP, demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives

of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

<div align="center">

**COUNT V**
**<u>Breach of Duty of Good Faith and Fair Dealing</u>**

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

</div>

134.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 133 above as though fully set forth herein.

135.    Brooke Cottman, as President and Director of Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., and the person who exercised unilateral of these corporate general partners and thereby control over the Limited Partnerships, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

136.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing by forming AptRentz, directing distributions and payments from the Limited Partnerships to AptRentz, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

137.    Following the death of Brooke Cottman, Cynthia Cottman as Director and officer of Tunbridge, Inc. and Scarborough Mews, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c),

<div align="center">23</div>

and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

138.    Following the death of Brooke Cottman, Virginia Palusky as officer of Media Station, Inc., owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

139.    As set forth in detail above, Cynthia Cottman and Virginia Palusky have breached the fiduciary duty of good faith and fair dealing by directing distributions and payments to AptRentz, and directing and or receiving distributions from AptRentz to themselves, Graham Palusky and or other family members.

140.    As a result of the aforesaid conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky, Bodo Family, LLC t/a Bodo Family of Media Limited Partnership has sustained a loss of distributions and other payments that they were entitled to from Media Station LP, Tunbridge LP and Scarborough Mews LP.

141.    The above described conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Plaintiffs and in disregard of their rights entitling Plaintiffs to punitive damages.

142.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

143.    Following the death of Brooke Cottman, Cynthia Cottman and Virginia Palusky acted on behalf of themselves and as agents and representatives of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

24

144.   Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

WHEREFORE, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT VI
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc., t/a Media Station LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

145.   The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 144 above as though fully set forth herein.

146.   Brooke Cottman, as President and Director of Media Station, Inc., and the person who exercised unilateral control thereof and thereby control over Media Station LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Media Station LP and Media Station, Inc.

25

147.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Media Station LP and Media Station, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Media Station LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

148.    Following the death of Brooke Cottman, Virginia Palusky as an officer of Media Station, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Media Station LP and Media Station, Inc.

149.    Virginia Palusky breached the fiduciary duty good faith and fair dealing to Media Station LP and Media Station, Inc. by receiving payments from AptRentz while an officer of Media Station Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

150.    As a result of the aforesaid conduct of Brooke Cottman and Virginia Palusky, Media Station LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

151.    The above described conduct of Brooke Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Media Station LP and in disregard of its rights entitling Media Station LP to punitive damages.

152.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

153.   Following the death of Brooke Cottman, Virginia Palusky acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

154.   Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Media Station LP for the compensatory and punitive damages described above.

   **WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman and Virginia Palusky in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT VII
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc., t/a Tunbridge LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

155.   The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 154 above as though fully set forth herein.

156.   Brooke Cottman, as President and Director of Tunbridge, Inc., and the person who exercised unilateral control thereof and thereby control over Tunbridge LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

157.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Tunbridge LP and Tunbridge, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Tunbridge LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

158.    Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

159.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of good faith and fair dealing to Tunbridge LP and Tunbridge, Inc. by receiving payments from AptRentz while an officer and Director of Tunbridge, Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

160.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Tunbridge LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

161.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Tunbridge LP and in disregard of its rights entitling Tunbridge LP to punitive damages.

162.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

28

163.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

164.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Tunbridge LP for the compensatory and punitive damages described above.

        **WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc. t/a Tunbridge LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT VIII
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc., t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

165.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 164 above as though fully set forth herein.

166.    Brooke Cottman, as President and Director of Scarborough Mews, Inc., and the person who exercised unilateral control thereof and thereby control over Scarborough Mews LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

167.     As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Scarborough Mews LP and Scarborough Mews, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Scarborough Mews LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

168.     Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

169.     As set forth in detail above, Cynthia Cottman breached the fiduciary duty of good faith and fair dealing to Scarborough Mews LP and Scarborough Mews, Inc. by receiving payments from AptRentz while an officer and Director of Scarborough Mews, Inc., and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

170.     As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Scarborough Mews LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

171.     The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Scarborough Mews LP and in disregard of its rights entitling Scarborough Mews LP to punitive damages.

172.     At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

173.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

174.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc., t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT VIII
### Civil Conspiracy

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

175.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 174 above as though fully set forth herein.

176.    Brooke Powell Cottman, along with Cynthia Cottman and Virginia Palusky, and on behalf of Cottman Family LLC t/a Cottman Family Limited Partnership conspired to divert funds away from the Limited Partnerships with intent to decrease distributions that would be due Bodo Family of Media Limited Partnership, the other limited partner of Media Station LP, and Bodo Family of

Media Limited Partnership and the Coslett Limited Partners, the other limited partners of Tunbridge LP and Scarborough Mews LP.

177.    As a result of this conspiracy, Bodo Family of Media Limited Partnership have sustained substantial damages including loss of distributions from the Limited Partnerships resulting from the payments to AptRentz.

178.    Cottman Family LLC t/a Cottman Family Limited Partnership is vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

       **WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT VIII
## Civil Conspiracy

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

179.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 178 above as though fully set forth herein.

180.    Brooke Powell Cottman, along with Cynthia Cottman and Virginia Palusky and on behalf of Cottman Family LLC t/a Cottman Family Limited Partnership conspired to divert funds away from the Limited Partnerships with intent to decrease their profit which would have been available for distribution to its other limited partner in Media Station LP, Bodo Family of Media Limited Partnership, and its other limited partners in Tunbridge LP and Scarborough Mews LP**,** Bodo Family of Media Limited Partnership and the Coslett Limited Partners.

181.    As a result of this conspiracy, Media Station LP, Tunbridge LP and Scarborough Mews LP have sustained substantial damages including loss of distributions and or profits resulting from the payments to AptRentz.

182.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Media Station LP, Tunbridge LP, and Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT IX
## Breach of Contract

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman**

183.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 182 above as though fully set forth herein.

184.    Brooke Cottman breached Section 5.08 of the corporate Bylaws of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc. by his failure to seek board approval prior to entering into the AptRentz management agreements.

185.    Brooke Cottman breached Section 8.04 (a) of the corporate Bylaws of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc. by his failure to seek board approval from the other disinterested directors prior to entering into the AptRentz management agreements.

186.    As Director and President of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., Brooke Cottman breached his contractual fiduciary duties and duty of good faith set forth in sections 4.01 and 5.01(d) of the Bylaws of the Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

187.    Brooke Cottman breached the terms and conditions set forth in the James Proud letter of February 21, 2018 (Exhibit H) by his failure to terminate the AptRentz property management agreements, despite submitting the signed documentation and consents of Bodo Family of Media Limited Partnership, Shirley Bodo and Deborah Convery to New York Community Bank in conjunction with the proposed loans to Media Station LP and Tunbridge LP.

188.    As a result of breaches by Brooke Cottman, Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station LP, Tunbridge LP and Scarborough Mews LP

34

have sustained substantial damages including loss of distributions and or profits resulting from the breaches and payments to AptRentz.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly, and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman in an amount of excess of $50,000.00 together with attorneys fees and costs as allowed by law.

<div align="right">

*/s/ Eugene F. Jarrell, III*
Eugene F. Jarrell, III, Esquire
Atty. I.D. No. 34748
Attorney for Plaintiffs
334 W. Front Street
Media, PA 19063
(610) 565-6130
*efjarrell@gmail.com*

</div>

## VERIFICATION

I, Shirley Bodo, a member of Plaintiff Bodo Family, LLC, general partner of Plaintiff Bodo Family of Media Limited Partnership, hereby verify that the facts set forth in Plaintiffs' Complaint are true and correct to the best of my knowledge, or information and belief. This verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities

Shirley Bodo

Exhibit A

# BYLAWS

## OF

## MEDIA STATION INC.

(a Pennsylvania corporation)

## ARTICLE I

### OFFICES AND FISCAL YEAR

Section 1.01.  REGISTERED OFFICE.  The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02.  OTHER OFFICES.  The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03.  FISCAL YEAR.  The fiscal year of the corporation shall begin the 1st day of January in each year.

## ARTICLE II

### NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01.  MANNER OF GIVING NOTICE.

(a)    General Rule.  Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice.  If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received.  A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)     Adjourned Shareholder Meetings.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02.  NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03.  NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)     General Rule.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)     ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)     five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)     Notice of Action by Shareholders on Bylaws.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws. There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

2

Section 2.04.   WAIVER OF NOTICE.

(a)   <u>Written Waiver</u>.   Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice.   Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting.   In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)   <u>Waiver by Attendance</u>.   Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05.   MODIFICATION OF PROPOSAL CONTAINED IN NOTICE. Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose.

Section 2.06.   EXCEPTION TO REQUIREMENT OF NOTICE.

(a)   <u>General Rule</u>.   Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)   <u>Shareholders Without Forwarding Addresses</u>.   Notice or other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address.   Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.   USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT. One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.   Participation in a meeting pursuant to this section shall constitute presence in person at the meeting.

# ARTICLE III

## SHAREHOLDERS

Section 3.01.   PLACE OF MEETING.   All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02.   ANNUAL MEETING.  The board of directors ma y fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A. M., and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting.  If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter.  Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03.   SPECIAL MEETINGS.

(a)   Call of Special Meetings.  Special meetings of the shareholders may be called at any time:

(1)   by the board of directors; or

(2)   unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting.

(b)   Fixing Time of Meeting.  At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request.  If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so.

Section 3.04.   QUORUM AND ADJOURNMENT.

(a)   General Rule.  A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present.  The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter.  Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

(b)   Withdrawal of a Quorum.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

(c)   Adjournment for Lack of Quorum.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

(d)   Adjournments Generally.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

(e)   Electing Directors at Adjourned Meeting.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

(f)   Other Action in Absence of Quorum.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.  ACTION BY SHAREHOLDERS.

(a)   General Rule.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

(b)   Interested Shareholders.  Any merger or other transaction authorized under 15Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

      (c)    <u>Exceptions</u>. Subsection (b) shall not apply to a transaction:

      (1)    that has been approved by a majority vote of the board of directors without counting the vote of directors who:

      (i)    are directors or officers of, or have a material equity interest in, the interested shareholder; or

      (ii)    were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

      (2)    in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class.

      (d)    <u>Additional Approvals</u>. The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

Section 3.06.  ORGANIZATION.  At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

Section 3.07.  VOTING RIGHTS OF SHAREHOLDERS.  Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3.08.    VOTING AND OTHER ACTION BY PROXY.

    (a)    <u>General Rule</u>.

        (1)    Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

        (2)    The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

        (3)    Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

    (b)    <u>Execution and Filing</u>.  Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.  A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

        (1)    may be treated as properly executed for purposes of this section; and

        (2)    shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

    (c)    <u>Revocation</u>.  A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.  An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.  A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

    (d)    <u>Expenses</u>.  Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

by or on behalf of the board of directors or its nominees for election to the board, including solicitation by professional proxy solicitors and otherwise.

Section 3.09.  VOTING BY FIDUCIARIES AND PLEDGEES.   Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may be voted by the trustee, fiduciary, assignee or receiver.  A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10.  VOTING BY JOINT HOLDERS OF SHARES.

(a)    General Rule.  Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)    if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)    if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)    Exception.  If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11.  VOTING BY CORPORATIONS

(a)    Voting by Corporate Shareholders.  Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

(b)  _Controlled Shares_.  Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time.

Section 3.12.  DETERMINATION OF SHAREHOLDERS OF RECORD.

(a)  _Fixing Record Date_.  The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.  Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection.  The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose.  When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting.

(b)  _Determination When a Record Date is Not Fixed_.  If a record date is not fixed:

(1)  The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

(2)  The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

(3)  The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

Section 3.13.  VOTING LISTS.

(a)  _General Rule_.  The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

of shares held by each.  The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

(b)   Effect of List.  Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list.  The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14.  JUDGES OF ELECTION.

(a)   Appointment.  In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof.  If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting.  The number of judges shall be one or three.  A person who is a candidate for office to be filled at the meeting shall not act as a judge.

(b)   Vacancies.  In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

(c)   Duties.  The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders.  The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical.  If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

(d)   Report.  On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them.  Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15.  CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

(a)   Unanimous Written Consent.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

(b)    Partial Written Consent. Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting. The consents shall be filed with the secretary of the corporation. The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

Section 3.16.  MINORS AS SECURITY HOLDERS.  The corporate on may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

# ARTICLE IV

## BOARD OF DIRECTORS

Section 4.01.  POWERS; PERSONAL LIABILITY.

(a)    General Rule. Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

(b)    Standard of Care: Justifiable Reliance.  A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

(1)    One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

11

(2)     Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3)     A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

(c)     <u>Consideration of Factors</u>.  In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b).

(d)     <u>Presumption</u>.  Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

(e)     <u>Personal Liability of Directors</u>.

(1)     A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

(i)     the director has breached or failed to perform the duties of his or her office under this section; and

(ii)     the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

(2)     The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law.

(f)     <u>Notation of Dissent</u>.  A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting.  The right to dissent shall not apply to a director who voted in favor of the action.  Nothing in this section

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her
dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in
writing, of the asserted omission or inaccuracy.

Section 4.02.   QUALIFICATION AND SELECTION OF DIRECTORS.

(a)   Qualifications.  Each director of the corporation shall be a natural person
of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b)   Election of Directors.  Except as otherwise provided in these bylaws,
directors of the corporation shall be elected by the shareholders.  In elections for directors,
voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the
election and before the voting begins.  The candidates receiving the highest number of votes
from each class or group of classes, if any, entitled to elect directors separately up to the
number of directors to be elected by the class or group of classes shall be elected.  If at any
meeting of shareholders, directors of more than one class are to be elected, each class of
directors shall be elected in a separate election.

(c)   Cumulative Voting.  Unless the articles provide for straight voting, in
each election of directors every shareholder entitled to vote shall have the right to multiply the
number of votes to which the shareholder may be entitled by the total number of directors to be
elected in the same election by the holders of the class or classes of shares of which his or her
shares are a part and the shareholders may cast the whole number of his or her votes for one
candidate or may distribute them among two or more candidates.

Section 4.03.   NUMBER AND TERM OF OFFICE.

(a)   Number.  The board of directors shall consist of two directors – one
Class A director and one Class B director.  Only shareholders owning Class A stock of the
corporation shall be entitled to cast votes to elect the Class A director.  Only shareholders
owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B
director.  The term of appointment of each of the Class A Director and the Class B Director
shall be one year.

(b)   Independent Advisor.  The shareholders shall cast votes to select an
independent advisor once annually at the same time the shareholders cast votes to elect the
directors.  The independent advisor shall not be a director and shall not be given notice of nor
attend any regular or special meetings of the board of directors unless and until the board is
unable to reach a resolution by the required number of director votes on a particular matter or
issue during a regular or special meeting.  Should the board become deadlocked in this manner,
any director may call a special meeting of the board for the sole purpose of resolving any such
deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that
the meeting will take place and that the independent advisor should attend.  At the meeting the
independent advisor will be permitted to cast one vote as if he or she were a director for the sole
purpose of breaking the deadlock.

(c)     _Term of Office_.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal. A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director.

(d)     _Resignation_.  Any director or independent advisor may resign at any time upon written notice to the corporation.  The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.  VACANCIES.

(a)     _General Rule_.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are be entitled to select a director to fill the directorship, or independent advisorship, as applicable.  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor.  Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     _Action by Directors in the Event of an Unfilled Vacancy_.  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.  REMOVAL OF DIRECTORS.

(a)     _Removal by the Shareholders_.  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors.  In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting.  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     _Removal by the Board_.  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

(c)     _Removal of Directors Elected by Cumulative Voting_.  An individual director shall not be removed (unless the entire board or class of the board is removed) if

14

sufficient votes are cast against the resolution for his removal which, if cumulatively voted at an annual or other regular election of directors, would be sufficient to elect one or more directors to the board or to the class.

Section 4.06.  PLACE OF MEETINGS.  Meetings of the board of directors may be held at such place within or without Pennsylvania as the board of directors may from time to time appoint or as may be designated in the notice of the meeting.

Section 4.07.  ORGANIZATION OF MEETINGS.  At every meeting of the board of directors, the chairman of the board, if there be one, or, in the case of a vacancy in the office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by a majority of the directors present, shall act as chairman of the meeting.  The secretary or, in the absence of the secretary, an assistant secretary, or, in the absence of the secretary and the assistant secretaries, any person appointed by the chairman of the meeting, shall act as secretary.

Section 4.08.  REGULAR MEETINGS.  Regular meetings of the board of directors shall be held at such time and place as shall be designated from time to time by resolution of the board of directors.

Section 4.09.  SPECIAL MEETINGS.  Special meetings of the board of directors shall be held whenever called by the chairman or by two or more of the directors.

Section 4.10.  QUORUM OF AND ACTION BY DIRECTORS.

(a)  General Rule.  A majority of the directors in office of the corporation shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present and voting at a meeting at which a quorum is present shall be the acts of the board of directors.  In the case of a vacancy in the board of directors, the remaining director and the independent advisor shall constitute a quorum.

(b)  Action by Written Consent.  Any action required or permitted to be taken at a meeting of the directors may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the directors in office is filed with the secretary of the corporation.

Section 4.11.  EXECUTIVE AND OTHER COMMITTEES.

(a)  Establishment and Powers.  The board of directors may, by resolution adopted by a majority of the directors in office, establish one or more committees to consist of one or more directors of the corporation.  Any committee, to the extent provided in the resolution of the board of directors, shall have and may exercise all of the powers and authority of the board of directors except that a committee shall not have any power or authority as to the following:

15

(1)    The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

(2)    The creation or filling of vacancies in the board of directors.

(3)    The adoption, amendment or repeal of these bylaws.

(4)    The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

(5)    Action on matters committed by a resolution of the board of directors to another committee of the board.

(b)    Alternate Committee Members.  The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee.  In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

(c)    Term.  Each committee of the board shall serve at the pleasure of the board.

(d)    Committee Procedures.  The term "board of directors" or' "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

Section 4.12.  COMPENSATION.  The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

## ARTICLE V

## OFFICERS

Section 5.01.  OFFICERS GENERALLY.

(a)    Number. Qualification and Designation.  The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03. Officers may but need not be directors or shareholders of the corporation. The president and secretary shall be natural persons of full age. The treasurer may be a corporation, but if a natural person shall be of full age. The board of

16

directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation. Any number of offices may be held by the same person.

(b)    Resignations. Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

(c)    Bonding. The corporation may secure the fidelity of any or all of its officers by bond or otherwise.

(d)    Standard of Care. Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

Section 5.02. ELECTION AND TERM OF OFFICE. The officers of the corporation, except those elected by delegated authority pursuant to Section 5.03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

Section 5.03. SUBORDINATE OFFICERS, COMMITTEES AND AGENTS. The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

Section 5.04. REMOVAL OF OFFICERS AND AGENTS. Any officer or agent of the corporation may be removed by the board of directors with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

Section 5.05. VACANCIES. A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to Section 5.03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5.06.  AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07.  THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.  THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors.  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5.09.  THE SECRETARY.  The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board. of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10.  THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.11.  SALARIES.  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board.  The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to

18

(ii)    to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(3)    to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

(b)    Partial Payment.    If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

(c)    Presumption.    The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contenders or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

(d)    Definitions.  For purposes of this Article:

(1)    "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2)    "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise):

(3)    "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

(4)    "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

Section    7.02.    PROCEEDINGS    INITIATED    BY    INDEMNIFIED REPRESENTATIVES.  Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in

a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office.  This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03.  ADVANCING EXPENSES.  The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04. SECURING OF INDEMNIFICATION OBLIGATIONS. to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate. Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05.  PAYMENT OF INDEMNIFICATION.  An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06.  ARBITRATION.

(a)  General Rule.  Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the

Section 8.04.   INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)   General Rule   A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)   the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)   the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)   the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders

(b)   Quorum   Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05   DEPOSITS.  All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.   CORPORATE RECORDS

(a)   Required Records.   The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent   Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

25

provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11. RELIANCE OF PROVISIONS. Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article.

Section 7.12. INTERPRETATION. The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01. CORPORATE SEAL. The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02. CHECKS. All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate.

Section 8.03. CONTRACTS.

(a)    General Rule. Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b)    Statutory Form of Execution of Instruments. Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

Section 8.04. INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)    General Rule. A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or

24

to make copies or extracts therefrom.  A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder. in every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder.  The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8.07.  FINANCIAL REPORTS.   Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year.  The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries.  The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed.  Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

(1)    Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation.

(2)    Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8.08.  AMENDMENT OF BYLAWS.  These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders.  See Section 2.03(b) (relating to notice of action by shareholders on bylaws).

## UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

## IN LIEU OF MEETING OF THE SHAREHOLDERS OF MEDIA STATION INC.

The undersigned Shareholders of Media Station Inc. (the "Corporation"), pursuant to 15 Pa. C.S.A. § 1766(a), consent in writing to the following.

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A" shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this 8th day of September, 2011 by unanimous consent of the Shareholders of the Corporation, as evidenced by their signatures below.


Lajos Bodo, Shareholder


Brooke P. Cottman, Shareholder

## CERTIFICATION

I, ~~Bruce P. Cotten~~ , Secretary of Media Station Inc., hereby certify that the attached is

a true and correct copy of the written consent executed by the Shareholders of Media Station

Inc., on the _8th_ day of _September_ , 2011.

_[signature]_
_____
Secretary

Exhibit B

BYLAWS

OF

TUNBRIDGE INC.

(a Pennsylvania corporation)

## ARTICLE I

### OFFICES AND FISCAL YEAR

Section 1.01. REGISTERED OFFICE. The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02. OTHER OFFICES. The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03. FISCAL YEAR. The fiscal year of the, corporation shall begin the 1st day of January in each year.

## ARTICLE II

### NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01. MANNER OF GIVING NOTICE.

(a) _General Rule_. Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice. If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received. A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)    Adjourned Shareholder Meetings.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02  NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03  NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)    General Rule.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)    ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)    five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)    Notice of Action by Shareholders on Bylaws.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws.  There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

Section 2.04.  WAIVER OF NOTICE

(a)   Written Waiver.  Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice.  Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting  In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)   Waiver by Attendance  Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05  MODIFICATION  OF  PROPOSAL  CONTAINED  IN  NOTICE Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose

Section 2.06.  EXCEPTION TO REQUIREMENT OF NOTICE.

(a)   General Rule.  Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)   Shareholders  Without  Forwarding  Addresses.   Notice  or  other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address.  Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.  USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other  Participation in a meeting pursuant to this section shall constitute presence in person at the meeting

ARTICLE III

SHAREHOLDERS

Section 3.01.   PLACE OF MEETING.   All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02   ANNUAL MEETING.   The board of directors ma y fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A. M., and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting.   If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter.   Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03.   SPECIAL MEETINGS.

(a)     Call of Special Meetings   Special meetings of the shareholders may be called at any time:

(1)     by the board of directors; or

(2)     unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting

(b)     Fixing Time of Meeting.   At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request   If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so.

Section 3.04   QUORUM AND ADJOURNMENT.

(a)     General Rule.   A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present   The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter   Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

      (b)   <u>Withdrawal of a Quorum</u>.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

      (c)   <u>Adjournment for Lack of Quorum</u>.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

      (d)   <u>Adjournments Generally</u>.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

      (e)   <u>Electing Directors at Adjourned Meeting</u>.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

      (f)   <u>Other Action in Absence of Quorum</u>.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.  ACTION BY SHAREHOLDERS.

      (a)   <u>General Rule</u>.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

      (b)   <u>Interested Shareholders</u>.  Any merger or other transaction authorized under 15 Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

<center>5</center>

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

      (c)    Exceptions  Subsection (b) shall not apply to a transaction:

      (1)    that has been approved by a majority vote of the board of directors without counting the vote of directors who:

      (i)    are directors or officers of, or have a material equity interest in, the interested shareholder; or

      (ii)    were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

      (2)    in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class

      (d)    Additional Approvals  The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

Section 3.06  ORGANIZATION. At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

Section 3.07.  VOTING RIGHTS OF SHAREHOLDERS. Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3.08.   VOTING AND OTHER ACTION BY PROXY.

    (a)   General Rule.

       (1)   Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

       (2)   The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

       (3)   Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

    (b)   Execution and Filing.   Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.   A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

       (1)   may be treated as properly executed for purposes of this section; and

       (2)   shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

    (c)   Revocation.   A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.   An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.   A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

    (d)   Expenses.   Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

by or on behalf of the board of directors or its nominees for election to the board, including solicitation by professional proxy solicitors and otherwise.

Section 3.09. VOTING BY FIDUCIARIES AND PLEDGEES.   Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may be voted by the trustee, fiduciary, assignee or receiver. A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10. VOTING BY JOINT HOLDERS OF SHARES.

(a)    General Rule.  Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)    if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)    if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)    Exception.  If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11  VOTING BY CORPORATIONS

(a)    Voting by Corporate Shareholders  Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

(b)   Controlled Shares.   Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time

Section 3.12.   DETERMINATION OF SHAREHOLDERS OF RECORD.

(a)   Fixing Record Date.   The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.   Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection.   The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose   When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting.

(b)   Determination When a Record Date is Not Fixed   If a record date is not fixed:

(1)   The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

(2)   The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

(3)   The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto

Section 3.13.   VOTING LISTS

(a)   General Rule.   The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

9

of shares held by each.  The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

(b)     Effect of List.  Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list.  The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14   JUDGES OF ELECTION

(a)     Appointment.  In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof.  If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting.  The number of judges shall be one or three.  A person who is a candidate for office to be filled at the meeting shall not act as a judge.

(b)     Vacancies.  In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

(c)     Duties.  The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders.  The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical.  If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

(d)     Report.  On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them.  Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15   CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

(a)     Unanimous Written Consent.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

      (b)    <u>Partial Written Consent</u>  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting. The consents shall be filed with the secretary of the corporation. The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

    Section 3.16  MINORS AS SECURITY HOLDERS. The corporate on may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

<div align="center">ARTICLE IV</div>

<div align="center">BOARD OF DIRECTORS</div>

    Section 4.01  POWERS; PERSONAL LIABILITY.

      (a)    <u>General Rule</u>  Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

      (b)    <u>Standard of Care; Justifiable Reliance</u>  A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

        (1)    One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

<div align="center">11</div>

    (2)  Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

    (3)  A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

    (c)  <u>Consideration of Factors</u>.  In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b).

    (d)  <u>Presumption</u>.  Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

    (e)  <u>Personal Liability of Directors</u>.

    (1)  A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

      (i)  the director has breached or failed to perform the duties of his or her office under this section; and

      (ii)  the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

    (2)  The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law.

    (f)  <u>Notation of Dissent</u>.  A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting  The right to dissent shall not apply to a director who voted in favor of the action.  Nothing in this section

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in writing, of the asserted omission or inaccuracy.

Section 4.02.   QUALIFICATION AND SELECTION OF DIRECTORS.

(a)   Qualifications   Each director of the corporation shall be a natural person of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b)   Election of Directors.   Except as otherwise provided in these bylaws, directors of the corporation shall be elected by the shareholders.   In elections for directors, voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the election and before the voting begins.   The candidates receiving the highest number of votes from each class or group of classes, if any, entitled to elect directors separately up to the number of directors to be elected by the class or group of classes shall be elected   If at any meeting of shareholders, directors of more than one class are to be elected, each class of directors shall be elected in a separate election

(c)   Cumulative Voting.   Unless the articles provide for straight voting, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which the shareholder may be entitled by the total number of directors to be elected in the same election by the holders of the class or classes of shares of which his or her shares are a part and the shareholders may cast the whole number of his or her votes for one candidate or may distribute them among two or more candidates.

Section 4.03   NUMBER AND TERM OF OFFICE

(a)   Number.   The board of directors shall consist of three directors – one Class A director, one Class B director and one Class C director   Only shareholders owning Class A stock of the corporation shall be entitled to cast votes to elect the Class A director. Only shareholders owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B director. Only shareholders owning Class C stock of the corporation shall be entitled to cast votes to elect the Class C director   The term of appointment of each of the Class A Director, the Class B Director and the Class C Director shall be one year.

(b)   Independent Advisor.   The shareholders shall cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors   The independent advisor shall not be a director and shall not be given notice of nor attend any regular or special meetings of the board of directors unless and until the board is unable to reach a resolution by the required number of director votes on a particular matter or issue during a regular or special meeting   Should the board become deadlocked in this manner, any director may call a special meeting of the board for the sole purpose of resolving any such deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that the meeting will take place and that the independent advisor should attend   At the meeting the

13

independent advisor will be permitted to cast one vote as if he or she were a director for the sole purpose of breaking the deadlock.

(c)     Term of Office.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.  A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director.

(d)     Resignation.  Any director or independent advisor may resign at any time upon written notice to the corporation.  The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.  VACANCIES.

(a)     General Rule.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are be entitled to select a director to fill the directorship, or independent advisorship, as applicable.  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor.  Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     Action by Directors in the Event of an Unfilled Vacancy.  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.  REMOVAL OF DIRECTORS.

(a)     Removal by the Shareholders.  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors.  In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting.  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     Removal by the Board.  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

14

of the board of directors except that a committee shall not have any power or authority as to the following:

        (1)    The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

        (2)    The creation or filling of vacancies in the board of directors.

        (3)    The adoption, amendment or repeal of these bylaws.

        (4)    The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

        (5)    Action on matters committed by a resolution of the board of directors to another committee of the board.

    (b)    <u>Alternate Committee Members</u>.  The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee.  In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

    (c)    <u>Term</u>.  Each committee of the board shall serve at the pleasure of the board.

    (d)    <u>Committee Procedures</u>.  The term "board of directors" or "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

    Section 4.12.  COMPENSATION.  The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

<div align="center">ARTICLE V</div>

<div align="center">OFFICERS</div>

Section 5.01.  OFFICERS GENERALLY.

    (a)    <u>Number, Qualification and Designation</u>.  The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03. Officers may but need not be directors or

<div align="center">16</div>

shareholders of the corporation. The president and secretary shall be natural persons of full age. The treasurer may be a corporation, but if a natural person shall be of full age. The board of directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation. Any number of offices may be held by the same person.

       (b)   <u>Resignations</u>. Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

       (c)   <u>Bonding</u>. The corporation may secure the fidelity of any or all of its officers by bond or otherwise.

       (d)   <u>Standard of Care</u>. Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

Section 5.02. ELECTION AND TERM OF OFFICE. The officers of the corporation, except those elected by delegated authority pursuant to Section 5.03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

Section 5.03. SUBORDINATE OFFICERS, COMMITTEES AND AGENTS. The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

Section 5.04. REMOVAL OF OFFICERS AND AGENTS. Any officer or agent of the corporation may be removed by the board of directors with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

Section 5.05. VACANCIES. A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to

Section 5.03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5.06   AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07   THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.   THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors.  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5.09.   THE SECRETARY   The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10   THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

18

Section 5.11. SALARIES  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board. The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to Section 5.03  No officer shall be prevented from receiving such salary or other compensation by reason of the fact that the officer is also a director of the corporation.

Section 5.12. DISALLOWED COMPENSATION.  Any payments made to an officer or employee of the corporation such as a salary, commission, bonus, interest, rent, travel or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or employee to the corporation to the full extent of such disallowance  It shall be the duty of the directors, as a Board, to enforce payment of each such amount disallowed  In lieu of payment by the officer or employee, subject to the determination of the directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE VI

## CERTIFICATES OF STOCK, TRANSFER, ETC.

Section 6.01  SHARE CERTIFICATES  If the articles state that the corporation shall issue uncertificated shares, the corporation shall give shareholders all information concerning their shares as is required by law. If the corporation issues certificates, such certificates for shares of the corporation shall be in such form as approved by the board of directors, and shall state that the corporation is incorporated under the laws of Pennsylvania, the name of the person to whom issued, and the number and class of shares and the designation of the series (if any) that the certificate represents  The share register or transfer books and blank share certificates shall be kept by the secretary or by any transfer agent or registrar designated by the board of directors for that purpose.

Section 6.02. ISSUANCE.  The share certificates of the corporation shall be numbered and registered in the share register or transfer books of the corporation as they are issued. They shall be signed by the president or a vice president and by the secretary or an assistant secretary or the treasurer or an assistant treasurer, and shall bear the corporate seal, which may be a facsimile, engraved or printed; but where such certificate is signed by a transfer agent or a registrar the signature of any corporate officer upon such certificate may be a facsimile, engraved or printed. In case any officer who has signed, or whose facsimile signature has been placed upon, any share certificate shall have ceased to be such officer because of death, resignation or otherwise, before the certificate is issued, it may be issued with the same effect as if the officer had not ceased to be such at the date of its issue. The provisions of this Section 6.02 shall be subject to any inconsistent or contrary agreement at the time between the corporation and any transfer agent or registrar.

19

Section 6.03.  TRANSFER.  Transfers of shares shall be made on the share register or transfer books of the corporation upon surrender of the certificate therefor, endorsed by the person named in the certificate or by an attorney lawfully constituted in writing.  No transfer shall be made inconsistent with the provisions of the Uniform Commercial Code, 13 Pa.C.S § 8101 et seq., and its amendments and supplements.

Section 6.04.  RECORD HOLDER OF SHARES.  The corporation shall be entitled to treat the person in whose name any share or shares of the corporation stand on the books of the corporation as the absolute owner thereof, and shall not be bound to recognize any equitable or other claim to, or interest in, such share or shares on the part of any other person.

Section 6.05.  LOST, DESTROYED OR MUTILATED CERTIFICATES.  The holder of any shares of the corporation shall immediately notify the corporation of any loss, destruction or mutilation of the certificate therefor, and the board of directors may, in its discretion, cause a new certificate or certificates to be issued to such holder, in case of mutilation of the certificate, upon the surrender of the mutilated certificate or, in case of loss or destruction of the certificate, upon satisfactory proof of such loss or destruction and, if the board of directors shall so determine, the deposit of a bond in such form and in such sum, and with such surety or sureties, as it may direct.

## ARTICLE VII

## INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER AUTHORIZED REPRESENTATIVES

Section 7.01.  SCOPE OF INDEMNIFICATION

(a)  <u>General Rule</u>    The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

(1)    where such indemnification is expressly prohibited by applicable law;

(2)    where the conduct of the indemnified representative has been finally determined pursuant to Section 7.06 or otherwise:

(i)    to constitute willful misconduct or recklessness within the meaning of 15 Pa. C.S § 513(b) and 1746(b) and 42 Pa. C.S § 8365(b)

20

or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

       (ii)     to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

       (3)     to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

       (b)     _Partial Payment_.  If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

       (c)     _Presumption_.  The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

       (d)     _Definitions_.  For purposes of this Article:

       (1)     "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

       (2)     "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise);

       (3)     "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

       (4)     "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

Section 7.02. PROCEEDINGS INITIATED BY INDEMNIFIED REPRESENTATIVES. Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03. ADVANCING EXPENSES. The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04. SECURING OF INDEMNIFICATION OBLIGATIONS. to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate. Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05. PAYMENT OF INDEMNIFICATION. An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06. ARBITRATION.

(a)     General Rule. Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by

22

the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator within 30 days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area

(b)     Burden of Proof   The party or parties challenging the right of an indemnified representative to the benefits of this Article shall have the burden of proof.

(c)     Expenses   The corporation shall reimburse an indemnified representative for the expenses (including attorneys' fees and disbursements) incurred in successfully prosecuting or defending such arbitration

(d)     Effect   Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon. by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative under Section 7.01(a)(2) in a proceeding not directly involving indemnification under this Article   This arbitration provision shall be specifically enforceable

Section 7.07   CONTRIBUTION. If the indemnification provided for in this Article or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article or otherwise.

Section 7.08   MANDATORY INDEMNIFICATION OF DIRECTORS, OFFICERS, ETC   To the extent that an authorized representative of the corporation has been successful on the merits or otherwise ill defense of any action or proceeding referred to in 15 Pa. C.S. § 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such person in connection therewith

Section 7.09   CONTRACT RIGHTS; AMENDMENT OR REPEAL. All rights under this Article shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing

Section 7.10.   SCOPE OF ARTICLE.   The rights granted by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or

advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity.   The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11.   RELIANCE OF PROVISIONS   Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article

Section 7.12   INTERPRETATION.   The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01.   CORPORATE SEAL   The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02.   CHECKS.   All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate

Section 8.03.   CONTRACTS.

(a)   General Rule.   Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b)   Statutory Form of Execution of Instruments.   Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

24

Section 8.04.  INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)    General Rule.  A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)    the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)    the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)    the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders

(b)    Quorum.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05  DEPOSITS.  All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.  CORPORATE RECORDS

(a)    Required Records.  The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent.  Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

25

(b)    Right of Inspection    Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom.  A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder. in every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder   The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8 07  FINANCIAL REPORTS.    Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year. The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries  The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed  Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

(1)    Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation

(2)    Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8 08  AMENDMENT OF BYLAWS.   These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders  See Section 2.03(b) (relating to notice of action by shareholders on bylaws)

## CERTIFICATION

I, _Brooke Cottrom_, Secretary of Tunbridge Inc., hereby certify that the attached is a true and correct copy of the written consent executed by the Shareholders of Tunbridge Inc., on the _84h_ day of _September_, 2011.


_Brooke J. Cottre_
Secretary

## UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

## IN LIEU OF MEETING OF THE SHAREHOLDERS OF TUNBRIDGE INC.

The undersigned Shareholders of Tunbridge Inc. (the "Corporation"), pursuant to 15 Pa. C.S.A. § 1766(a), consent in writing to the following:

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A" shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this 8th day of September, 2011 by unanimous consent of the Shareholders of the Corporation, as evidenced by their signatures below.

_____
Lajos Bodo, Shareholder

_____
Brooke P. Cottman, Shareholder

_____
Edward Coslett, Jr., Shareholder

Exhibit C

BYLAWS

OF

SCARBOROUGH MEWS, INC.

(a Pennsylvania corporation)

## ARTICLE I

### OFFICES AND FISCAL YEAR

Section 1.01.  REGISTERED OFFICE.  The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02.  OTHER OFFICES.  The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03.  FISCAL YEAR.  The fiscal year of the, corporation shall begin the 1st day of January in each year.

## ARTICLE II

### NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01.  MANNER OF GIVING NOTICE.

(a)    General Rule.  Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice.  If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received.  A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)     Adjourned Shareholder Meetings.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02.  NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03   NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)     General Rule.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)     ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)     five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)     Notice of Action by Shareholders on Bylaws.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws.  There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

2

Section 2.04.  WAIVER OF NOTICE

(a)    Written Waiver.  Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice  Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting  In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)    Waiver by Attendance.  Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05.  MODIFICATION OF PROPOSAL CONTAINED IN NOTICE. Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose.

Section 2.06.  EXCEPTION TO REQUIREMENT OF NOTICE.

(a)    General Rule.  Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)    Shareholders Without Forwarding Addresses.  Notice or other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address. Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.  USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other. Participation in a meeting pursuant to this section shall constitute presence in person at the meeting.

3

# ARTICLE III

## SHAREHOLDERS

Section 3.01   PLACE OF MEETING.   All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02.   ANNUAL MEETING.   The board of directors may fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A.M., and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting.   If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter   Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03.   SPECIAL MEETINGS.

(a)   Call of Special Meetings.   Special meetings of the shareholders may be called at any time:

(1)   by the board of directors; or

(2)   unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting.

(b)   Fixing Time of Meeting.   At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request.   If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so.

Section 3.04.   QUORUM AND ADJOURNMENT.

(a)   General Rule   A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present   The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter.   Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

(b)     Withdrawal of a Quorum.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

(c)     Adjournment for Lack of Quorum.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

(d)     Adjournments Generally.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

(e)     Electing Directors at Adjourned Meeting.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

(f)     Other Action in Absence of Quorum.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.  ACTION BY SHAREHOLDERS

(a)     General Rule.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

(b)     Interested Shareholders.  Any merger or other transaction authorized under 15Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

(c)     Exceptions. Subsection (b) shall not apply to a transaction:

(1)     that has been approved by a majority vote of the board of directors without counting the vote of directors who:

(i)     are directors or officers of, or have a material equity interest in, the interested shareholder; or

(ii)     were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

(2)     in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class.

(d)     Additional Approvals. The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

Section 3.06.  ORGANIZATION.  At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

Section 3.07.  VOTING RIGHTS OF SHAREHOLDERS.  Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3.08.  VOTING AND OTHER ACTION BY PROXY.

    (a)    General Rule.

        (1)    Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

        (2)    The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

        (3)    Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

    (b)    Execution and Filing.  Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.  A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

        (1)    may be treated as properly executed for purposes of this section; and

        (2)    shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

    (c)    Revocation.  A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.  An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.  A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

    (d)    Expenses.  Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

by or on behalf of the board of directors or its nominees for election to the board, including solicitation. by professional proxy solicitors and otherwise.

Section 3.09. VOTING BY FIDUCIARIES AND PLEDGEES.   Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may he voted by the trustee, fiduciary, assignee or receiver. A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10.  VOTING BY JOINT HOLDERS OF SHARES.

(a)    General Rule. Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)    if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)    if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)    Exception. If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11.  VOTING BY CORPORATIONS

(a)    Voting by Corporate Shareholders. Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

(b)   <u>Controlled Shares</u>   Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time

Section 3.12.   DETERMINATION OF SHAREHOLDERS OF RECORD.

(a)   <u>Fixing Record Date</u>.   The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.   Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection   The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose.   When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting

(b)   <u>Determination When a Record Date is Not Fixed</u>.   If a record date is not fixed:

(1)   The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

(2)   The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

(3)   The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto

Section 3.13.   VOTING LISTS.

(a)   <u>General Rule</u>.   The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

of shares held by each. The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

(b)     Effect of List.  Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list.  The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14.  JUDGES OF ELECTION.

(a)     Appointment.  In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof.  If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting.  The number of judges shall be one or three.  A person who is a candidate for office to be filled at the meeting shall not act as a judge.

(b)     Vacancies.  In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

(c)     Duties.  The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders.  The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical.  If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

(d)     Report.  On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them.  Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15.  CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

(a)     Unanimous Written Consent.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

(b)     Partial Written Consent   Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting. The consents shall be filed with the secretary of the corporation. The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

Section 3.16   MINORS AS SECURITY HOLDERS.   The corporation may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

## ARTICLE IV

## BOARD OF DIRECTORS

Section 4.01   POWERS; PERSONAL LIABILITY.

(a)     General Rule   Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

(b)     Standard of Care; Justifiable Reliance.   A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

(1)     One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

11

(2)     Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3)     A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

(c)     <u>Consideration of Factors</u>   In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b)

(d)     <u>Presumption</u>   Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

(e)     <u>Personal Liability of Directors</u>.

(1)     A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

(i)     the director has breached or failed to perform the duties of his or her office under this section; and

(ii)     the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

(2)     The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law

(f)     <u>Notation of Dissent</u>   A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting. The right to dissent shall not apply to a director who voted in favor of the action. Nothing in this section

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in writing, of the asserted omission or inaccuracy.

Section 4.02   QUALIFICATION AND SELECTION OF DIRECTORS.

(a)    Qualifications  Each director of the corporation shall be a natural person of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b)    Election of Directors.  Except as otherwise provided in these bylaws, directors of the corporation shall be elected by the shareholders.  In elections for directors, voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the election and before the voting begins.  The candidates receiving the highest number of votes from each class or group of classes, if any, entitled to elect directors separately up to the number of directors to be elected by the class or group of classes shall be elected.  If at any meeting of shareholders, directors of more than one class are to be elected, each class of directors shall be elected in a separate election.

(c)    Cumulative Voting.  Unless the articles provide for straight voting, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which the shareholder may be entitled by the total number of directors to be elected in the same election by the holders of the class or classes of shares of which his or her shares are a part and the shareholders may cast the whole number of his or her votes for one candidate or may distribute them among two or more candidates.

Section 4.03.   NUMBER AND TERM OF OFFICE.

(a)    Number.  The board of directors shall consist of three directors – one Class A director, one Class B director and one Class C director.  Only shareholders owning Class A stock of the corporation shall be entitled to cast votes to elect the Class A director.  Only shareholders owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B director.  Only shareholders owning Class C stock of the corporation shall be entitled to cast votes to elect the Class C director.  The term of appointment of each of the Class A Director, the Class B Director and the Class C Director shall be one year.

(b)    Independent Advisor.  The shareholders shall cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors. The independent advisor shall not be a director and shall not be given notice of nor attend any regular or special meetings of the board of directors unless and until the board is unable to reach a resolution by the required number of director votes on a particular matter or issue during a regular or special meeting.  Should the board become deadlocked in this manner, any director may call a special meeting of the board for the sole purpose of resolving any such deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that the meeting will take place and that the independent advisor should attend.  At the meeting the

independent advisor will be permitted to cast one vote as if he or she were a director for the sole purpose of breaking the deadlock.

(c)     Term of Office.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.  A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director.

(d)     Resignation.  Any director or independent advisor may resign at any time upon written notice to the corporation.  The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.   VACANCIES.

(a)     General Rule.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are ~~be~~ entitled to select a director to fill the directorship, or independent advisorship, as applicable.  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor.  Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     Action by Directors in the Event of an Unfilled Vacancy.  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.   REMOVAL OF DIRECTORS.

(a)     Removal by the Shareholders.  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors.  In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting.  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     Removal by the Board.  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

14

(c)     Removal of Directors Elected by Cumulative Voting.  An individual director shall not be removed (unless the entire board or class of the board is removed) if sufficient votes are cast against the resolution for his removal which, if cumulatively voted at an annual or other regular election of directors, would be sufficient to elect one or more directors to the board or to the class.

Section 4.06.  PLACE OF MEETINGS.  Meetings of the board of directors may be held at such place within or without Pennsylvania as the board of directors may from time to time appoint or as may be designated in the notice of the meeting.

Section 4.07.  ORGANIZATION OF MEETINGS.  At every meeting of the board of directors, the chairman of the board, if there be one, or, in the case of a vacancy in the office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by a majority of the directors present, shall act as chairman of the meeting.  The secretary or, in the absence of the secretary, an assistant secretary, or, in the absence of the secretary and the assistant secretaries, any person appointed by the chairman of the meeting, shall act as secretary.

Section 4.08.  REGULAR MEETINGS.  Regular meetings of the board of directors shall be held at such time and place as shall be designated from time to time by resolution of the board of directors.

Section 4.09.  SPECIAL MEETINGS.  Special meetings of the board of directors shall be held whenever called by the chairman or by two or more of the directors.

Section 4.10.  QUORUM OF AND ACTION BY DIRECTORS.

(a)     General Rule.  A majority of the directors in office of the corporation shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present and voting at a meeting at which a quorum is present shall be the acts of the board of directors.  In the case of a vacancy in the board of directors, the remaining director and the independent advisor shall constitute a quorum.

(b)     Action by Written Consent.  Any action required or permitted to be taken at a meeting of the directors may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the directors in office is filed with the secretary of the corporation.

Section 4.11.  EXECUTIVE AND OTHER COMMITTEES.

(a)     Establishment and Powers.  The board of directors may, by resolution adopted by a majority of the directors in office, establish one or more committees to consist of one or more directors of the corporation.  Any committee, to the extent provided in the resolution of the board of directors, shall have and may exercise all of the powers and authority

15

of the board of directors except that a committee shall not have any power or authority as to the following:

(1)    The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

(2)    The creation or filling of vacancies in the board of directors.

(3)    The adoption, amendment or repeal of these bylaws.

(4)    The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

(5)    Action on matters committed by a resolution of the board of directors to another committee of the board.

(b)    Alternate Committee Members.  The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee.  In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

(c)    Term.  Each committee of the board shall serve at the pleasure of the board.

(d)    Committee Procedures.  The term "board of directors" or "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

Section 4.12.  COMPENSATION  The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

## ARTICLE V

## OFFICERS

Section 5.01.  OFFICERS GENERALLY.

(a)    Number, Qualification and Designation.  The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03.  Officers may but need not be directors or

16

shareholders of the corporation. The president and secretary shall be natural persons of full age The treasurer may be a corporation, but if a natural person shall be of full age. The board of directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation  Any number of offices may be held by the same person.

      (b)    <u>Resignations</u>.  Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

      (c)    <u>Bonding</u>.  The corporation may secure the fidelity of any or all of its officers by bond or otherwise

      (d)    <u>Standard of Care</u>.  Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.  A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

Section 5.02   ELECTION AND TERM OF OFFICE.  The officers of the corporation, except those elected by delegated authority pursuant to Section 5.03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

Section 5.03.   SUBORDINATE OFFICERS, COMMITTEES AND AGENTS.   The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine.  The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

Section 5.04   REMOVAL OF OFFICERS AND AGENTS   Any officer or agent of the corporation may be removed by the board of directors with or without cause.  The removal shall be without prejudice to the contract rights, if any, of any person so removed.  Election or appointment of an officer or agent shall not of itself create contract rights.

Section 5.05.   VACANCIES.  A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to

Section 5 03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5 06.  AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07.  THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.  THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5 09.  THE SECRETARY.  The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10.  THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.11.   SALARIES.  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board.  The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to Section 5.03.  No officer shall be prevented from receiving such salary or other compensation by reason of the fact that the officer is also a director of the corporation.

Section 5.12.   DISALLOWED COMPENSATION.  Any payments made to an officer or employee of the corporation such as a salary, commission, bonus, interest, rent, travel or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or employee to the corporation to the full extent of such disallowance.  It shall be the duty of the directors, as a Board, to enforce payment of each such amount disallowed.  In lieu of payment by the officer or employee, subject to the determination of the directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE VI

### CERTIFICATES OF STOCK, TRANSFER, ETC.

Section 6.01.   SHARE CERTIFICATES.  If the articles state that the corporation shall issue uncertificated shares, the corporation shall give shareholders all information concerning their shares as is required by law.  If the corporation issues certificates, such certificates for shares of the corporation shall be in such form as approved by the board of directors, and shall state that the corporation is incorporated under the laws of Pennsylvania, the name of the person to whom issued, and the number and class of shares and the designation of the series (if any) that the certificate represents.  The share register or transfer books and blank share certificates shall be kept by the secretary or by any transfer agent or registrar designated by the board of directors for that purpose.

Section 6.02.   ISSUANCE.  The share certificates of the corporation shall be numbered and registered in the share register or transfer books of the corporation as they are issued.  They shall be signed by the president or a vice president and by the secretary or an assistant secretary or the treasurer or an assistant treasurer, and shall bear the corporate seal, which may be a facsimile, engraved or printed; but where such certificate is signed by a transfer agent or a registrar the signature of any corporate officer upon such certificate may be a facsimile, engraved or printed.  In case any officer who has signed, or whose facsimile signature has been placed upon, any share certificate shall have ceased to be such officer because of death, resignation or otherwise, before the certificate is issued, it may be issued with the same effect as if the officer had not ceased to be such at the date of its issue.  The provisions of this Section 6.02 shall be subject to any inconsistent or contrary agreement at the time between the corporation and any transfer agent or registrar.

Section 6.03.   TRANSFER.   Transfers of shares shall be made on the share register or transfer books of the corporation upon surrender of the certificate therefor, endorsed by the person named in the certificate or by an attorney lawfully constituted in writing.  No transfer shall be made inconsistent with the provisions of the Uniform Commercial Code, 13 Pa C.S. § 8101 et seq., and its amendments and supplements.

Section 6.04   RECORD HOLDER OF SHARES   The corporation shall be entitled to treat the person in whose name any share or shares of the corporation stand on the books of the corporation as the absolute owner thereof, and shall not be bound to recognize any equitable or other claim to, or interest in, such share or shares on the part of any other person

Section 6.05.   LOST, DESTROYED OR MUTILATED CERTIFICATES.   The holder of any shares of the corporation shall immediately notify the corporation of any loss, destruction or mutilation of the certificate therefor, and the board of directors may, in its discretion, cause a new certificate or certificates to be issued to such holder, in case of mutilation of the certificate, upon the surrender of the mutilated certificate or, in case of loss or destruction of the certificate, upon satisfactory proof of such loss or destruction and, if the board of directors shall so determine, the deposit of a bond in such form and in such sum, and with such surety or sureties, as it may direct.

## ARTICLE VII

## INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER AUTHORIZED REPRESENTATIVES

Section 7.01.   SCOPE OF INDEMNIFICATION.

(a)   _General Rule._   The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

(1)   where such indemnification is expressly prohibited by applicable law;

(2)   where the conduct of the indemnified representative has been finally determined pursuant to Section 7.06 or otherwise:

(i)   to constitute willful misconduct or recklessness within the meaning of 15 Pa. C.S. § 513(b) and 1746(b) and 42 Pa C S § 8365(b)

or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

(ii)    to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(3)    to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

(b)    Partial Payment.  If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

(c)    Presumption.  The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contenders or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

(d)    Definitions.  For purposes of this Article:

(1)    "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2)    "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise):

(3)    "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

(4)    "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

21

Section 7.02. PROCEEDINGS INITIATED BY INDEMNIFIED REPRESENTATIVES. Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03. ADVANCING EXPENSES. The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04. SECURING OF INDEMNIFICATION OBLIGATIONS. to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate. Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05. PAYMENT OF INDEMNIFICATION. An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06. ARBITRATION.

(a) General Rule. Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by

the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator within 30 days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area.

(b)   Burden of Proof.  The party or parties challenging the right of an indemnified representative to the benefits of this Article shall have the burden of proof.

(c)   Expenses.  The corporation shall reimburse an indemnified representative for the expenses (including attorneys' fees and disbursements) incurred in successfully prosecuting or defending such arbitration

(d)   Effect.  Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative under Section 7.01(a)(2) in a proceeding not directly involving indemnification under this Article  This arbitration provision shall be specifically enforceable.

Section 7.07.  CONTRIBUTION.  If the indemnification provided for in this Article or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article or otherwise.

Section 7.08.  MANDATORY INDEMNIFICATION OF DIRECTORS, OFFICERS, ETC.  To the extent that an authorized representative of the corporation has been successful on the merits or otherwise ill defense of any action or proceeding referred to in 15 Pa C S  § 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such person in connection therewith.

Section 7.09.  CONTRACT RIGHTS; AMENDMENT OR REPEAL.  All rights under this Article shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound.  Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing

Section 7.10.  SCOPE OF ARTICLE.  The rights granted by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or

advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity. The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11. RELIANCE OF PROVISIONS. Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article.

Section 7.12 INTERPRETATION. The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

<div align="center">

**ARTICLE VIII**
**MISCELLANEOUS**

</div>

Section 8.01. CORPORATE SEAL The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02. CHECKS. All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate.

Section 8.03 CONTRACTS.

(a) General Rule. Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b) Statutory Form of Execution of Instruments. Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

Section 8.04.   INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)    <u>General Rule</u>.  A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)    the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)    the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)    the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

(b)    Quorum.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05.   DEPOSITS.  All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.   CORPORATE RECORDS.

(a)    Required Records.  The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent.  Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

25

(b)  <u>Right of Inspection</u>.  Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom.  A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder.  In every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder.  The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8.07.  FINANCIAL REPORTS.   Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year.  The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries.  The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed.  Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

(1)   Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation.

(2)   Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8.08.  AMENDMENT OF BYLAWS.   These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders.  See Section 2.03(b) (relating to notice of action by shareholders on bylaws).

# CERTIFICATION

I, _Brooke S. Cottman_, Secretary of Scarborough Mews, Inc., hereby certify that the attached is a true and correct copy of the written consent executed by the Shareholders of Scarborough Mews, Inc., on the ___ day of _SEPTEMBER_ , 2011.


_Brooke S. Cottman_
Secretary

# UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

# IN LIEU OF MEETING OF THE SHAREHOLDERS OF SCARBOROUGH MEWS, INC.

The undersigned Shareholders of Scarborough Mews, Inc. (the "Corporation"), pursuant to 15 Pa. C.S.A. § 1766(a), consent in writing to the following:

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A" shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this 8th day of September 2011 by unanimous consent of the Shareholders of the Corporation, as evidenced by their signatures below.

_____
Lajos Bodo, Shareholder

_____
Brooke P. Cottman, Shareholder

_____
Edward W. Coslett, Jr., Shareholder

Exhibit D

# AptRentz, LLC

**For property located at:** _____ Media Station Apartments, 340 Media Station Road, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____ ✔

**Partnership(s):** _____ Media Station Apartments, LP _____ ✓

**Agent(s):** _____ AptRentz, LLC _____

# Management Agreement

List of Provisions

Section 1 Appointment of Managing Agent
  1.1   Appointment and Acceptance
  1.2   Description of Premises
  1.3   Term
  1.4   Management Office
  1.5   Apartment for On-Site Staff

Section 2 Bank Accounts
  2.1   Operating (and/or) Reserve Account(s)
  2.1.1 Initial Deposit and Contingency Reserve
  2.2   Security Deposit Account
  2.3   Fidelity Bond
Section 3 Collection of Rents and Other Receipts
  3.1   Agent's Authority
  3.2   Special Charges
  3.3   Security Deposits
Section 4 Disbursements from Operating (and/or) Reserve Accounts
  4.1   Operating Expenses
  4.2   Debt Service

Section 5 Agent Not Required to Advance Funds
Section 6 Financial and Other Reports
  6.1   Partnership's Right to Audit
Section 7 Advertising
Section 8 Leasing and Renting
  8.1   Agent's Authority to Lease Premises
  8.2   No Other Rental Agent
  8.3   Rental Rates
  8.4   Enforcement of Leases

Section 9 Employees
  9.1   Agent's Authority to Hire
  9.2   Partnership Pays Employee Expenses
  9.3   Agent's Authority to file returns
  9.4   Workers' Compensation Insurance
  9.5   Hold Harmless, Labor Laws

Section 10 Maintenance and Repair
  10.1  Approval for Exceptional Maintenance Expense
Section 11 Contracts, Utilities and Services

Section 12 Relationship of Agent to Partnership
Section 13 Save Harmless
Section 14 Liability Insurance
Section 15 Agent Assumes No Liability
Section 16 Partnership Responsible for All Expenses of Litigation
  16.1  Fees for Legal Advice
Section 17 Agent's Compensation and Expenses
  17.1  For Management Services
  17.2  For Apartment Leasing
  17.3  For Commercial Leasing
  17.4  For Modernization (Rehab/Construction)
  17.5  For Fire Restoration
  17.6  For Other Items of Mutual Agreement
  17.7  Interest on Unpaid Sums
Section 18 Representations

Section 19 Structural Changes
Section 20 Building Compliance
Section 21 Termination
  21.1  Termination by Either Party
  21.2  Termination for Cause
      a) Breach of Agreement
      b) Failure to Act, etc.
      c) Excessive Damage
      d) Inadequate Insurance
  21.3  Termination Compensation Partnership Responsible for
  21.4  Payments
  21.5  Sale of Premises
Section 22 Indemnification Survives Termination
Section 23 Headings
Section 24 Force Majeur
Section 25 Complete Agreement

Section 26 Rights Cumulative; No Waiver
Section 27 Applicable Law and Partial Invalidity
Section 28 Notices
Section 29 Agreement Binding Upon Successors and Assigns

Power of Attorney

This Agreement is made this _____12th_____ day of _____June_____ ✓ 2017 ,

by and between _____Media Station Apartments, LP_____ ("Partnership") and

_____AptRentz, LLC_____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____Media_____ Station Apartments _____, located at_____340 Media Station Road, Media, PA 19063_____consisting of the land, buildings, and other improvements described as: two parcels of land totaling approximately 24 acres, parking for 390 vehicles, 3 - three and four-story apartment buildings containing a total of 204 apartment units, a detached rental office, in-ground pool, activity court, and leased parking garages.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____five (5) year(s)_____ ("initial term") from the _____12th_____Day of _____June 2017_____ ✓ , and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office. Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants. The specific apartment(s) shall be the Partnership's choice.

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____ Media Station Management _____ Operating (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____ 166,000.00 _____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $__ 166,000.00 ___ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits

and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

### 3.2 Special Charges

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

### 3.3 Security Deposits

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 Operating Expenses

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 Debt Service

Partnership shall give Agent advance written notice of at least ___10 business___ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including

interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____20th_____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month.  In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable.  Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws.  The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s).  All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises.  Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases.  Agent shall execute all leases as agent for the Partnership. All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s).  No lease shall be in excess of _____1_____ years(s) without written approval by Partnership.  The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises.  Partnership agrees to promptly forward all inquiries about lease to Agent.

## 8.3 Rental Rates

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

## 8.4 Enforcement of Leases

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____without prior approval by Partnership. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership. Agent may select the attorney of its choice to handle such litigation.

---

## SECTION 9, EMPLOYEES

### 9.1 Agent's Authority to Hire

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

### 9.2 Partnership Pays Employee Expenses

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.

### 9.3 Agent's Authority to File Returns

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

## 9.4 Workers' Compensation Insurance

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

## 9.5 Hold Harmless, Labor Laws

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

# SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

## 10.1 Approval for Exceptional Maintenance Expenses

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $_____15,000.00_____, unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

# SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $_____15,000.00_____ unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within ___10 business___ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of ___60 business___ days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.

### 16.1 Fees for Legal Advice

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.

## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i)_____$6,700.00_____ ✓ per month or (ii)_____3.00%_____ of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month for the duration of this Agreement. Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due. The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income. Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
N/A

### 17.3 For Commercial Leasing
N/A

### 17.4 For Modernization (Rehab/Construction)

$2,000.00 per unit Fee

**17.5 For Fire Restoration**

N/A

**17.6 For Other Items of Mutual Agreement**

Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts.

**17.7 For Interest on Unpaid Sums**

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____ days after such sums have become due, shall bear interest at the rate of _____10.00_____ % per annum.

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters. Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of _____60_____ days' written notice prior to the end of said initial term or following term year.

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a) Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured. However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Partnership set forth herein.

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

## 21.3 Termination Compensation

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred.  Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills.  In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts.  Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately.  Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement.  All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination;

and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of ____PA____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Media Station Apartments, LP_____ ✓_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this _____12ᵗʰ_____ day of __June__ _____ 20 17 .

Witness

_____

_____

_____

_____

Partnership

X _Barabu J. Catt_ PRES

Company

_Media Station Apartments, LP_

Address

_340 Media Station Rd._

City, State, Zip

_Media, PA 19063_

Agent

Firm _AptRentz, LLC_

Name _____  Jennie Mopsik, as managing agent

_____

Submitted by

Exhibit E

# AptRentz, LLC

**For property located at:** _____ Tunbridge Apartments, 274 Glen Riddle Road, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____ ✔

**Partnership(s):** _____ Tunbridge Apartments, LP _____ ✔

**Agent(s):** _____ AptRentz, LLC _____

# Management Agreement

List of Provisions

**Section 1 Appointment of Managing Agent**
| 1.1 | Appointment and Acceptance |
| 1.2 | Description of Premises |
| 1.3 | Term |
| 1.4 | Management Office |
| 1.5 | Apartment for On-Site Staff |

**Section 2 Bank Accounts**
| 2.1 | Operating (and/or) Reserve Account(s) |
| 2.1.1 | Initial Deposit and Contingency Reserve |
| 2.2 | Security Deposit Account |
| 2.3 | Fidelity Bond |

**Section 3 Collection of Rents and Other Receipts**
| 3.1 | Agent's Authority |
| 3.2 | Special Charges |
| 3.3 | Security Deposits |

**Section 4 Disbursements from Operating (and/or) Reserve Accounts**
| 4.1 | Operating Expenses |
| 4.2 | Debt Service |

**Section 5 Agent Not Required to Advance Funds**
**Section 6 Financial and Other Reports**
| 6.1 | Partnership's Right to Audit |

**Section 7 Advertising**
**Section 8 Leasing and Renting**
| 8.1 | Agent's Authority to Lease Premises |
| 8.2 | No Other Rental Agent |
| 8.3 | Rental Rates |
| 8.4 | Enforcement of Leases |

**Section 9 Employees**
| 9.1 | Agent's Authority to Hire |
| 9.2 | Partnership Pays Employee Expenses |
| 9.3 | Agent's Authority to file returns |
| 9.4 | Workers' Compensation Insurance |
| 9.5 | Hold Harmless, Labor Laws |

**Section 10 Maintenance and Repair**
| 10.1 | Approval for Exceptional Maintenance Expense |

**Section 11 Contracts, Utilities and Services**

**Section 12 Relationship of Agent to Partnership**
**Section 13 Save Harmless**
**Section 14 Liability Insurance**
**Section 15 Agent Assumes No Liability**
**Section 16 Partnership Responsible for All Expenses of Litigation**
| 16.1 | Fees for Legal Advice |

**Section 17 Agent's Compensation and Expenses**
| 17.1 | For Management Services |
| 17.2 | For Apartment Leasing |
| 17.3 | For Commercial Leasing |
| 17.4 | For Modernization (Rehab/Construction) |
| 17.5 | For Fire Restoration |
| 17.6 | For Other Items of Mutual Agreement |
| 17.7 | Interest on Unpaid Sums |

**Section 18 Representations**

**Section 19 Structural Changes**
**Section 20 Building Compliance**
**Section 21 Termination**
| 21.1 | Termination by Either Party |
| 21.2 | Termination for Cause |
| | a) Breach of Agreement |
| | b) Failure to Act, etc. |
| | c) Excessive Damage |
| | d) Inadequate Insurance |
| 21.3 | Termination Compensation |
| 21.4 | Partnership Responsible for Payments |
| 21.5 | Sale of Premises |

**Section 22 Indemnification Survives Termination**
**Section 23 Headings**
**Section 24 Force Majeur**
**Section 25 Complete Agreement**
**Section 26 Rights Cumulative; No Waiver**
**Section 27 Applicable Law and Partial Invalidity**
**Section 28 Notices**
**Section 29 Agreement Binding Upon Successors and Assigns**

Power of Attorney

*2*

This Agreement is made this _____ 12th ____✓__ day of _____ June _____ , 2017 ,

by and between _____ Tunbridge Apartments, LP _____ ("Partnership") and

_____ AptRentz, LLC _____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____ Tunbridge Apartments , located at _____ 274 Glen Riddle Road, Media, PA 19063 _____ consisting of the land, buildings, and other improvements.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____ five (5) _____ year(s) ("initial term") from the _____ 12th ____ Day of _____ June 2017 _____ ✓ , and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office. Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants. The specific apartment(s) shall be the Partnership's choice.

3

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____Tunbridge Management_____ Operating   (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____100,000.00_____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $_____100,000.00_____ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

## 3.2 Special Charges

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

## 3.3 Security Deposits

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 Operating Expenses

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 Debt Service

Partnership shall give Agent advance written notice of at least ___10 business___ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____20th_____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month.  In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

---

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable.  Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws.  The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s).  All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

---

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises.  Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases.  Agent shall execute all leases as agent for the Partnership. All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s).  No lease shall be in excess of _____1_____years(s) without written approval by Partnership. The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises.  Partnership agrees to promptly forward all inquiries about lease to Agent.

### 8.3 Rental Rates

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

**8.4 Enforcement of Leases**

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____without prior approval by Partnership. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership. Agent may select the attorney of its choice to handle such litigation.

---

## SECTION 9, EMPLOYEES

**9.1 Agent's Authority to Hire**

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

**9.2 Partnership Pays Employee Expenses**

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.

**9.3 Agent's Authority to File Returns**

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

**9.4 Workers' Compensation Insurance**

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

**9.5 Hold Harmless, Labor Laws**

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

---

## SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

**10.1 Approval for Exceptional Maintenance Expenses**

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $ _____15,000.00_____, unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

---

## SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $_____15,000.00_____ unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

---

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as

expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within __10 business__ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of __60 business__ days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.

9

16.1 **Fees for Legal Advice**

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them.  IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.

---

## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i)_____$3,650.00_____ per month or (ii)_____3.00%_____of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month              for the duration of this Agreement.  Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due.  The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income.  Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
_____N/A_____

### 17.3 For Commercial Leasing
_____N/A_____

### 17.4 For Modernization (Rehab/Construction)
_____$2,000.00 per unit Fee_____

### 17.5 For Fire Restoration
_____N/A_____

### 17.6 For Other Items of Mutual Agreement
_____Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts._____

### 17.7 For Interest on Unpaid Sums

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____days after such sums have become due, shall bear interest at the rate of _____10.00_____% per annum.

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters. Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of _____ 60 _____ days' written notice prior to the end of said initial term of following term year.

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a) Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured.  However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice.  Such termination shall not release the indemnities of Partnership set forth herein.

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

### 21.3 Termination Compensation

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial

term or term year in which the termination occurred. Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills. In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of ____PA____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Tunbridge Apartments, LP_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

*14*

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this _____12ᵗʰ_____ day of __June__ _____, 20 _17_ .

**Witness**

_____

_____

_____

_____

**Partnership**

X _Brooke J. Cutt_

**Company**

_Tunbridge Apartments, LP_

**Address**

_274 Glen Riddle Road_

**City, State, Zip**

_Media, PA 19063_

**Agent**

Firm _AptRentz, LLC_

Name _____ _Jennie Mopsik,_
_as managing agent_

_____

**Submitted by**

_15_

Exhibit F

# AptRentz, LLC

**For property located at:** _____ Scarborough Mews, 501 North Orange Street, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____  ✔

**Partnership(s):** _____ Scarborough Mews , LP _____  ✔

**Agent(s):** _____ AptRentz, LLC _____

# Management Agreement

**List of Provisions**

**Section 1 Appointment of Managing Agent**
  1.1    Appointment and Acceptance
  1.2    Description of Premises
  1.3    Term
  1.4    Management Office
  1.5    Apartment for On-Site Staff

**Section 2 Bank Accounts**
  2.1    Operating (and/or) Reserve Account(s)
  2.1.1  Initial Deposit and Contingency Reserve
  2.2    Security Deposit Account
  2.3    Fidelity Bond

**Section 3 Collection of Rents and Other Receipts**
  3.1    Agent's Authority
  3.2    Special Charges
  3.3    Security Deposits

**Section 4 Disbursements from Operating (and/or) Reserve Accounts**
  4.1    Operating Expenses
  4.2    Debt Service

**Section 5 Agent Not Required to Advance Funds**
**Section 6 Financial and Other Reports**
  6.1    Partnership's Right to Audit
**Section 7 Advertising**
**Section 8 Leasing and Renting**
  8.1    Agent's Authority to Lease Premises
  8.2    No Other Rental Agent
  8.3    Rental Rates
  8.4    Enforcement of Leases

**Section 9 Employees**
  9.1    Agent's Authority to Hire
  9.2    Partnership Pays Employee Expenses
  9.3    Agent's Authority to file returns
  9.4    Workers' Compensation Insurance
  9.5    Hold Harmless, Labor Laws

**Section 10 Maintenance and Repair**
  10.1   Approval for Exceptional Maintenance Expense
**Section 11 Contracts, Utilities and Services**

**Section 12 Relationship of Agent to Partnership**
**Section 13 Save Harmless**
**Section 14 Liability Insurance**
**Section 15 Agent Assumes No Liability**
**Section 16 Partnership Responsible for All Expenses of Litigation**
  16.1  Fees for Legal Advice
**Section 17 Agent's Compensation and Expenses**
  17.1  For Management Services
  17.2  For Apartment Leasing
  17.3  For Commercial Leasing
       For Modernization
  17.4  (Rehab/Construction)
  17.5  For Fire Restoration
       For Other Items of Mutual
  17.6  Agreement
  17.7  Interest on Unpaid Sums
**Section 18 Representations**

**Section 19 Structural Changes**
**Section 20 Building Compliance**
**Section 21 Termination**
  21.1  Termination by Either Party
  21.2  Termination for Cause
       a) Breach of Agreement
       b) Failure to Act, etc.
       c) Excessive Damage
       d) Inadequate Insurance
  21.3  Termination Compensation
       Partnership Responsible for
  21.4  Payments
  21.5  Sale of Premises
**Section 22 Indemnification Survives Termination**
**Section 23 Headings**
**Section 24 Force Majeur**
**Section 25 Complete Agreement**
**Section 26 Rights Cumulative; No Waiver**
**Section 27 Applicable Law and Partial Invalidity**
**Section 28 Notices**
**Section 29 Agreement Binding Upon Successors and Assigns**

Power of Attorney

This Agreement is made this _____ 12th _____ day of _____ June _____ , 2017 ,

by and between _____ Scarborough Mews, LP _____ ("Partnership") and _____ AptRentz, LLC _____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein.  Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____ Scarborough Mews _____ , located at _____ 501 North Orange Street, Media, PA 19063 _____ consisting of the land, buildings, and other improvements.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____ five (5) _____ year(s) ("initial term") from the _____ 12th _____ Day of _____ June 2017 _____ , and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein.  Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office.  Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants.  The specific apartment(s) shall be the Partnership's choice.

*3*

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____ Scarborough Mews Management _____ Operating (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____ 13,000.00 _____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $_____ 13,000.00 _____ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits

and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

**3.2 Special Charges**

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

**3.3 Security Deposits**

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

**4.1 Operating Expenses**

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

**4.2 Debt Service**

Partnership shall give Agent advance written notice of at least ____10 business____ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including

5

interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____20th_____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month.  In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable.  Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws.  The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s).  All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises.  Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases.  Agent shall execute all leases as agent for the Partnership.  All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s).  No lease shall be in excess of _____1_____years(s) without written approval by Partnership.  The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises.  Partnership agrees to promptly forward all inquiries about lease to Agent.

**8.3 Rental Rates**

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

**8.4 Enforcement of Leases**

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____ without prior approval by Partnership. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership. Agent may select the attorney of its choice to handle such litigation.

---

## SECTION 9, EMPLOYEES

**9.1 Agent's Authority to Hire**

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

**9.2 Partnership Pays Employee Expenses**

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.

**9.3 Agent's Authority to File Returns**

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

### 9.4 Workers' Compensation Insurance

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

### 9.5 Hold Harmless, Labor Laws

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

## SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

### 10.1 Approval for Exceptional Maintenance Expenses

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $ 15,000.00 , unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

## SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $ 15,000.00 unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within ___10 business___ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of ___60 business___ days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law.  Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.


### 16.1 Fees for Legal Advice

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them.  IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.


## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i)_____$675.00_____ per month or (ii)_____3.00%_____of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month for the duration of this Agreement.  Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due.  The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income.  Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
_____N/A_____


### 17.3 For Commercial Leasing
_____N/A_____


### 17.4 For Modernization (Rehab/Construction)

_____$2,000.00 per unit Fee_____

*10*

**17.5 For Fire Restoration**

N/A

**17.6 For Other Items of Mutual Agreement**

Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts.

**17.7 For Interest on Unpaid Sums**

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____ days after such sums have become due, shall bear interest at the rate of _____10.00_____% per annum.

---

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

---

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters. Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of _____60_____ days' written notice prior to the end of said initial term of following term year.

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a)Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured. However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Partnership set forth herein.

*12*

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

## 21.3 Termination Compensation

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred. Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills. In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

---

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination;

and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

14

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of _____PA_____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Scarborough Mews, LP_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

15

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this ___12th___ day of ___June___, 20 _17_.

**Witness**

_____

_____

_____

_____

**Partnership**

X _Brooke S. Catt_

**Company**

_Scarborough Mews, LP_

**Address**

_501 North Orange Street_

**City, State, Zip**

_Media, PA 19063_

**Agent**

Firm __AptRentz, LLC__

Name _Jennie Mopsik_
         _as Managing agent_

_____

**Submitted by**

Exhibit G

*noeducate.com*

# PROPERTY MANAGEMENT AGREEMENT

This property management agreement is intended for real estate owners to execute with those managing their property for rental purposes. Download this property management agreement for free and have it customized for your unique real estate legal needs today.

**REMINDER**: This form has been prepared for general informational use only. Because this sample contract does not represent the unique facts and circumstances of your situation, it is highly recommended that you seek legal advice from an appropriately licensed attorney.

# Property Management Agreement Sample

**For Property located at:** _____. **Beginning on the**

_____ **day of** _____ **and ending the end of** _____.

**Owner:**

_____ **Agent:**

_____ This

Agreement is made this _____ day of _____, _____, by and between

_____ (the "Owner")

and _____, (the "Agent").

## SECTION 1 APPOINTMENT OF MANAGING AGENT

### 1.1 Appointment and Acceptance

Owner hereby appoints Agent as sole and exclusive Agent of Owner to lease and manage the
property described in paragraph 1.2 upon the terms and conditions provided herein.  Agent accepts
the appointment and agrees to furnish the services of its organization for the leasing and management
of the Premises; and Owner agrees to pay all expenses in connection with those services.

### 1.2 Description of Premises

The Property to be managed by Agent under this Agreement is known as

_____, located at

_____, consisting of the land,

buildings, and other improvements located at

_____, in the **State**

**of** _____.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____ year(s) (the "initial term") from

the _____ to _____ and

including the last day of _____, and thereafter shall be

automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein.

Each of said one-year renewal periods is referred to as a "term year."

**1.4 Management Office**

*Add address if applicable.*    *added language*

**1.5 Apartment For On-Site Staff**

*Add address if applicable.*    *added language*

**SECTION 2 BANK ACCOUNTS**    *added language*

**2.1 Operating (And/Or) Reserve Account(s)**

Agent shall establish a separate account(s) known as the

_____ (and/or)

Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Owner subject to disbursement of expenses by Agent as described in this Agreement.

**2.1.1 Initial Deposit and Contingency Reserve**

Immediately upon commencement of this Agreement, Owner shall remit to Agent the sum of $ _____ to be deposited in the Operating (and/or) Reserve Account(s) as an initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $ _____ as a contingency reserve. Owner agrees to maintain the contingency reserve stated above at all times in Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Owner under this Agreement as they become due. Owner and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

**2.2 Security Deposit Account**

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

**2.3 Fidelity Bond**

Agent shall cause all personnel who handle or are responsible for the safekeeping of any monies of Owner to be covered by a fidelity bond in the amount of $ _____ with a company *removed* determined by Agent. Such bond shall be secured at Agent's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Agent's expense. **Owner** shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

**SECTION 3 COLLECTION OF RENTS AND OTHER RECEIPTS**

**.1 Agent's Authority**

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Owner's account in connection with the management and operation of the Premises. Such receipts (except tenant's security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraphs 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

**3.2 Special Charges**

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Owner for such charges and/or commission.

**3.3 Security Deposits**

Agent shall collect, deposit, and disburse tenants' security deposits in accordance with the terms of

each tenant's lease.  Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds.  Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4 DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 Operating Expenses

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 Debt Service

Owner shall give Agent advance written notice of at least 30 days if Owner desires Agent to make any additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises.  If Owner notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Owner shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

### 4.3 Net Proceeds

*removed*

To the extent that funds are available, and after maintaining the cash contingency reserve amount as specified in paragraph 2.1.1, Agent shall transmit cash balances to Owner periodically, as follows:  monthly.  Such periodic cash balances shall be remitted to the following person(s), in the percentage(s) specified, and at the address(es) shown:

| Name | % | Address |
| --- | --- | --- |
| | | |

—      —   —

_____ ____ _____

—      —   —

_____ ____ _____

—      —   —

_____ ____ _____

—      —   —

## SECTION 5 AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Owner shall, immediately upon notice, remit to Agent sufficient funds to cover the deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Owner, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Owner, such advance shall be considered a loan subject to repayment with interest, and Owner hereby agrees to reimburse Agent, including interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Owner.

## SECTION 6 FINANCIAL AND OTHER REPORTS

*changed to 20 days*

By the tenth day of each month, Agent shall furnish Owner with a statement of cash receipts and disbursements from the operation of the Premises during the previous month. In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on by both parties.

*removed*

**It is important for the Owner to review these statements <u>each</u> month. Monthly reports are held open to correct errors for 90 days, and then become final, subject to an annual audit that may be required by the Owner per paragraph 6.1.**

**6.1 Owner's Right To Audit**

Owner shall have the right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Owner.

## SECTION 7 ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem proper and advisable. Agent is authorized to place signs on the Premises advertising the Premises for rent, provided such signs comply with applicable laws. The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s). All advertising shall make clear that Agent is the manager and NOT the Owner of the Premises. Newspaper ads that share space with other properties managed by the Agent shall be prorated based on: **Actual lineage of the ad devoted to the Owner's property plus a prorated share of any headlines and/or signature lines.** *removed*

## SECTION 8 LEASING AND RENTING

**8.1 Agent's Authority To Lease Premises**

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises. Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases. Agent shall execute all leases as agent for the Owner. All costs of leasing shall be paid out of the Operating (and/or) Reserve Account(s). No lease shall be in excess of _____ year(s) without written approval by Owner. The form of the lease shall be agreed upon by Owner and Agent.

**8.2 No Other Rental Agent**

During the term of this Agreement, Owner shall not authorize any other person, firm or corporation to negotiate or act as leasing or rental agent with respect to any lease for space in the Premises. Owner agrees to promptly forward all inquiries about leases to Agent.

**8.3 Rental Rates**

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

## 8.4 Enforcement of Leases

Agent is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting or dispossessing of tenants or other persons from the Premises.  Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income.  Agent is authorized, when expedient, to settle, compromise, and release such legal actions or suits or reinstate such tenancies.  Any monies for such settlements paid out by Agent shall not exceed $ _____ without prior approval by Owner.  Attorneys' fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Owner.  Agent may select the attorney of its choice to handle such litigation.

## SECTION 9 EMPLOYEES

## 9.1 Agent's Authority to Hire

Agent is authorized to hire, supervise, discharge, and pay all servants, employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises.  All employees shall be deemed employees of the Owner, and Agent shall not be liable to Owner or others for any act or omission on the part of such employees.  *charged to Partnership / Agent*

## 9.2 Owner Pays Employee Expenses

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and federal taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and workers' compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s).  *and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.*

## 9.3 Agent's Authority to File Returns

Agent shall do and perform all acts required of an employer with respect to the Premises and shall

7

execute and file all tax and other returns required under the applicable federal, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force.  In connection with such filings, Owner shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like.  Owner shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve account(s).

### 9.4 Workers' Compensation Insurance

Agent shall, at Owner's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

### 9.5 Hold Harmless, Labor Laws

Agent shall be responsible for compliance with all applicable state or federal labor laws.  Owner shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Owner's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws.  Owner's obligation with respect to such violation(s) shall include payment of all settlements, judgments, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorneys' fees.

### SECTION 10 MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements.  Agent is also authorized to decorate the Premises and to purchase or rent, on Owner's behalf, all equipment, tools, appliances, materials, supplies, uniforms, and other items necessary for the management, maintenance, or operation of the Premises.  Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s).  This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

### 10.1 Approval For Exceptional Maintenance Expense

The expense to be incurred for any one item of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $ _____, unless such expense is specifically authorized by Owner, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency.  In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of any essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Owner's expense without prior approval.

## SECTION 11 CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to exceed $ _____ unless approved by Owner, and to enter into agreements in Owner's name for all necessary repairs, maintenance, minor alterations, and utility services.  Agent shall, in Owner's name and at Owner's expense, make contracts on Owner's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises.  All utility deposits shall be the Owner's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Owner's request.

## SECTION 12 RELATIONSHIP OF AGENT TO OWNER

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Owner, in Owner's name, and for Owner's account.  In taking any action under this Agreement, Agent shall be acting only as Agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the ownership or operation of the Premises.  Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Owner.  Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13 SAVE HARMLESS

Owner shall indemnify, defend, and save Agent harmless from all loss, damage, cost, expense (including attorneys' fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14 LIABILITY INSURANCE

Owner shall obtain and keep in force adequate insurance against physical damage (e.g., fire with extended coverage endorsement, boiler and machinery, etc.) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises.  The amounts and types of insurance shall be acceptable to both Owner and Agent, and any deductible required under such insurance policies shall be Owner's expense.  Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises.  Liability insurance shall be adequate to protect the interests of both Owner and Agent and in form, substance, and amounts reasonably satisfactory to Agent.  Owner agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such policies within 30 days of the execution of this Agreement.  If Owner fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s).  Said Policies shall provide that notice of default or cancellation shall be sent to Agent as well as Owner and shall require a minimum of 30 days' written notice to Agent before any cancellation of or changes to said policies.  *Changed to 60*

*changed to 10*

## SECTION 15 AGENT ASSUMES NO LIABILITY

Agent assumes no liability whatsoever for any acts or omissions of Owner, or any previous owners of the Premises, or any previous management or other agent of either.  Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Owner or in the performance of any obligations owed by any tenant to Owner pursuant to any lease or otherwise.  Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect.  Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Owner in writing, and Owner shall promptly cure them.

## SECTION 16 OWNER RESPONSIBLE FOR ALL EXPENSES OF LITIGATION

Owner shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Owner, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including, but not limited to, any law prohibiting or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided, however, that Owner shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law.  Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Owner in any such proceeding or suit.

**16.1 Fees for Legal Advice**

Owner shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them.  If such expenditure also benefits others for whom Agent in this Agreement acts in a similar capacity, Owner agrees to pay an apportioned amount of such expense.

**SECTION 17 AGENT'S COMPENSATION AND EXPENSES**

As compensation for the services provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Owner shall pay Agent as follows:

**17.1 For Management Services**

The greater of (i) $ __6,700__ per month or (ii) __3__ % of the total monthly gross _added_ receipts from the Premises, payable by the 25th day of the current month for the duration of this _charge to_ Agreement.  Payments due Agent for periods of less than a calendar month shall be prorated over the _20_ number of days for which compensation is due.  The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income.  Gross receipts shall NOT be deemed to include the special charges listed in paragraph 3.2,

or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

**17.2 For Apartment Leasing**

New 1 Year lease is ½ of 1st month's rent; Renewal of a 1 Year lease is ¼ of 1st month rent.   *removed*

New 6 Month lease is ¼ of 1st month's rent; Renewal 6 Month lease is 1/8 of 1st month rent.   *removed*

**17.3 For Commercial Leasing**

*Not applicable*

**17.4 For Modernization (Rehabilitation/Construction) Repairs & Replacements**

5% of the gross amount of any single contract or bill exceeding $ _____ will be charged for supervision, unless handled directly by the Owner.   *changed to $2k per unit*

**17.5 For Fire Restoration**

*Same as paragraph 17.4.*

**17.6 For Other Items of Mutual Agreement**

*removed*

The Agent is to have the privilege of re-writing any insurance, at competitive rates, on the property expiring during the life of this contract, but will not be held responsible for the writing of said insurance.  A company of comparable rating must be used.  The Owner understands that the Agent is directly involved as a partner in a full-line insurance agency.  At the Owner's direction, the Agent will secure competitive bids yearly.

*added*   *Bonus equal to 10% of annual fee as a result of 10% increase of gross receipts*

**17.7 Interest on Unpaid Sums**

Any sums due Agent under any provision of this Agreement, and not paid within 10 days after such sums have become due, shall bear interest at the rate of 10% per annum.   *changed to 30*

**SECTION 18 REPRESENTATIONS**

Owner represents and warrants:  That Owner has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Owner's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statutes, laws, ordinances, rules, regulations, orders, or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19 STRUCTURAL CHANGES

Owner expressly withholds from Agent any power or authority to make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Owner other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name: _____

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Owner appropriately.

## SECTION 20 BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or wit any statue, ordinance, law, or regulation of any government body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly any complaints, warnings, notices, summonses received by Agent relating to such matters.  Owner represents that to

the best of Owner's knowledge the Premises and all such equipment comply with all such requirements, and Owner authorizes Agent to disclose the ownership of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statues, or regulations.

## SECTION 21 TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Owner or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of 30 days' written notice prior to the end of said initial term or following term year.   *Changed to 60*

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligations which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

> (a) BREACH OF AGREEMENT – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured.  HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

(b) FAILURE TO ACT, ETC. – In the event that any insurance required of Owner is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Owner, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent, in its sole discretion, considers that the action or position of Owner or its representatives with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Owner of its election to do so, which termination shall be effective upon the service of such notice.  Such termination shall not release the indemnities of Owner set forth herein.

(c) EXCESSIVE DAMAGE – Upon the destruction of or substantial damage to the Premises by any cause, or the taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

(d) INADEQUATE INSURANCE – If Agent deems that the liability insurance obtained by Owner per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Owner and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of notice to Owner.

**21.3 Termination Compensation _____ Month Minimum**

If (i) Owner terminates this Agreement before the end of the initial term of any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Owner under paragraph 21.2(a) above or pursuant to the provisions of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Owner shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice is given to Agent or to Owner, multiplied by the number of months and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred.  Such damages, plus any amounts

accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement. To the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s). Any amount due in excess of the funds available from the Operating (and/or) Reserve Account(s) shall be paid by Owner to Agent upon demand.

### 21.4 Owner Responsible For Payments

Upon termination of or withdrawal from this Agreement, Owner shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Owner and responsibility for payment of all unpaid bills. In addition, Owner shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Owner's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

### 21.5 Sale of Premises

In the event that the Premises are sold by Owner during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of ownership, this Agreement shall terminate by mutual consent of Owner and Agent under the terms and conditions set forth below. **(See Addendum A)**

**In the event of any sale, the Agent shall receive a _____% sales commission based on the gross sales price. This exclusive right-to-sell shall survive the termination of this agreement for 120 days.**

### SECTION 22 INDEMNIFICATION SURVIVES TERMINATION

All representations and warranties of the parties contained herein shall survive the termination of this Agreement.  All provisions of this Agreement that require Owner to have insured or to defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Owner's Agent, such provisions shall apply as if this Agreement were still in effect.

## SECTION 23 HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

## SECTION 24 FORCE MAJEURE

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25 COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Owner and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Owner and Agent relating to the Premises covered by this Agreement.  No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent.  Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing.  Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such

party, other than those expressly set forth herein.

## SECTION 26 RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement.  The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults.  Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27 APPLICABLE  LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of _____.  If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Owner.

## SECTION 28 NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Owner and Agent individually may specify hereafter in writing:


Agent:   _____

         _____

         _____

_____

Owner: _____

Mailing
Address: _____

_____

Contact
Phone: _____

Contact
Email: _____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office.  Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law.  For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof of forty-eight (48) hours after having been deposited in the United States mails as provided herein.

**SECTION 29 AGREEMENT BINDING UPON SUCCESSORS AND ASSIGNS**

This Agreement shall be binding upon the parties hereto and their respective personal *removed* representatives, heirs, administrators, executors, successors and assigns.

**Signatures**

IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed their respective signatures this _____ day of _____, _____.

**Witnesses:** _____

**Owner:** _____

**Agent:** _____

_____

_____

**PRO By:** _____

**Submitted by:** _____

State of _____ )

County of _____ )

The foregoing instrument was acknowledged, subscribed and sworn before me this _____ day of _____, _____, by _____.

My
Commission _____
Expires:

 Notary Public

State of _____ )


County of _____ )

   The foregoing instrument was acknowledged, subscribed and sworn before me this _____ day of

_____, _____,

by _____.

My
Commission _____
Expires:

            Notary Public

Exhibit H

James F. Proud Esq., P.C.
25 E 2nd Street
Media, PA 19063
610-892-7700
jfproud@gmail.com


February 21, 2018

Via E-Mail: mediastation@verizon.net

Brooke P. Cottman
1015 Brooks Lane
Delray Beach, Florida 33483

Re:   Proposed Loans from New York Community Bank
       to Media Station, L.P. and Tunbridge, L.P.

Dear Mr. Cottman:

As you may be aware, I have recently been retained to replace Kevin Flynn as the Director of the Class A stock for Media Station, Inc., Tunbridge, Inc., Scarborough Mews, Inc. and Ventura, Inc. I am confident that we can work together in a positive and profitable relationship, and you can reach out to me anytime to discuss these businesses.

I am familiar with the proposed loans from New York Community Bank to Media Station, L.P. and Tunbridge, L.P. As you know, my predecessor Kevin Flynn had reserved the right to approve the amount of the loan and other terms. Nevertheless, you have proceeded unilaterally by setting the loan amounts as well as the language of the note, mortgage and related loan documents. We learned yesterday that these loans were scheduled to close tomorrow, February 22, 2018, and that the last condition of the loan closing was the submission of the Ownership and I.D. Forms for Bodo Family of Media Limited Partnership, which need to be signed by Deborah Convery and Shirley Bodo. I am attaching those signed forms, and consent to their submission to the bank, provided that the following conditions are satisfied:

1. AptRentz, LLC shall not receive payments or act as the construction manager or property manager. An independent construction manager shall be retained no later than March 6, 2018 to oversee the renovation projects and the spending of the loan proceeds, with full transparency being provided as to the spending of the loan proceeds. Branch Coslett and maintenance supervisor Richard Beckley met with and apparently approved of Bob Ellis as a prospective construction manager, and we would agree to Bob's appointment if you would also agree.

2. No later than March 6, 2018, an independent advisor/director shall be appointed pursuant to Section 4.03(b) of the Bylaws.

1

3. Section 11.1(11) of the proposed Mortgages and section 14 of the Commitment Letters contain a representation and warranty that that there is no suit pending against or affecting the Borrower or any Principal of the Borrower (either direct or indirect), so these terms must be modified in light of the pending suit, or the suit must be discontinued before closing on the loans.

Provided that the above conditions are met, you are authorized to submit the attached forms to the bank, and to proceed with the closing on the loans.

I look forward to a very positive and profitable relationship going forward.

Very truly yours,

JAMES F. PROUD

cc:    Michael N. Onufrak, Esquire (w/encl.) (Via E-Mail: @whiteandwilliams.com)
       Guy N. Paolino, Esquire (w/encl.) (Via E-Mail: gpaolino@fbpdlaw.com)
       Dr. H. Branch Coslett (w/encl.) (Via E-Mail: hbc@mail.med.upenn.edu)
       Edward P. Lawlor, Esquire (w/encl.) (Via E-Mail: elawlor3@gmail.com)
       H. Fintan McHugh, Esquire (w/encl.) (Via E-Mail: hfm@petrikin.com)

2

Exhibit I

Brooke Cottman

July 30, 2018

<u>By E-Mail</u>

James F. Proud, Esquire
201 W. Front Street
Media, PA 19063

Dr. H. Branch Coslett
2003 Wallace Street
Philadelphia, PA 19130

**Re. Payments to AptRentz, LLC**

Gentlemen:

As you know, the Directors of Tunbridge and Scarborough Mews recently voted in favor of
paying AptRentz the past-due management and renovation fees owed under its contracts with
Tunbridge and Scarborough Mews. The vote was 2-0 in favor of issuing the payments. I note
that Jim Proud refused to vote despite serving as the Director for the Bodo family stockholders.
Please be advised that the payments have been made to AptRentz and the details should be
available on AppFolio.

With respect to Media Station, it was and is my position that the previous Director for the Bodo
family interests (Kevin Flynn) approved the AptRentz contract for Media Station. The terms of
AptRentz's agreement with Media Station are similar to those in place for Tunbridge. The total
past due management and renovation fees due AptRentz from Media Station is currently
$170,463.23.

Notwithstanding Kevin Flynn's prior approval of the AptRentz-Media Station agreement, in an
effort to avoid additional conflict I proposed that the current Directors of Media Station vote on
whether to authorize payment of the funds. Despite my numerous pleas, as well as those of my
attorneys, Jim Proud refused to vote on the issue when it was raised at the meeting and has not
met with me or my attorneys to discuss this matter afterwards. My attorney sent detailed
information about the AptRentz debt to Jim and offered to meet with him to resolve the issue.

At present, it is unclear whether Jim Proud intends to take action to discharge his duties as a
Director of Media Station. It is also unclear whether Jim Proud is a full-fledged Director having
all of the powers, rights, and responsibilities bestowed upon a Director under Pennsylvania law.

Under the circumstances, I intend to pay the disputed sum of $170,463.23 into escrow on the first of August.

I ask Jim to call me or my attorney to resolve this issue.

Sincerely,


Brooke P. Cottman


cc:    Guy Paolino, Esquire
       Michael N. Onufrak, Esquire

Under the circumstances, I intend to pay the disputed sum of $170,463.23 into escrow on the first of August.

I ask Jim to call me or my attorney to resolve this issue.

Sincerely,

Brooke P. Cottman

cc:   Guy Paolino, Esquire
      Michael N. Onufrak, Esquire

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, et al | : | No. CV-2021-001678 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as personal representatives of the Estate of Brooke Powell Cottman, et al | : | |
| | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Eugene F. Jarrell, III, Esquire, attorney for Plaintiffs hereby certify that a true and

correct copy of the Plaintiffs' Petition to Open Judgment of Non Pros Pursuant to Pa.R.C.P.

237.3 in the above action was served this date in the manner indicated as follows:

Delaware County efiling system mail to the following:

Mark S. Haltzman, Esquire
Silverang, Rosenzweig & Haltzman, LLC
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
Attorney for Defendant Cottman Family, LLC t/a Cottman Family Limited
Partnership

First Class mail to the following:

Cynthia Cottman
254 Stanwich Road
Greenwich, CT 06830

Virginia Palusky
6827 Van Hyning Road
Deansboro, NY 13328

Media Station, Inc.
340 Media Station Road
Media, PA 19063

Tunbridge, Inc.
340 Media Station Road
Media, PA 19063

Scarborough Mews, Inc.
340 Media Station Road
Media, PA 19063


Date:  April 12, 2021                          */s/ Eugene F. Jarrell, III*
                                               Eugene F. Jarrell, III
                                               Attorney I.D. No. 34748
                                               Attorney for Petitioners/Plaintiffs
                                               334 W. Front Street
                                               Media, PA 19063
                                               (610) 565-6130
                                               efjarrell@gmail.com

# EXHIBIT 6

| Case Search |
|---|
| Create Filing |
| Filings |

# DELAWARE COUNTY, PENNSYLVANIA E-FILING

**MARK S HALTZMAN** ▾   

## Case Information

| Court | Delaware County Court of Common Pleas |
|---|---|
| Case | CV-2021-001678 |
| Class | Civil - Tort - Tort: Other |
| Short Title | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf ... |
| Status | AOPC Closed |

**Create E-Filing**

## Case View - CV-2021-001678   ?  ⬈

### CASE INFORMATION ▾

| Court Level | Court of Common Pleas | Court | Delaware County Court of Common Pleas |
|---|---|---|---|
| Case Title | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp v. Cottman Aka Cindy Cottman personal representatives of the Estate of Brooke Powell Cottman et al | Case Type | Civil - Tort - Tort: Other |
| Filed Date | 02-16-2021 | Status | AOPC Closed |
| Next Hearing | | Judge | |
| Next Hearing Type | | | |

### PARTIES / PARTICIPANTS

| # | Role | Name | Attorney | Service Type |
|---|---|---|---|---|
| 1 | Plaintiff | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp | JARRELL III, EUGENE F | eService |
| 1 | Defendant | Cottman Aka Cindy Cottman personal representatives of the Estate of Brooke Powell Cottman, Cynthia | VENTURA , TIMOTHY G | eService |
| 2 | Defendant | Palusky, Aka Virginia Powell Cottman Palusky Personal Representative Of The Estate Of Brooke Powell Cottman, Virginia | VENTURA , TIMOTHY G | eService |
| 3 | Defendant | Cottman Family Llc t/a Cottman Family Limited Partnership | HALTZMAN, MARK S | eService |
| 4 | Defendant | Cottman Aka Cindy Cottman, Cynthia | VENTURA , TIMOTHY G | eService |
| 5 | Defendant | Palusky, Virginia Powell Cottman | VENTURA , TIMOTHY G | eService |
| 6 | Defendant | Media Station Inc t/a Media Station a limited partnership | PAOLINO, GUY N | eService |
| 7 | Defendant | Tunbridge Inc t/a Tunbridge a limited partnership | PAOLINO, GUY N VENTURA , TIMOTHY G | eService eService |
| 8 | Defendant | Scarborough Mews inc t/a Scarborough Mews a limited partnership | PAOLINO, GUY N VENTURA , TIMOTHY G | eService eService |

1 to 9 of 9 records

**FILTER** ▸

**DOCKET SHEET**

| Filed Date | Document Description | Filed By | |
|---|---|---|---|
| 01-06-2022 | Financials - Receipt | |  |
| 01-05-2022 | Miscellaneous - Jury Trial Demanded | | |
| 01-05-2022 | Miscellaneous - Entry of Appearance for Defendant | Cynthia Cottman Aka Cindy Cottman, Scarborough Mews inc t/a Scarborough Mews a limited partnership, Tunbridge Inc t/a Tunbridge a limited partnership, Virginia Palusky, Aka Virginia Powell Cottman Palusky Personal Representative Of The Estate Of Brooke Powell Cottman, Virginia Powell Cottman Palusky | |
| 12-16-2021 | Order - Order | | |
| 12-15-2021 | Complaint - Complaint | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp | |
| 10-01-2021 | Miscellaneous - Motion Cover Sheet | | |
| 07-30-2021 | Appeal - Appellate Court Order | | |
| 06-22-2021 | Financials - Receipt | | |
| 06-21-2021 | Miscellaneous - Entry of Appearance for Defendant | Media Station Inc t/a Media Station a limited partnership, Scarborough Mews inc t/a Scarborough Mews a limited partnership, Tunbridge Inc t/a Tunbridge a limited partnership | |
| 05-12-2021 | Disposition - Transferred Out of Jurisdiction | | |
| 05-11-2021 | Notice - Notice of Removal | Cottman Family Llc t/a Cottman Family Limited Partnership | |
| 05-11-2021 | Financials - Receipt | | |
| 05-03-2021 | Answer - Answer to Petition to Open/Strike Judgment | Cottman Family Llc t/a Cottman Family Limited Partnership | |
| 04-12-2021 | Petition - Petition to Open/Strike Judgment | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp | |
| 04-12-2021 | Financials - Receipt | | |
| 04-01-2021 | Certificate - Certificate of Service | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp | |
| 03-31-2021 | Miscellaneous - Entry of Appearance | Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc t/a Media Station LP Turnbridge Inc t/a Turnbridge LP Scarborough Mews Inc t/a Scarborough Mews Lp | |
| 03-31-2021 | Judgment - Judgment of Non Pros Entered | | |
| 03-31-2021 | Judgment - Judgment of Non Pros Entered | Cottman Family Llc t/a Cottman Family Limited Partnership, Cottman Family Llc t/a Cottman Family Limited Partnership | |
| 03-31-2021 | Financials - Receipt | | |

| 1 to 20 of 30 records | | | **1**, **2**   **Next** |

C-Track™ E-Filing, developed by Thomson Reuters Court Management Solutions


**PayPal**

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BODO FAMILY LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 21-2150 |
| | : | |
| CYNTHIA COTTMAN, *et al.*, | : | |
| Defendants. | : | |

## ORDER

Plaintiff Bodo Family LLC asks me to remand this matter to state court and impose counsel fees on Defendants. I will remand (because removal was premature), but decline to impose counsel fees.

## I.  PROCEDURAL BACKGROUND

On February 16, 2021, Plaintiff filed a Praecipe for Writ of Summons in the Delaware County Common Pleas Court. (Doc. Nos. 4, 6-2.) That court issued a Writ of Summons later that day. (Id.) After Defendants were served, on February 25, 2021, Defendant Cottman Family LLC filed a Praecipe for Rule to File a Complaint. (Doc. No. 6-4.) Plaintiff failed to file its complaint within the prescribed 20-day period. (Doc. Nos. 4, 6.)

Accordingly, on March 31, 2021, Defendants filed a Praecipe to Enter Judgment of Non Pros. (Id.) Judgment was entered against Plaintiff for failure timely to file a complaint. (Doc. No. 6-5.) On April 12, 2021, Plaintiff submitted a Petition to Open Judgment of Non Pros, asserting that Plaintiff's attorney had never received notifications about the earlier filings so was unaware of the (now lapsed) deadline to file the complaint. (Doc. No. 6-6.) Plaintiff attached a proposed complaint to that petition. (Id.) Before the court ruled on the petition, on May 11, 2021, Defendants removed. (Doc. No. 1.)

On June 3, 2021, Plaintiff moved to remand, arguing that because the state court had not

yet ruled on its Petition to Open Judgment of Non Pros, there was no active complaint and removal was premature.  (Doc. No. 4.)  Defendants oppose remand.  (Doc. No. 6.)

## II.    LEGAL STANDARD

"[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of litigation, that the case is properly before the federal court."  Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted).  "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'"  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (citation omitted).

## III.   DISCUSSION

A defendant may file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."  28 U.S.C. § 1446(b).  That "initial pleading" is typically a complaint.  Significantly, the Third Circuit has held that "a writ of summons alone" cannot "be the 'initial pleading' that triggers the 30-day period for removal."  Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 223 (3d Cir. 2005).

Here, the state court had not yet ruled on Plaintiff's Petition to Open Judgment of Non Pros, to which Plaintiff had attached only a *proposed* complaint.  There is thus no "initial pleading" in this matter, and removal was improper.  See Laborde v. Mount Airy Casino, 2015 WL 2219454, at *3 (M.D. Pa. May 11, 2015) ("Only if the Judgment Non Pros is lifted can this 'proposed' Complaint become the operative Complaint, thus triggering Defendant's right of removal.");  Century Indemnification Co. v. URS Corp., 2008 WL 2856395, at *2 (E.D. Pa. 2008) (a proposed

complaint is "nothing more than an exhibit to a motion" and does not enable removal); see also Benhoff v. SK Travel, LLC, 2014 WL 5780945, at *3 (E.D. Pa. Nov. 6, 2014). Defendants' assertion that Plaintiff's writ of summons constitutes an initial pleading in this matter is simply wrong. See Sikirica, 416 F.3d at 222. I will thus grant Plaintiff's Motion and remand this matter.

I decline to award counsel fees under 28 U.S.C. § 1447(c).

## IV. CONCLUSION

**AND NOW**, this 21st day of June, 2021, upon consideration of Plaintiff's Motion to Remand (Doc. No. 4) and Defendants' Response (Doc. No. 6) it is hereby **ORDERED** as follows:

1. Plaintiff's Motion to Remand (Doc. No. 4) is **GRANTED**;

2. Plaintiff's request for counsel fees is **DENIED**;

3. This case is **REMANDED** to the Delaware County Common Pleas Court; and

4. The Clerk of Court shall **CLOSE** this case.

          **AND IT IS SO ORDERED.**

          */s/ Paul S. Diamond*

          _____

          Paul S. Diamond, J.

# EXHIBIT 8

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| Bodo Family LLC t/a Bodo Family of Media | : | No. CV-2021-001678 |
| Limited Partnership directly and derivatively | : | |
| on behalf of Media Station Inc. t/a Media | : | |
| Station LP Turnbridge Inc. t/a Turnbridge LP | : | |
| Scarborough Mews Inc. t/a Scarborough Mews | : | |
| | : | |
| **Plaintiff** | : | |
| v. | : | |
| Cynthia Cottman a/k/a Cindy Cottman and | : | |
| Virginia  Palusky a/k/a Virginia Powell Cottman | : | |
| Palusky as Personal representatives of the | : | |
| Estate of Brooke Powell Cottman; | : | |
| | : | |
| Cottman Family, LLC t/a Cottman Family | : | |
| Limited Partnership, et al | : | |
| | : | |
| **Defendant** | : | |

## ORDER GRANTING PETITION TO OPEN JUDGMENT OF NON PROS

**AND NOW**, this _8ᵗʰ_ day of December 2021, upon consideration of Plaintiffs' Petition

to Open Judgment of Non Pros Pursuant to Pa. R. Civ. P. 237.3 (the "Petition") filed by

Petitioners/Plaintiffs Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, et al.

(collectively the "Plaintiffs"); Defendants' Opposition to Plaintiffs' Petition (the "Opposition")

filed by Respondents/Defendants Cynthia Cottman, Virginia Palusky, et al (collectively the

"Defendants"); and having held a hearing on November 16, 2021 (the "November 16 Hearing")

at which the above-identified counsel and/or parties participated[1]; it is hereby **ORDERED** and

**DECREED** that the Petition is **GRANTED.**

On February 16, 2021, Plaintiffs, by and through their attorney Eugene F. Jarrell, III,

Esq. ("Mr. Jarell") initiated an action against the Defendants via Writ of Summons. On or about

---

[1] Also present and participating at the November 16 Hearing was Guy Paolino, Esq., on behalf of the Board of the Directors of the corporate entity Plaintiffs.

1

February 25, 2021, attorney Mark S. Haltzman, Esq. ("Mr. Haltzman") entered his appearance on behalf of Defendants and filed a Praecipe for Rule to File a Complaint, which resulted in a Rule being issued upon Plaintiffs to file a Complaint. Mr. Haltzman certified that the Entry of Appearance and Praecipe for Rule to File a Complaint were served by U.S. first class mail to Mr. Jarrell at his address identified on the Praecipe for Writ of Summons.[2] When no response was filed by Defendants, Mr. Haltzman filed a Praecipe to Enter Judgment Non Pros, which resulted in a Judgment of Non Pros being entered against Plaintiffs on March 31, 2021.[3] Mr. Jarrell represents that he first became aware that a Judgment had been entered in this action on March 31, 2021, after receiving an email from the Delaware County C-Track CMS Document Distribution System, which attached a Rule 236 Notice of Judgment. This purportedly led to Mr. Jarrell discovering the previous filings by Mr. Haltzman. By the instant Petition, Plaintiffs seek to open the Judgment of Non Pros pursuant to Rule 237.3(b)(1).

Under Rule 237.3, if a petition to open judgment of non pros is filed within ten days after the entry of a judgment of non pros on the docket, the court shall open the judgment if the proposed complaint states a meritorious cause of action. Pa. R. Civ. P. 237.3(b)(1). Rule 237.3 presupposes that a petition to open filed within the 10-day period is timely and that a reasonable explanation for the delay exists. See Pa. R. Civ. P. 237.3 note.

---

[2] Mr. Jarrell represents that, despite being registered with the Delaware County e-file system and being identified by name, address, telephone number, email address and attorney I.D. number on the Praecipe for Writ of Summons, he did not receive an email from the Delaware County e-file system regarding Mr. Haltzman's Entry of Appearance, Praecipe for Rule to File a Complaint, or the Rule to File a Complaint, to any of the email addresses registered with the Delaware County e-file system. Mr. Jarrell also maintains that he did not receive the Entry of Appearance or Praecipe for Rule to File a Complaint purportedly mailed to him.

[3] Mr. Jarrell again represents that he did not receive the Praecipe to Enter Judgment of Non Pros or any of its accompanying exhibits or other filings from the Delaware County e-file system to any of his registered email addresses. The Praecipe to Enter Judgment filed by Mr. Haltzman included a certification that a 10-day notice of intent to enter a Judgment of Non Pros along with the certificate of service was served by first class mail to Mr. Jarrell and Bodo Family, LLC on March 19, 2021. Mr. Jarrell maintains that did not receive the 10-day notice and certificate of service purportedly mailed on March 19, 2021.

2

In the instant case, the Petition was filed on Monday, April 12, 2021, which is considered timely because the tenth day—April 10, 2021—fell on Saturday. See Pa. R. Civ. P. 106(b). In addition, the Court finds reasonable Mr. Jarrell's explanation for the delay in filing the Complaint. Defendants argue, however, that Plaintiffs cannot meet the final requirement of Rule 237.3 because Plaintiffs' proposed Complaint does not state a meritorious cause of action. Defendants assert that because Plaintiffs seek to bring a series of derivative claims but have not satisfied the prerequisites to do so under 15 Pa. C.S.A. § 8692, such claims are not meritorious and, therefore, the Petition should be denied. Specifically, Defendants aver that Plaintiffs have not satisfied the "prior demand" requirement under section 8692 of the statute.[4]

Out of the eleven counts detailed in the proposed Complaint,[5] only eight are brought derivatively on behalf of Plaintiffs. While those eight derivative claims did require a prior demand under section 8692 of the statute,[6] the remaining three Counts do not. The Court finds that the direct claims identified in the proposed Complaint state meritorious causes of action as required by Rule 237.3.[7] Thus, the Court is compelled under the law to open the judgment. The Court declines the suggestion made at the November 16 Hearing that the Court may "parse through" the Complaint and open the judgment with respect to certain claims but not others—no legal authority presented to the Court allows such action. The Court also agrees

---

[4] Section 8692 requires a plaintiff bringing a derivative action to make a prior demand to the general partners requesting that they cause the partnership to bring an action. The demand requirement is excused only if a specific showing is made that immediate and irreparable harm to the limited partnership would otherwise result. Id.

[5] In Plaintiffs' proposed Complaint, the Counts identifying the causes of action are misnumbered. The correct number of Counts is eleven, not nine as represented.

[6] The record reflects that Plaintiffs did not make a demand to the general partners prior to initiating this action. The demand was not made until April 21, 2021. See Defs.' Ex. B.

[7] Rule 237.3 only requires that the proposed complaint state a meritorious cause of action. There is no language requiring each cause of action to be meritorious.

3

with Plaintiffs' counsel that, at this juncture, and in light of its finding that there is "a"

meritorious claim apparent on the face of the Complaint, it is not appropriate for the Court to

determine whether the demand requirement applicable to the derivative claims should be

excused due to alleged "immediate and irreparable harm" to the partnership—the parties may

raise this position at the next appropriate procedural juncture.

For these reasons, it is HEREBY **ORDERED** and **DECREED** as follows:

1. The Petition is **GRANTED;**

2. The Judgment of Non Pros is HEREBY **OPENED**;

3. Plaintiffs shall file the proposed Complaint within 10 days of the date of this Order;

   and

4. Defendants' obligation to respond to the Complaint and discovery is HEREBY

   suspended for 60 days from the date of the filing of the Complaint.[8]

**BY THE COURT:**

**KELLY D. ECKEL, J.**

cc via email:
Eugene F. Jarrell, III Esquire
Mark S. Haltzman, Esquire
Guy N. Paolino, Esquire

---

[8] This temporary stay of certain obligations is imposed at the request of counsel for the Board of Directors of the corporate Plaintiffs, who made this request at the November 16 Hearing in light of certain steps having been taken by the Board of the Directors after the general partners were served on April 21, 2021 with the demand required by the statute referenced hereinabove.

4

# EXHIBIT 9

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership 202 Coventry Lane Media, PA 19063 | : : : : : : | No. CV-2021-001678 |
| Plaintiffs | : : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as Personal representatives of the Estate of Brooke Powell Cottman 254 Stanwich Road Greenwich, CT 06830 | : : : : | |
| Cottman Family, LLC t/a Cottman Family Limited Partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Cynthia Cottman aka Cindy Cottman, 254 Stanwich Road Greenwich, CT 06830 | : : | |
| Virginia Powell Cottman Palusky, 6827 Van Hyning Road Deansboro, NY 13328 | : : | |
| Media Station, Inc. t/a Media Station, a limited partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Tunbridge, Inc. t/a Tunbridge, a limited partnership 340 Media Station Road Media, PA 19063 | : : | |

Scarborough Mews, Inc. t/a Scarborough Mews,
a limited partnership                                                          :
340 Media Station Road
Media, PA 19063                                                                :

         Defendants                                                :


## <u>NOTICE TO DEFEND</u>

       YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT IS SERVED BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFFS.  YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

       YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

<center>LAWYERS' REFERENCE SERVICE<br>
FRONT AND LEMON STREETS<br>
MEDIA, PA  19063<br>
(610) 565-6625</center>

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION-LAW**

| | | |
|---|---|---|
| Bodo Family, LLC t/a Bodo Family of Media Limited Partnership, directly and derivatively on behalf of Media Station, Inc. t/a Media Station, a limited partnership, Tunbridge, Inc. t/a Tunbridge, a limited partnership, and Scarborough Mews, Inc. t/a Scarborough Mews, a limited partnership 202 Coventry Lane Media, PA 19063 | : : : : : | No. CV-2021-001678 |
| Plaintiffs | : : | |
| v. | : | |
| Cynthia Cottman aka Cindy Cottman and Virginia Palusky aka Virginia Powell Cottman Palusky as Personal representatives of the Estate of Brooke Powell Cottman 254 Stanwich Road Greenwich, CT 06830 | : : : : | |
| Cottman Family, LLC t/a Cottman Family Limited Partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Cynthia Cottman aka Cindy Cottman, 254 Stanwich Road Greenwich, CT 06830 | : : | |
| Virginia Powell Cottman Palusky, 6827 Van Hyning Road Deansboro, NY 13328 | : : | |
| Media Station, Inc. t/a Media Station, a limited partnership 340 Media Station Road Media, PA 19063 | : : : | |
| Tunbridge, Inc. t/a Tunbridge, a limited partnership 340 Media Station Road Media, PA 19063 | : : | |

1

Scarborough Mews, Inc. t/a Scarborough Mews,
a limited partnership                              :
340 Media Station Road
Media, PA 19063                                    :

        Defendants              :

## <u>COMPLAINT</u>

1.     Plaintiff Bodo Family LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 580 S. Heilbron Drive, Media, Pennsylvania 19063.

2.     Plaintiff Bodo Family of Media Limited Partnership is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with a place of business at 580 S. Heilbron Drive, Media, Pennsylvania 19063.

3.     Plaintiff Bodo Family LLC is the general partner to Plaintiff Bodo Family of Media Limited Partnership.

4.     Plaintiff Media Station Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Media Station, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Media Station LP") with a registered address and place of business at 340 Media Station Road, Media, PA 19063.

5.     Plaintiff Tunbridge Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Tunbridge, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Tunbridge LP) with a registered address at 340 Media Station Road, Media, PA  19063.

6.    Plaintiff Scarborough Mews Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is the corporate general partner of Plaintiff Scarborough Mews, a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania ("Scarborough Mews LP") with a registered address at 340 Media Station Road, Media, PA  19063.

7.    Defendant Cynthia Cottman aka Cindy Cottman is an adult individual residing at 354 Stanwich Road, Greenwich, Connecticut 06830 and is a Personal Representative of the Estate of Brooke Powell Cottman, deceased.

8.    Defendant Virginia Palusky aka Virginia Powell Cottman Palusky is an adult individual residing at 6827 Van Hyning Road, Deansboro, New York 13328 and is a Personal Representative of the Estate of Brooke Powell Cottman, deceased.

9.    Defendant Cottman Family, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and is a general partner of Defendant Cottman Family Limited Partnership ("Cottman Family LP"), a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania with a registered address of at 340 Media Station Road, Media, Pennsylvania 19063.

10.    Defendant Media Station, Inc. t/a Media Station LP, Tunbridge, Inc. t/a Tunbridge, and Scarborough Mews, Inc. t/a Scarborough Mews LP are identified herein as nominal defendants.

11.    Brooke Powell Cottman (hereinafter "Brooke Cottman") died February 13, 2020.

12.    Prior to his death, Brooke Cottman was at all relevant times hereto was a general partner of Defendant Cottman Family Limited Partnership.

13.    On or about March 9, 2021, Defendants Cynthia Cottman and Virginia Palusky were each appointed as Executrix and Personal Representative of the Estate of Brooke Cottman.  Subsequent

3

to Brooke Cottman's death, it is believed that the Estate of Brooke Cottman, through the Personal Representatives, was a general partner of Cottman Family Limited Partnership.

14.     Media Station LP, Tunbridge LP and Scarborough Mews LP (collectively, the "Limited Partnerships") were formed as single-purpose entities that own real estate and multi-family housing units located in Delaware County, Pennsylvania.

15.     Media Station LP owns Media Station Apartments located at 340 Media Station Road, Media, Delaware County, Pennsylvania 19063.

16.     Tunbridge LP owns Tunbridge Apartments located at 274 Glen Riddle Road, Media, Delaware County, Pennsylvania.

17.     Scarborough Mews LP owns the Scarborough Mews Townhouses located at 501 N. Orange Street, Media, Delaware County, Pennsylvania.

18.     Media Station LP was formed by Brooke Cottman and Lajos "Lou" Bodo, each of whom owned an equal interest in the limited partnership.

19.     Tunbridge LP and Scarborough Mews LP were formed by Brooke Cottman, Lou Bodo, and Edward W. Coslett, Jr., each of whom owned an equal interest in the limited partnership.

20.     Brooke Cottman and Lou Bodo also formed a separate entity, Media Station, Inc., to act as the corporate general partner for Media Station LP.

21.     Brooke Cottman, Lou Bodo, and Edward W. Coslett, Jr. also formed separate entities, Tunbridge, Inc. and Scarborough Mews, Inc., to act as the corporate general partner for Tunbridge LP and Scarborough Mews LP.

22.     Over time, Brooke Cottman's limited partner interests in the Limited Partnerships were transferred to the Cottman Family Limited Partnership.

4

23.     Over time, Lou Bodo's limited partner interests in the Limited Partnerships were transferred to the Bodo Family of Media Limited Partnership.

24.     Over time, Edward W. Coslett, Jr.'s limited partner interests in the Limited Partnerships were transferred to his family members and related entities collectively referred to as the Coslett Limited Partners.

25.     Prior to his death, and at all relevant times prior thereto, Brooke P. Cottman was President and a board Director Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

26.     At the time of the formation of Media Station, Inc., its shareholders were Brooke Cottman (500 shares of Class B stock) and Lou Bodo (500 shares of Class A stock).

27.     In March 2014, Lou Bodo died.

28.     At the time of the formation of Tunbridge Inc. and Scarborough Mews, Inc., its shareholders were Lou Bodo (Class A stock), Brooke Cottman (Class B stock) and Edward W. Coslett, Jr. (Class C stock) each Class representing an equal ownership of Tunbridge Inc. and Scarborough Mews, Inc.

29.     Upon his death, Lou Bodo's shares in Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc. were transferred in equal share amounts to his daughters, Shirley Bodo and Deborah Convery.

30.     Prior to his death, Brooke Cottman remained owner of the 500 Class B shares of the stock of Media Station, Inc.

31.     The affairs of Media Station, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Media Station, Inc. (the "Bylaws") is attached hereto as Exhibit A.

32.     Under the Bylaws, the Board of Directors of Media Station, Inc. is to consist of two Directors, one to be elected by the Class A shareholders and one to be elected by the Class B shareholders. *See* Bylaws, at § 4.03(a) (Exhibit A).

33.     Until his death, Brooke Cottman served as the Class B Director of Media Station, Inc.

34.     At all times relevant prior to his death, Brooke Cottman served as the Class B Director for Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc.

35.     Prior to his death, Brooke Cottman remained owner of the Class B shares of the stock of Tunbridge Inc. and Scarborough Mews, Inc.

36.     The affairs of Tunbridge, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Tunbridge, Inc. (the "Bylaws") is attached hereto as Exhibit B.

37.     Under the Bylaws, the Board of Directors of Tunbridge, Inc. is to consist of three Directors, one to be elected by the Class A shareholders, one to be elected by the Class B shareholders and one elected by the Class C shareholder. *See* Bylaws, at § 4.03(a) (Exhibit B).

38.     The affairs of Scarborough Mews, Inc. are governed by the company's Bylaws, which were adopted by the unanimous written consent of its shareholders on or about September 8, 2011. A true and correct copy of the Bylaws of Scarborough Mews, Inc. (the "Bylaws") is attached hereto as Exhibit C.

39.     Under the Bylaws, the Board of Directors of Scarborough Mews, Inc. is to consist of three Directors, one to be elected by the Class A shareholders, one to be elected by the Class B shareholders and one elected by the Class C shareholder. *See* Bylaws, at § 4.03(a) (Exhibit C).

40.    Each of the Bylaws was signed and consented to by Brooke Cottman as a shareholder of Media Station Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

41.    Until his death, Brooke Cottman served as the Class B Director of Tunbridge Inc. and Scarborough Mews, Inc.

42.    Brooke Cottman served as the President and Secretary of Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc., and served in those capacities until his death.

43.    The By-Laws for Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., each provide at Section 4.01 (a), that "the business and affairs of the Corporation shall be managed under the direction of the board of directors". Further, Section 5.08 provides that the president, who is subject "to the control of the board of directors", is authorized to sign only those contracts which are "authorized by the board of directors".

44.    Section 4.03(b) of each of the By-Laws provides that the "shareholders **shall** cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors." In the event that the "board is unable to reach a resolution by the required number of director votes on a particular matter or issue… The independent advisor will be permitted to cast one vote as if he or she were a director with the sole purpose of breaking the deadlock." [Emphasis added].

45.    Following the resignation of the last of the independent advisers for the Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., which occurred prior to 2015, a vacancy existed for the role of independent advisor for each of the corporate general partners until 2020.

46.    As a result of the independent advisor vacancy for Media Station, Inc., a deadlock existed regarding multiple matters and issues, including, but not limited to, the appointment of officers,

particularly the president, as well as significant other issues, such as renovations, management and financial issues.

47.     As a result of the independent advisor vacancy for Tunbridge Inc. and Scarborough Mews Inc., a deadlock existed regarding multiple matters and issues, including, but not limited to, the appointment of officers, particularly the president, as well as significant other issues, such as renovations, management and financial issues.

48.     As the President of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., Brooke Cottman exercised unilateral control and adverse domination over the corporations and therefore exercised unilateral control and adverse domination of the respective Limited Partnership of Media Station LP, Tunbridge LP and Scarborough Mews LP.

49.     In May 2017, Brooke Cottman formed AptRentz LLC, and he directed the filing of a Certificate of Organization on May 24, 2017 with the Commonwealth of Pennsylvania, Department of State, for AptRentz, LLC, a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania (hereafter "AptRentz").

50.     Prior to the death of Brooke Cottman, AptRentz was directly and/or indirectly owned by Brooke Cottman, and his children and/or grandchildren, Cynthia Cottman, Virginia Palusky and/or Graham Palusky, or entities controlled by Brooke Cottman and/or such persons.

51.     Since the death of Brooke Cottman, AptRentz has been directly and/or indirectly owned by the Estate of Brooke Cottman, and the children and/or grandchildren of Brooke Cottman, Cynthia Cottman, Virginia Palusky and/or Graham Palusky, or entities controlled by the Estate of Brooke Cottman and/or such persons.

52.     Brooke Cottman formed AptRentz to act as a management company for Media Station LP, Tunbridge LP and Scarborough Mews LP with the intent of receiving management fees and other

payments from the Limited Partnerships and to divert profits from the Limited Partnerships and distributions from being made to the limited partner or partners of the Limited Partnerships.

53.     Brooke Cottman's intent in creating AptRentz was to divert profits from Media Station LP and other distributions that would be due and owing to Bodo Family of Media Limited Partnership.

54.     Brooke Cottman's intent was to divert profits from Tunbridge LP and Scarborough Mews LP and other distributions to the limited partners Bodo Family of Media Limited Partnership and the Coslett Limited Partnership.

55.     On June 12, 2017, Brooke Cottman, as President of Media Station Inc., on behalf of Media Station Limited Partnership, unilaterally entered into a management agreement with AptRentz for the management of Media Station Apartments. A copy of the AptRentz agreement is attached hereto and made part of and marked Exhibit D.

56.     On June 12, 2017, Brooke Cottman, as President of Tunbridge Inc., on behalf of Tunbridge Limited Partnership, unilaterally entered into a management agreement with AptRentz for the management of Tunbridge Apartments. A copy of the AptRentz agreement is attached hereto and made part of and marked Exhibit E.

57.     On June 12, 2017, Brooke Cottman, as President of Scarborough Mews Inc., on behalf of Scarborough Mews LP, unilaterally entered into a management agreement with AptRentz for the management of Scarborough Mews Apartments. A copy of the AptRentz agreement is attached hereto, made part hereof and marked Exhibit F.

58.     The AptRentz agreements created by Brooke Cottman were standard form property management contracts which are available online, however Brooke Cottman altered the language of the standard form contract to exclude basic protections afforded the property owner, including

payment obligations to the property owner.  See the standard form property management contract attached as Exhibit G.

59.     Each of the AptRentz agreements is essentially identical in its terms and conditions which terms were not negotiated at arm's length but rather written to favor AptRentz and insulate AptRentz from the scrutiny of Bodo Family of Media Limited Partnership and the Coslett Limited Partners to the detriment of Media Station LP, Tunbridge LP, Scarborough Mews LP, Bodo Family of Media Limited Partnership and the Coslett Limited Partners.

60.     These management agreements were each signed by Jennie Mopsik, identified as "Managing Agent" of AptRentz, LLC who was hired by Brooke Cottman.

61.     The Pennsylvania Real Estate Licensing and Registration Act ("RELRA"), 63 P.S. §§ 455.101 *et seq*, specifically 63 P.S. § 455.301, requires that AptRentz LLC be a licensed entity with a registered broker of record in order to act as property manager.

62.     AptRentz has not been a RELRA licensed entity with a registered broker of record.

63.     The AptRentz management agreements are illegal.

64.     Section 8.04 (a) of each of the By-Laws provides that "a contract or transaction between the corporation and one or more of its directors or officers, or between the Corporation in another Corporation… or other enterprise in which one or more of its directors and officers… have a financial or other interest, shall not be void or voidable solely for that reason… if:

> (1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors **and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum."** [Emphasis added].

65.     Section 8.04 (a) of the By-Laws govern the required process of approval of the AptRentz management agreements as a result of Brooke Cottman's financial and other interests in AptRentz, and is consistent with the requirements set forth in 15 Pa.C.S.A. §1728(a) concerning interested directors and officers.

66.     Brooke Cottman entered into all three of the AptRentz management agreement without seeking a vote of the Directors of the corporate general partners to approve the agreements, or even notifying the other Directors until after the agreements were executed.

67.     Brooke Cottman entering into the AptRentz management agreements was not in the best interests of the Media Station Inc., Tunbridge Inc., or Scarborough Mews Inc., or any of the Limited Partnerships.

68.     By the terms of Section 8.04 (a) of the Media Station By-Laws, the contract between AptRentz and Media Station LP required approval by the affirmative vote of the sole disinterested director of the Class A shares, Kevin Flynn, or his successor, James Proud, Esquire, both of whom were directors appointed by Deborah Convery and Shirley Bodo.

69.     By the terms of Section 8.04 (a) of the Tunbridge, Inc. and Scarborough Mews, Inc. By-Laws, the contract between AptRentz and Tunbridge LP and Scarborough Mews LP required approval by the affirmative vote of the two disinterested directors, Branch Coslett (for the Coslett related Class C shareholders), and Kevin Flynn, or his successor, James Proud, Esquire for the Class A shareholder. In the event of a tie vote between the two disinterested directors, the tie-breaking vote would be cast by the independent advisor.

70.     A resolution for the approval of the contracts between the AptRentz and Media Station, Tunbridge, and Scarborough Mews was never put to a vote of the Directors or shareholders of Media Station, Inc., Tunbridge, Inc. or Scarborough Mews, Inc.

71.     Despite Brooke Cottman's allegations to the contrary, Flynn never approved of the contracts between AptRentz and Media Station LP, Tunbridge LP, or Scarborough Mews LP in any of their discussions on June 13, 2017, or at any other time.

72.     To the contrary, Kevin Flynn expressly disapproved of the AptRentz contracts and their terms.

73.     Flynn's successor, James Proud, never approved of the AptRentz contracts.

74.     Following June 12, 2017, AptRentz began taking ever increasing control of the financial aspects of Media Station LP, Tunbridge LP and Scarborough Mews LP, eventually taking control over receipt of all tenant rent payments and security deposits, lease executions and the payment of its own management fees and compensation, all in violation of the RELRA statutes.

75.     This control included opening one or more accounts with financial institutions to directly receive all tenant rent payments and security deposits of the Limited Partnerships, and used these accounts for the payment of management and other fees to itself, all in violation of the RELRA statutes.

76.     AptRentz does not manage any other apartment complexes.

77.     AptRentz performs little or no services set forth in the management agreements, but rather the services of operating the residential rental properties of the Limited Partnerships, and remodeling of the rental units, continues to be undertaken by the staff employed and paid by the Limited Partnerships, as it had been prior to the existence of the management agreements with AptRentz.

78.     On February 21, 2018, James Proud as the Class A shareholder Director of Media Station, Inc., Tunbridge, Inc., and Scarborough Mews, Inc., wrote a letter to Brooke Cottman concerning, among other things, the AptRentz management agreements and in reply to requests made to Bodo

Family of Media Limited Partnership, and Shirley Bodo and Deborah Convery for signed documentation and consents relating to proposed loans from New York Community Bank to Media Station LP and Tunbridge LP.  A copy of the February 21, 2018 Proud letter is attached hereto, made a part hereof and marked as Exhibit H.

79.     With the letter, James Proud enclosed the signed documentation requested of Bodo Family of Media Limited Partnership, Shirley Bodo and Deborah Convery, and consented to their submission to the Bank, conditioned upon AptRentz **not** acting as Construction manager or property manager.

80.     Brooke Cottman received the Proud letter and signed documentation, and submitted the documentation to the Bank, thereby agreeing to and accepting the terms of their usage.

81.     Thereafter, Brooke Cottman failed to terminate the AptRentz property management agreements.

82.     On July 30, 2018, Cottman circulated a letter via email in which he described votes which never occurred and informed the other two directors that he had already directed payments exceeding $52,000 to his entity, AptRentz, and was intending to pay $170,463.23 into escrow on August 1, 2018. The July 30, 2018 letter is attached hereto as Exhibit I.

83.     Brooke Cottman either failed to pay any such amounts into an escrow account or failed to maintain the escrow, as no Cottman director or other representative of the Cottman parties will supply evidence of its existence.

84.     From June 12, 2017 until his death, Brooke Cottman directed payments from the Limited Partnerships to AptRentz and distributions and/or other payments from AptRentz to himself, which payments were not in the best interests of the Limited Partnerships or their respective corporate general partners.

13

85.     During the same period Brooke Cottman directed distributions and other payments to Cindy Cottman, Virginia Palusky and/or Graham Palusky from AptRentz, which payments were not in the best interests of the Limited Partnerships or their respective corporate general partners.

86.     At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family Limited Partnership.

87.     Following the death of Brooke Cottman, Cynthia Cottman, Virginia Palusky and/or Graham Palusky have assumed control of AptRentz, and have caused distributions and other payments to themselves and/or other entities they control from AptRentz.

88.     Such distributions and payments were not in the best interests of the Limited Partnerships or their respective corporate general partners.

89.     Following the death of Brooke Cottman, Virginia Palusky became an officer of Media Station, Inc., and Cynthia Cottman became a director and officer of Tunbridge, Inc. and Scarborough Mews, Inc.

90.     Since becoming an officer and/or director of Media Station, Inc., Tunbridge, Inc. and/ or Scarborough Mews, Inc., Cynthia Cottman and Virginia Palusky have continued to receive and/or cause distributions and other payments from AptRentz to themselves and/or other entities they control, to the detriment and loss of Bodo Family of Media Limited Partnership, the other limited partner of Media Station LP, and Bodo Family of Media Limited Partnership and the Coslett Limited Partners, the other limited partners of Tunbridge LP and Scarborough Mews LP.

91.     Bodo Family LLC t/a Bodo Family of Media Limited Partnership brings the claims stated herein directly, and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP and Scarborough Mews, Inc. t/a Scarborough Mews LP.

92.    Prior demand to the Limited Partnerships pursuant to 15 Pa.C.S.A § 8692 is excused to prevent immediate and irreparable harm to the Limited Partnerships by the possible loss of the tolling of the statute of limitations provided in 20 Pa.C.S.A § 3383 of claims arising from the self-dealing conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky described herein.

## COUNT I
## Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

93.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 92 above as though fully set forth herein.

94.    Brooke Cottman, as President and Director of Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., and the person who exercised unilateral of these corporate general partners and thereby control over the Limited Partnerships, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d))  to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

95.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty by forming AptRentz, directing distributions and payments from the Limited Partnerships to AptRentz, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

96.    Following the death of Brooke Cottman, Cynthia Cottman as Director and officer of Tunbridge, Inc. and Scarborough Mews, Inc. owed a common law and statutory fiduciary duty of

loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

97.     Following the death of Brooke Cottman, Virginia Palusky as officer of Media Station, Inc., owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

98.     As set forth in detail above, Cynthia Cottman and Virginia Palusky have breached the fiduciary duty of loyalty by directing distributions and payments to AptRentz, and directing and or receiving distributions from AptRentz to themselves, Graham Palusky and or other family members.

99.     As a result of the aforesaid conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky, Bodo Family, LLC t/a Bodo Family of Media Limited Partnership has sustained a loss of distributions and other payments that they were entitled to from Media Station LP, Tunbridge LP and Scarborough Mews LP.

100.    The above described conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Plaintiffs and in disregard of their rights entitling Plaintiffs to punitive damages.

101.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

16

102.    Following the death of Brooke Cottman, Cynthia Cottman and Virginia Palusky acted on behalf of themselves and as agents and representatives of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

103.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

        **WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.


### COUNT II
### Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc., t/a Media Station LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Virginia Palusky individually**

104.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 103 above as though fully set forth herein.

105.    Brooke Cottman, as President and Director of Media Station, Inc., and the person who exercised unilateral control thereof and thereby control over Media Station LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and § 8649(b), (d)) to Media Station LP and Media Station, Inc.

17

106.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Media Station LP and Media Station, Inc.by forming AptRentz, directing distributions and payments to AptRentz from Media Station LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

107.    Following the death of Brooke Cottman, Virginia Palusky as an officer of Media Station, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512 (c), § 1712 (c), and § 8649(b), (d)) to Media Station LP and Media Station, Inc.

108.    Virginia Palusky breached the fiduciary duty of loyalty to Media Station LP and Media Station, Inc. by receiving payments from AptRentz while an officer of Media Station Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

109.    As a result of the aforesaid conduct of Brooke Cottman and Virginia Palusky, Media Station LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

110.    The above described conduct of Brooke Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Media Station LP and in disregard of its rights entitling Media Station LP to punitive damages.

111.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

112.    Following the death of Brooke Cottman, Virginia Palusky acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

18

113.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Media Station LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT III
### Breach of Fiduciary Duty

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc., t/a Tunbridge LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

114.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 113 above as though fully set forth herein.

115.    Brooke Cottman, as President and Director of Tunbridge, Inc., and the person who exercised unilateral control thereof and thereby control over Tunbridge LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

116.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Tunbridge LP and Tunbridge, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Tunbridge LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

19

117.    Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

118.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of loyalty to Tunbridge LP and Tunbridge, Inc. by receiving payments from AptRentz while an officer and Director of Tunbridge, Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

119.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Tunbridge LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

120.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Tunbridge LP and in disregard of its rights entitling Tunbridge LP to punitive damages.

121.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

122.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

123.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Tunbridge LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc. t/a Tunbridge LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

<div align="center">

**COUNT IV**
**Breach of Fiduciary Duty**

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

</div>

124.     The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 123 above as though fully set forth herein.

125.     Brooke Cottman, as President and Director of Scarborough Mews, Inc., and the person who exercised unilateral control thereof and thereby control over Scarborough Mews LP, owed a common law and statutory fiduciary duty of loyalty (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

126.     As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of loyalty to Scarborough Mews LP and Scarborough Mews, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Scarborough Mews LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

127.     Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of loyalty (including but not

limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

128.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of loyalty to Scarborough Mews LP and Scarborough Mews, Inc. by receiving payments from AptRentz while an officer and Director of Scarborough Mews, Inc., and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

129.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Scarborough Mews LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

130.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Scarborough Mews LP and in disregard of its rights entitling Scarborough Mews LP to punitive damages.

131.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

132.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

133.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews, Inc. t/a Scarborough Mews LP, demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives

of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT V
## Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

134.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 133 above as though fully set forth herein.

135.    Brooke Cottman, as President and Director of Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc., and the person who exercised unilateral of these corporate general partners and thereby control over the Limited Partnerships, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

136.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing by forming AptRentz, directing distributions and payments from the Limited Partnerships to AptRentz, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

137.    Following the death of Brooke Cottman, Cynthia Cottman as Director and officer of Tunbridge, Inc. and Scarborough Mews, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c),

and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

138.    Following the death of Brooke Cottman, Virginia Palusky as officer of Media Station, Inc., owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Bodo Family LLC t/a Bodo Family of Media Limited Partnership as a limited partner of the Limited Partnerships.

139.    As set forth in detail above, Cynthia Cottman and Virginia Palusky have breached the fiduciary duty of good faith and fair dealing by directing distributions and payments to AptRentz, and directing and or receiving distributions from AptRentz to themselves, Graham Palusky and or other family members.

140.    As a result of the aforesaid conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky, Bodo Family, LLC t/a Bodo Family of Media Limited Partnership has sustained a loss of distributions and other payments that they were entitled to from Media Station LP, Tunbridge LP and Scarborough Mews LP.

141.    The above described conduct of Brooke Cottman, Cynthia Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Plaintiffs and in disregard of their rights entitling Plaintiffs to punitive damages.

142.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

143.    Following the death of Brooke Cottman, Cynthia Cottman and Virginia Palusky acted on behalf of themselves and as agents and representatives of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

24

144.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

WHEREFORE, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT VI
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc., t/a Media Station LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

145.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 144 above as though fully set forth herein.

146.    Brooke Cottman, as President and Director of Media Station, Inc., and the person who exercised unilateral control thereof and thereby control over Media Station LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Media Station LP and Media Station, Inc.

147.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Media Station LP and Media Station, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Media Station LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

148.    Following the death of Brooke Cottman, Virginia Palusky as an officer of Media Station, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(c), § 1712 (c), and or § 8649(b), (d)) to Media Station LP and Media Station, Inc.

149.    Virginia Palusky breached the fiduciary duty good faith and fair dealing to Media Station LP and Media Station, Inc. by receiving payments from AptRentz while an officer of Media Station Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

150.    As a result of the aforesaid conduct of Brooke Cottman and Virginia Palusky, Media Station LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

151.    The above described conduct of Brooke Cottman and Virginia Palusky was intentional, outrageous, willful and wanton, done with intent to harm Media Station LP and in disregard of its rights entitling Media Station LP to punitive damages.

152.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

153.   Following the death of Brooke Cottman, Virginia Palusky acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

154.   Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Media Station LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman and Virginia Palusky in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT VII
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc., t/a Tunbridge LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

155.   The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 154 above as though fully set forth herein.

156.   Brooke Cottman, as President and Director of Tunbridge, Inc., and the person who exercised unilateral control thereof and thereby control over Tunbridge LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

157.    As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Tunbridge LP and Tunbridge, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Tunbridge LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

158.    Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Tunbridge LP and Tunbridge, Inc.

159.    As set forth in detail above, Cynthia Cottman breached the fiduciary duty of good faith and fair dealing to Tunbridge LP and Tunbridge, Inc. by receiving payments from AptRentz while an officer and Director of Tunbridge, Inc, and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

160.    As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Tunbridge LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

161.    The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Tunbridge LP and in disregard of its rights entitling Tunbridge LP to punitive damages.

162.    At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

28

163.    Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

164.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Tunbridge LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Tunbridge Inc. t/a Tunbridge LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT VIII
### Breach of Duty of Good Faith and Fair Dealing

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc., t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership and Cynthia Cottman individually**

165.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 164 above as though fully set forth herein.

166.    Brooke Cottman, as President and Director of Scarborough Mews, Inc., and the person who exercised unilateral control thereof and thereby control over Scarborough Mews LP, owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

167.     As set forth in detail above, Brooke Cottman has repeatedly breached the fiduciary duty of good faith and fair dealing to Scarborough Mews LP and Scarborough Mews, Inc. by forming AptRentz, directing distributions and payments to AptRentz from Scarborough Mews LP, and directing distributions from AptRentz to himself, Cindy Cottman, Virginia Palusky and/or Graham Palusky.

168.     Following the death of Brooke Cottman, Cynthia Cottman as an officer and Director of Tunbridge, Inc. owed a common law and statutory fiduciary duty of good faith and fair dealing (including but not limited to 15 Pa.C.S.A. § 512(a), (c), § 1712(a), (c), and or § 8649(b), (d)) to Scarborough Mews LP and Scarborough Mews, Inc.

169.     As set forth in detail above, Cynthia Cottman breached the fiduciary duty of good faith and fair dealing to Scarborough Mews LP and Scarborough Mews, Inc. by receiving payments from AptRentz while an officer and Director of Scarborough Mews, Inc., and directing distributions from AptRentz to herself, Virginia Palusky, Graham Palusky and or other family members.

170.     As a result of the aforesaid conduct of Brooke Cottman and Cynthia Cottman, Scarborough Mews LP has sustained a loss of profit which would have been available for distribution to its other limited partner, Bodo Family of Media Limited Partnership.

171.     The above described conduct of Brooke Cottman and Cynthia Cottman was intentional, outrageous, willful and wanton, done with intent to harm Scarborough Mews LP and in disregard of its rights entitling Scarborough Mews LP to punitive damages.

172.     At all times relevant hereto up until his death, Brooke Cottman acted on behalf of himself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

173.   Following the death of Brooke Cottman, Cynthia Cottman acted on behalf of herself and as agent and representative of Cottman Family LLC t/a Cottman Family Limited Partnership acting with express, implied or apparent authority.

174.   Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Scarborough Mews Inc., t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT IX
## Civil Conspiracy

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

175.   The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 174 above as though fully set forth herein.

176.   Brooke Powell Cottman, along with Cynthia Cottman and Virginia Palusky, and on behalf of Cottman Family LLC t/a Cottman Family Limited Partnership conspired to divert funds away from the Limited Partnerships with intent to decrease distributions that would be due Bodo Family of Media Limited Partnership, the other limited partner of Media Station LP, and Bodo Family of

Media Limited Partnership and the Coslett Limited Partners, the other limited partners of Tunbridge LP and Scarborough Mews LP.

177.    As a result of this conspiracy, Bodo Family of Media Limited Partnership have sustained substantial damages including loss of distributions from the Limited Partnerships resulting from the payments to AptRentz.

178.    Cottman Family LLC t/a Cottman Family Limited Partnership is vicariously liable to Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

### COUNT X
### Civil Conspiracy

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually**

179.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 178 above as though fully set forth herein.

180.    Brooke Powell Cottman, along with Cynthia Cottman and Virginia Palusky and on behalf of Cottman Family LLC t/a Cottman Family Limited Partnership conspired to divert funds away from the Limited Partnerships with intent to decrease their profit which would have been available for distribution to its other limited partner in Media Station LP, Bodo Family of Media Limited Partnership, and its other limited partners in Tunbridge LP and Scarborough Mews LP, Bodo Family of Media Limited Partnership and the Coslett Limited Partners.

181.    As a result of this conspiracy, Media Station LP, Tunbridge LP and Scarborough Mews LP have sustained substantial damages including loss of distributions and or profits resulting from the payments to AptRentz.

182.    Cottman Family LLC t/a Cottman Family Limited Partnership is therefore vicariously liable to Plaintiffs Media Station LP, Tunbridge LP, and Scarborough Mews LP for the compensatory and punitive damages described above.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman, Cottman Family LLC t/a Cottman Family Limited Partnership, Cynthia Cottman individually and Virginia Palusky individually in an amount of excess of $50,000.00 together with attorneys fees, punitive damages and costs as allowed by law.

## COUNT XI
## Breach of Contract

**Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP v. Cynthia Cottman and Virginia Palusky as Personal Representatives of the Estate of Brooke Powell Cottman**

183.    The Plaintiffs incorporate by reference the allegations contained in paragraphs one through 182 above as though fully set forth herein.

184.    Brooke Cottman breached Section 5.08 of the corporate Bylaws of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc. by his failure to seek board approval prior to entering into the AptRentz management agreements.

185.    Brooke Cottman breached Section 8.04 (a) of the corporate Bylaws of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc. by his failure to seek board approval from the other disinterested directors prior to entering into the AptRentz management agreements.

186.    As Director and President of Media Station Inc., Tunbridge Inc. and Scarborough Mews Inc., Brooke Cottman breached his contractual fiduciary duties and duty of good faith set forth in sections 4.01 and 5.01(d) of the Bylaws of the Media Station, Inc., Tunbridge, Inc. and Scarborough Mews, Inc.

187.    Brooke Cottman breached the terms and conditions set forth in the James Proud letter of February 21, 2018 (Exhibit H) by his failure to terminate the AptRentz property management agreements, despite submitting the signed documentation and consents of Bodo Family of Media Limited Partnership, Shirley Bodo and Deborah Convery to New York Community Bank in conjunction with the proposed loans to Media Station LP and Tunbridge LP.

188.    As a result of breaches by Brooke Cottman, Bodo Family of Media Limited Partnership directly and derivatively on behalf of Media Station LP, Tunbridge LP and Scarborough Mews LP

have sustained substantial damages including loss of distributions and or profits resulting from the breaches and payments to AptRentz.

**WHEREFORE**, Plaintiffs Bodo Family LLC t/a Bodo Family of Media Limited Partnership directly, and derivatively on behalf of Media Station Inc. t/a Media Station LP, Tunbridge Inc. t/a Tunbridge LP, and Scarborough Mews Inc. t/a Scarborough Mews LP demand judgment for them and against Cynthia Cottman and Virginia Palusky as personal representatives of the Estate of Brooke Powell Cottman in an amount of excess of $50,000.00 together with attorneys fees and costs as allowed by law.

*/s/ Eugene F. Jarrell, III*
Eugene F. Jarrell, III, Esquire
Atty. I.D. No. 34748
Attorney for Plaintiffs
334 W. Front Street
Media, PA 19063
(610) 565-6130
*efjarrell@gmail.com*

I, Deborah Conve

partner of Plaintiff Bodo

set forth in Plaintiffs' C

information and belief.

§ 4904 relating to unswo

## VERIFICATION

I, Shirley Bodo, a co-manager member of Plaintiff Bodo Family, LLC, general partner of Plaintiff Bodo Family of Media Limited Partnership, hereby verify that the facts set forth in Plaintiffs' Complaint are true and correct to the best of my knowledge, or information and belief. This verification is made subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.


Shirley Bodo

Exhibit A

# BYLAWS

## OF

## MEDIA STATION INC.

(a Pennsylvania corporation)

## ARTICLE I

### OFFICES AND FISCAL YEAR

Section 1.01.  REGISTERED OFFICE.  The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02.  OTHER OFFICES.  The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03.  FISCAL YEAR.  The fiscal year of the corporation shall begin the 1st day of January in each year.

## ARTICLE II

### NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01.  MANNER OF GIVING NOTICE.

(a)  General Rule.  Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice.  If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received.  A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)    <u>Adjourned Shareholder Meetings</u>.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02.  NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03.  NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)    <u>General Rule</u>.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)    ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)    five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)    <u>Notice of Action by Shareholders on Bylaws</u>.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws. There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

2

Section 2.04.   WAIVER OF NOTICE.

(a)   Written Waiver.   Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice.  Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting.  In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)   Waiver by Attendance.   Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05.   MODIFICATION OF PROPOSAL CONTAINED IN NOTICE. Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose.

Section 2.06.   EXCEPTION TO REQUIREMENT OF NOTICE.

(a)   General Rule.   Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)   Shareholders Without Forwarding Addresses.   Notice or other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address.  Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.   USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT. One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.  Participation in a meeting pursuant to this section shall constitute presence in person at the meeting.

# ARTICLE III

## SHAREHOLDERS

Section 3.01.   PLACE OF MEETING.   All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02.   ANNUAL MEETING.   The board of directors ma y fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A. M., and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting.   If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter.   Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03.   SPECIAL MEETINGS.

(a)     Call of Special Meetings.   Special meetings of the shareholders may be called at any time:

(1)     by the board of directors; or

(2)     unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting.

(b)     Fixing Time of Meeting.   At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request.   If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so.

Section 3.04.   QUORUM AND ADJOURNMENT.

(a)     General Rule.   A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present.   The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter.   Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

(b)   Withdrawal of a Quorum.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

(c)   Adjournment for Lack of Quorum.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

(d)   Adjournments Generally.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

(e)   Electing Directors at Adjourned Meeting.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

(f)   Other Action in Absence of Quorum.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.   ACTION BY SHAREHOLDERS.

(a)   General Rule.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

(b)   Interested Shareholders.  Any merger or other transaction authorized under 15 Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

    (c)   <u>Exceptions</u>. Subsection (b) shall not apply to a transaction:

    (1)   that has been approved by a majority vote of the board of directors without counting the vote of directors who:

    (i)   are directors or officers of, or have a material equity interest in, the interested shareholder; or

    (ii)   were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

    (2)   in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class.

    (d)   <u>Additional Approvals</u>. The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

    Section 3.06.  ORGANIZATION.  At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

    Section 3.07.  VOTING RIGHTS OF SHAREHOLDERS.  Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3.08.   VOTING AND OTHER ACTION BY PROXY.

    (a)    <u>General Rule</u>.

        (1)    Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

        (2)    The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

        (3)    Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

    (b)    <u>Execution and Filing</u>.  Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.  A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

        (1)    may be treated as properly executed for purposes of this section; and

        (2)    shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

    (c)    <u>Revocation</u>.  A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.  An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.  A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

    (d)    <u>Expenses</u>.  Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

by or on behalf of the board of directors or its nominees for election to the board, including solicitation by professional proxy solicitors and otherwise.

Section 3.09. VOTING BY FIDUCIARIES AND PLEDGEES.   Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may he voted by the trustee, fiduciary, assignee or receiver. A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10.   VOTING BY JOINT HOLDERS OF SHARES.

(a)   General Rule.  Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)    if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)    if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)   Exception.  If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11.   VOTING BY CORPORATIONS

(a)   Voting by Corporate Shareholders.  Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

(b)    Controlled Shares.    Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time.

Section 3.12.    DETERMINATION OF SHAREHOLDERS OF RECORD.

(a)    Fixing Record Date.    The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.  Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection.  The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose.  When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting.

(b)    Determination When a Record Date is Not Fixed.  If a record date is not fixed:

(1)    The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

(2)    The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

(3)    The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

Section 3.13.    VOTING LISTS.

(a)    General Rule.    The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

of shares held by each. The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

(b)     Effect of List. Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list. The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14.  JUDGES OF ELECTION.

(a)     Appointment. In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof. If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting. The number of judges shall be one or three. A person who is a candidate for office to be filled at the meeting shall not act as a judge.

(b)     Vacancies. In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

(c)     Duties. The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders. The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical. If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

(d)     Report. On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them. Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15.  CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

(a)     Unanimous Written Consent. Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

(b)　Partial Written Consent.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting.  The consents shall be filed with the secretary of the corporation.  The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

Section 3.16.  MINORS AS SECURITY HOLDERS.  The corporate on may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

## ARTICLE IV

## BOARD OF DIRECTORS

Section 4.01.  POWERS; PERSONAL LIABILITY.

(a)　General Rule.  Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

(b)　Standard of Care: Justifiable Reliance.  A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.  In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

(1)　One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

(2)   Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3)   A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

(c)   Consideration of Factors.   In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b).

(d)   Presumption.   Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

(e)   Personal Liability of Directors.

(1)   A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

(i)   the director has breached or failed to perform the duties of his or her office under this section; and

(ii)   the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

(2)   The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law.

(f)   Notation of Dissent.   A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting.   The right to dissent shall not apply to a director who voted in favor of the action.   Nothing in this section

12

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in writing, of the asserted omission or inaccuracy.

Section 4.02. QUALIFICATION AND SELECTION OF DIRECTORS.

(a) Qualifications. Each director of the corporation shall be a natural person of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b) Election of Directors. Except as otherwise provided in these bylaws, directors of the corporation shall be elected by the shareholders. In elections for directors, voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the election and before the voting begins. The candidates receiving the highest number of votes from each class or group of classes, if any, entitled to elect directors separately up to the number of directors to be elected by the class or group of classes shall be elected. If at any meeting of shareholders, directors of more than one class are to be elected, each class of directors shall be elected in a separate election.

(c) Cumulative Voting. Unless the articles provide for straight voting, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which the shareholder may be entitled by the total number of directors to be elected in the same election by the holders of the class or classes of shares of which his or her shares are a part and the shareholders may cast the whole number of his or her votes for one candidate or may distribute them among two or more candidates.

Section 4.03. NUMBER AND TERM OF OFFICE.

(a) Number. The board of directors shall consist of two directors – one Class A director and one Class B director. Only shareholders owning Class A stock of the corporation shall be entitled to cast votes to elect the Class A director. Only shareholders owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B director. The term of appointment of each of the Class A Director and the Class B Director shall be one year.

(b) Independent Advisor. The shareholders shall cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors. The independent advisor shall not be a director and shall not be given notice of nor attend any regular or special meetings of the board of directors unless and until the board is unable to reach a resolution by the required number of director votes on a particular matter or issue during a regular or special meeting. Should the board become deadlocked in this manner, any director may call a special meeting of the board for the sole purpose of resolving any such deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that the meeting will take place and that the independent advisor should attend. At the meeting the independent advisor will be permitted to cast one vote as if he or she were a director for the sole purpose of breaking the deadlock.

(c)     Term of Office.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal. A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director.

(d)     Resignation.  Any director or independent advisor may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.  VACANCIES.

(a)     General Rule.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are be entitled to select a director to fill the directorship, or independent advisorship, as applicable.  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor. Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     Action by Directors in the Event of an Unfilled Vacancy.  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.  REMOVAL OF DIRECTORS.

(a)     Removal by the Shareholders.  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors. In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting.  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     Removal by the Board.  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

(c)     Removal of Directors Elected by Cumulative Voting.  An individual director shall not be removed (unless the entire board or class of the board is removed) if

14

sufficient votes are cast against the resolution for his removal which, if cumulatively voted at an annual or other regular election of directors, would be sufficient to elect one or more directors to the board or to the class.

Section 4.06.  PLACE OF MEETINGS.  Meetings of the board of directors may be held at such place within or without Pennsylvania as the board of directors may from time to time appoint or as may be designated in the notice of the meeting.

Section 4.07.  ORGANIZATION OF MEETINGS.  At every meeting of the board of directors, the chairman of the board, if there be one, or, in the case of a vacancy in the office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by a majority of the directors present, shall act as chairman of the meeting.  The secretary or, in the absence of the secretary, an assistant secretary, or, in the absence of the secretary and the assistant secretaries, any person appointed by the chairman of the meeting, shall act as secretary.

Section 4.08.  REGULAR MEETINGS.  Regular meetings of the board of directors shall be held at such time and place as shall be designated from time to time by resolution of the board of directors.

Section 4.09.  SPECIAL MEETINGS.  Special meetings of the board of directors shall be held whenever called by the chairman or by two or more of the directors.

Section 4.10.  QUORUM OF AND ACTION BY DIRECTORS.

(a)     General Rule.  A majority of the directors in office of the corporation shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present and voting at a meeting at which a quorum is present shall be the acts of the board of directors.  In the case of a vacancy in the board of directors, the remaining director and the independent advisor shall constitute a quorum.

(b)     Action by Written Consent.  Any action required or permitted to be taken at a meeting of the directors may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the directors in office is filed with the secretary of the corporation.

Section 4.11.  EXECUTIVE AND OTHER COMMITTEES.

(a)     Establishment and Powers.  The board of directors may, by resolution adopted by a majority of the directors in office, establish one or more committees to consist of one or more directors of the corporation.  Any committee, to the extent provided in the resolution of the board of directors, shall have and may exercise all of the powers and authority of the board of directors except that a committee shall not have any power or authority as to the following:

(1)    The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

(2)    The creation or filling of vacancies in the board of directors.

(3)    The adoption, amendment or repeal of these bylaws.

(4)    The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

(5)    Action on matters committed by a resolution of the board of directors to another committee of the board.

(b)    Alternate Committee Members.  The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee.  In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

(c)    Term.  Each committee of the board shall serve at the pleasure of the board.

(d)    Committee Procedures.  The term "board of directors" or' "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

Section 4.12.  COMPENSATION.  The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

## ARTICLE V

## OFFICERS

Section 5.01.  OFFICERS GENERALLY.

(a)    Number. Qualification and Designation.  The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03. Officers may but need not be directors or shareholders of the corporation. The president and secretary shall be natural persons of full age. The treasurer may be a corporation, but if a natural person shall be of full age. The board of

16

directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation. Any number of offices may be held by the same person.

(b) Resignations. Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

(c) Bonding. The corporation may secure the fidelity of any or all of its officers by bond or otherwise.

(d) Standard of Care. Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

Section 5.02. ELECTION AND TERM OF OFFICE. The officers of the corporation, except those elected by delegated authority pursuant to Section 5.03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

Section 5.03. SUBORDINATE OFFICERS, COMMITTEES AND AGENTS. The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

Section 5.04. REMOVAL OF OFFICERS AND AGENTS. Any officer or agent of the corporation may be removed by the board of directors with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

Section 5.05. VACANCIES. A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to Section 5.03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5.06.  AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07.  THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.  THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors.  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5.09.  THE SECRETARY.  The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board. of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10.  THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.11.  SALARIES.  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board.  The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to

18

(ii)     to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(3)     to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

(b)     Partial Payment.    If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

(c)     Presumption.    The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contenders or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

(d)     Definitions.  For purposes of this Article:

(1)     "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2)     "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise):

(3)     "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

(4)     "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

Section    7.02.    PROCEEDINGS    INITIATED    BY    INDEMNIFIED REPRESENTATIVES.  Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in

a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office.  This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03.  ADVANCING EXPENSES.  The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article.  The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04.  SECURING OF INDEMNIFICATION OBLIGATIONS.  to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate.  Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05.  PAYMENT OF INDEMNIFICATION.  An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06.  ARBITRATION.

(a)    General Rule.  Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators.  In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the

Section 8.04.   INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)   General Rule   A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)   the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)   the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)   the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders

(b)   Quorum   Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05   DEPOSITS.  All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.   CORPORATE RECORDS

(a)   Required Records.   The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent   Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

25

provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11.  RELIANCE OF PROVISIONS.  Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article.

Section 7.12.  INTERPRETATION.  The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

<div align="center">

**ARTICLE VIII**
**MISCELLANEOUS**

</div>

Section 8.01.  CORPORATE SEAL.  The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02.  CHECKS.  All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate.

Section 8.03.  CONTRACTS.

(a)   General Rule.  Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b)   Statutory Form of Execution of Instruments.  Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

Section 8.04.  INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)   General Rule.  A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or

<div align="center">24</div>

to make copies or extracts therefrom.  A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder. in every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder.  The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8.07.  FINANCIAL REPORTS.   Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year.  The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries.  The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed.  Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

> (1)    Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation.

> (2)    Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8.08.  AMENDMENT OF BYLAWS.   These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders.  See Section 2.03(b) (relating to notice of action by shareholders on bylaws).

## UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

## IN LIEU OF MEETING OF THE SHAREHOLDERS OF MEDIA STATION INC.

The undersigned Shareholders of Media Station Inc. (the "Corporation"), pursuant to 15 Pa. C.S.A. § 1766(a), consent in writing to the following.

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A" shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this 8th day of September, 2011 by unanimous consent of the Shareholders of the Corporation, as evidenced by their signatures below.

_____
Lajos Bodo, Shareholder

_____
Brooke P. Cottman, Shareholder

## CERTIFICATION

I, ~~Bruce P. Cottam~~ , Secretary of Media Station Inc., hereby certify that the attached is

a true and correct copy of the written consent executed by the Shareholders of Media Station

Inc., on the _8th_ day of _September_ , 2011.

_[signature]_
Secretary

Exhibit B

# BYLAWS

## OF

## TUNBRIDGE INC.

(a Pennsylvania corporation)

## ARTICLE I

## OFFICES AND FISCAL YEAR

Section 1.01. REGISTERED OFFICE. The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02. OTHER OFFICES. The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03. FISCAL YEAR. The fiscal year of the corporation shall begin the 1st day of January in each year.

## ARTICLE II

## NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01. MANNER OF GIVING NOTICE.

(a)   General Rule. Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice. If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received. A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)    Adjourned Shareholder Meetings.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02   NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03   NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)    General Rule.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)    ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)    five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)    Notice of Action by Shareholders on Bylaws.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws.  There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby.

2

Section 2.04.   WAIVER OF NOTICE

(a)   Written Waiver.   Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice. Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting. In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)   Waiver by Attendance.   Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05   MODIFICATION OF PROPOSAL CONTAINED IN NOTICE Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose.

Section 2.06.   EXCEPTION TO REQUIREMENT OF NOTICE.

(a)   General Rule.   Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)   Shareholders Without Forwarding Addresses.   Notice or other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address. Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.   USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other. Participation in a meeting pursuant to this section shall constitute presence in person at the meeting

ARTICLE III

SHAREHOLDERS

Section 3.01. PLACE OF MEETING. All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02 ANNUAL MEETING. The board of directors may fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A. M., and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting. If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter. Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03. SPECIAL MEETINGS.

(a)    Call of Special Meetings. Special meetings of the shareholders may be called at any time:

(1)    by the board of directors; or

(2)    unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting.

(b)    Fixing Time of Meeting. At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request. If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so.

Section 3.04 QUORUM AND ADJOURNMENT.

(a)    General Rule. A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present. The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter. Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

(b)     Withdrawal of a Quorum.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

(c)     Adjournment for Lack of Quorum.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

(d)     Adjournments Generally.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

(e)     Electing Directors at Adjourned Meeting.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

(f)     Other Action in Absence of Quorum.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.  ACTION BY SHAREHOLDERS.

(a)     General Rule.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

(b)     Interested Shareholders.  Any merger or other transaction authorized under 15 Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

5

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

      (c)    Exceptions  Subsection (b) shall not apply to a transaction:

          (1)    that has been approved by a majority vote of the board of directors without counting the vote of directors who:

              (i)    are directors or officers of, or have a material equity interest in, the interested shareholder; or

              (ii)    were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

          (2)    in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class

      (d)    Additional Approvals  The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

    Section 3.06   ORGANIZATION.  At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

    Section 3.07.  VOTING RIGHTS OF SHAREHOLDERS.  Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3 08.  VOTING AND OTHER ACTION BY PROXY.

(a)  <u>General Rule</u>.

(1)  Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

(2)  The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

(3)  Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

(b)  <u>Execution and Filing</u>.  Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.  A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

(1)  may be treated as properly executed for purposes of this section; and

(2)  shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

(c)  <u>Revocation</u>.  A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.  An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.  A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

(d)  <u>Expenses</u>.  Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

7

by or on behalf of the board of directors or its nominees for election to the board, including solicitation by professional proxy solicitors and otherwise.

Section 3.09. VOTING BY FIDUCIARIES AND PLEDGEES. Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may be voted by the trustee, fiduciary, assignee or receiver. A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10. VOTING BY JOINT HOLDERS OF SHARES.

(a)    General Rule. Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)    if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)    if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)    Exception. If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11. VOTING BY CORPORATIONS

(a)    Voting by Corporate Shareholders. Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

(b)     Controlled Shares.   Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time

Section 3.12.   DETERMINATION OF SHAREHOLDERS OF RECORD.

(a)     Fixing Record Date.   The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.  Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection.  The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose.  When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting.

(b)     Determination When a Record Date is Not Fixed.  If a record date is not fixed:

(1)     The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

(2)     The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

(3)     The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto.

Section 3.13.   VOTING LISTS.

(a)     General Rule.   The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

of shares held by each. The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

      (b)   Effect of List.  Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list.  The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14.  JUDGES OF ELECTION

      (a)   Appointment.  In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof.  If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting.  The number of judges shall be one or three.  A person who is a candidate for office to be filled at the meeting shall not act as a judge.

      (b)   Vacancies.  In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

      (c)   Duties.  The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders.  The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical.  If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

      (d)   Report.  On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them.  Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15.  CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

      (a)   Unanimous Written Consent.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

10

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

   (b) <u>Partial Written Consent</u>.  Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting.  The consents shall be filed with the secretary of the corporation.  The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

  Section 3.16   MINORS AS SECURITY HOLDERS.  The corporate on may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

<div align="center">ARTICLE IV</div>

<div align="center">BOARD OF DIRECTORS</div>

  Section 4.01   POWERS; PERSONAL LIABILITY.

   (a) <u>General Rule</u>.  Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

   (b) <u>Standard of Care; Justifiable Reliance</u>.  A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances.  In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

    (1) One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

<div align="center">11</div>

(2)    Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3)    A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

(c)    Consideration of Factors.  In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b).

(d)    Presumption.  Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

(e)    Personal Liability of Directors.

(1)    A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

(i)    the director has breached or failed to perform the duties of his or her office under this section; and

(ii)    the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

(2)    The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law.

(f)    Notation of Dissent.  A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting  The right to dissent shall not apply to a director who voted in favor of the action.  Nothing in this section

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in writing, of the asserted omission or inaccuracy.

Section 4.02. QUALIFICATION AND SELECTION OF DIRECTORS.

(a)     Qualifications   Each director of the corporation shall be a natural person of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b)     Election of Directors.  Except as otherwise provided in these bylaws, directors of the corporation shall be elected by the shareholders.  In elections for directors, voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the election and before the voting begins.  The candidates receiving the highest number of votes from each class or group of classes, if any, entitled to elect directors separately up to the number of directors to be elected by the class or group of classes shall be elected  If at any meeting of shareholders, directors of more than one class are to be elected, each class of directors shall be elected in a separate election

(c)     Cumulative Voting.  Unless the articles provide for straight voting, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which the shareholder may be entitled by the total number of directors to be elected in the same election by the holders of the class or classes of shares of which his or her shares are a part and the shareholders may cast the whole number of his or her votes for one candidate or may distribute them among two or more candidates.

Section 4.03   NUMBER AND TERM OF OFFICE

(a)     Number.  The board of directors shall consist of three directors – one Class A director, one Class B director and one Class C director   Only shareholders owning Class A stock of the corporation shall be entitled to cast votes to elect the Class A director. Only shareholders owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B director. Only shareholders owning Class C stock of the corporation shall be entitled to cast votes to elect the Class C director  The term of appointment of each of the Class A Director, the Class B Director and the Class C Director shall be one year.

(b)     Independent Advisor.  The shareholders shall cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors  The independent advisor shall not be a director and shall not be given notice of nor attend any regular or special meetings of the board of directors unless and until the board is unable to reach a resolution by the required number of director votes on a particular matter or issue during a regular or special meeting  Should the board become deadlocked in this manner, any director may call a special meeting of the board for the sole purpose of resolving any such deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that the meeting will take place and that the independent advisor should attend  At the meeting the

independent advisor will be permitted to cast one vote as if he or she were a director for the sole purpose of breaking the deadlock.

(c)     Term of Office.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal. A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director.

(d)     Resignation.  Any director or independent advisor may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.  VACANCIES.

(a)     General Rule.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are be entitled to select a director to fill the directorship, or independent advisorship, as applicable.  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor.  Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     Action by Directors in the Event of an Unfilled Vacancy.  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.  REMOVAL OF DIRECTORS.

(a)     Removal by the Shareholders.  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors.  In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting.  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     Removal by the Board.  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

14

of the board of directors except that a committee shall not have any power or authority as to the following:

> (1)    The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

> (2)    The creation or filling of vacancies in the board of directors.

> (3)    The adoption, amendment or repeal of these bylaws

> (4)    The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

> (5)    Action on matters committed by a resolution of the board of directors to another committee of the board.

(b)    <u>Alternate Committee Members</u>    The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee. In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

(c)    <u>Term</u>.    Each committee of the board shall serve at the pleasure of the board.

(d)    <u>Committee Procedures</u>.    The term "board of directors" or "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

Section 4.12.    COMPENSATION.    The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

## ARTICLE V

## OFFICERS

Section 5.01.    OFFICERS GENERALLY

(a)    <u>Number, Qualification and Designation</u>    The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03. Officers may but need not be directors or

16

shareholders of the corporation. The president and secretary shall be natural persons of full age. The treasurer may be a corporation, but if a natural person shall be of full age. The board of directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation. Any number of offices may be held by the same person.

(b)    Resignations. Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

(c)    Bonding. The corporation may secure the fidelity of any or all of its officers by bond or otherwise.

(d)    Standard of Care. Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

Section 5.02.  ELECTION AND TERM OF OFFICE. The officers of the corporation, except those elected by delegated authority pursuant to Section 5.03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

Section 5.03.  SUBORDINATE OFFICERS, COMMITTEES AND AGENTS.  The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

Section 5.04.  REMOVAL OF OFFICERS AND AGENTS. Any officer or agent of the corporation may be removed by the board of directors with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

Section 5.05.  VACANCIES. A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to

17

Section 5.03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5.06  AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07  THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.  THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors.  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5.09.  THE SECRETARY.  The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10  THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.11.  SALARIES  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board.  The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to Section 5.03  No officer shall be prevented from receiving such salary or other compensation by reason of the fact that the officer is also a director of the corporation.

Section 5.12.  DISALLOWED COMPENSATION.  Any payments made to an officer or employee of the corporation such as a salary, commission, bonus, interest, rent, travel or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or employee to the corporation to the full extent of such disallowance  It shall be the duty of the directors, as a Board, to enforce payment of each such amount disallowed  In lieu of payment by the officer or employee, subject to the determination of the directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE VI

## CERTIFICATES OF STOCK, TRANSFER, ETC.

Section 6.01  SHARE CERTIFICATES  If the articles state that the corporation shall issue uncertificated shares, the corporation shall give shareholders all information concerning their shares as is required by law.  If the corporation issues certificates, such certificates for shares of the corporation shall be in such form as approved by the board of directors, and shall state that the corporation is incorporated under the laws of Pennsylvania, the name of the person to whom issued, and the number and class of shares and the designation of the series (if any) that the certificate represents  The share register or transfer books and blank share certificates shall be kept by the secretary or by any transfer agent or registrar designated by the board of directors for that purpose.

Section 6.02.  ISSUANCE.  The share certificates of the corporation shall be numbered and registered in the share register or transfer books of the corporation as they are issued.  They shall be signed by the president or a vice president and by the secretary or an assistant secretary or the treasurer or an assistant treasurer, and shall bear the corporate seal, which may be a facsimile, engraved or printed; but where such certificate is signed by a transfer agent or a registrar the signature of any corporate officer upon such certificate may be a facsimile, engraved or printed.  In case any officer who has signed, or whose facsimile signature has been placed upon, any share certificate shall have ceased to be such officer because of death, resignation or otherwise, before the certificate is issued, it may be issued with the same effect as if the officer had not ceased to be such at the date of its issue.  The provisions of this Section 6.02 shall be subject to any inconsistent or contrary agreement at the time between the corporation and any transfer agent or registrar.

19

Section 6.03.   TRANSFER.  Transfers of shares shall be made on the share register or transfer books of the corporation upon surrender of the certificate therefor, endorsed by the person named in the certificate or by an attorney lawfully constituted in writing.  No transfer shall be made inconsistent with the provisions of the Uniform Commercial Code, 13 Pa.C.S § 8101 et seq., and its amendments and supplements.

Section 6.04.   RECORD HOLDER OF SHARES.  The corporation shall be entitled to treat the person in whose name any share or shares of the corporation stand on the books of the corporation as the absolute owner thereof, and shall not be bound to recognize any equitable or other claim to, or interest in, such share or shares on the part of any other person.

Section 6.05.   LOST, DESTROYED OR MUTILATED CERTIFICATES.  The holder of any shares of the corporation shall immediately notify the corporation of any loss, destruction or mutilation of the certificate therefor, and the board of directors may, in its discretion, cause a new certificate or certificates to be issued to such holder, in case of mutilation of the certificate, upon the surrender of the mutilated certificate or, in case of loss or destruction of the certificate, upon satisfactory proof of such loss or destruction and, if the board of directors shall so determine, the deposit of a bond in such form and in such sum, and with such surety or sureties, as it may direct.

## ARTICLE VII

## INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER AUTHORIZED REPRESENTATIVES

Section 7.01.   SCOPE OF INDEMNIFICATION

(a)   General Rule.   The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

(1)   where such indemnification is expressly prohibited by applicable law;

(2)   where the conduct of the indemnified representative has been finally determined pursuant to Section 7.06 or otherwise:

(i)   to constitute willful misconduct or recklessness within the meaning of 15 Pa. C.S § 513(b) and 1746(b) and 42 Pa. C.S § 8365(b)

20

or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

(ii)    to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(3)    to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

(b)    Partial Payment.    If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

(c)    Presumption.    The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

(d)    Definitions.    For purposes of this Article:

(1)    "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2)    "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise):

(3)    "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

(4)    "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

21

Section 7.02. PROCEEDINGS INITIATED BY INDEMNIFIED REPRESENTATIVES. Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03. ADVANCING EXPENSES. The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04. SECURING OF INDEMNIFICATION OBLIGATIONS. to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate. Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05. PAYMENT OF INDEMNIFICATION. An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06. ARBITRATION.

(a) General Rule. Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by

the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator within 30 days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area

> (b) <u>Burden of Proof</u>  The party or parties challenging the right of an indemnified representative to the benefits of this Article shall have the burden of proof.

> (c) <u>Expenses</u>  The corporation shall reimburse an indemnified representative for the expenses (including attorneys' fees and disbursements) incurred in successfully prosecuting or defending such arbitration

> (d) <u>Effect</u>  Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon. by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative under Section 7.01(a)(2) in a proceeding not directly involving indemnification under this Article  This arbitration provision shall be specifically enforceable

Section 7.07.  CONTRIBUTION.  If the indemnification provided for in this Article or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article or otherwise.

Section 7.08  MANDATORY INDEMNIFICATION OF DIRECTORS, OFFICERS, ETC.  To the extent that an authorized representative of the corporation has been successful on the merits or otherwise ill defense of any action or proceeding referred to in 15 Pa. C.S. § 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such person in connection therewith

Section 7.09.  CONTRACT RIGHTS; AMENDMENT OR REPEAL.  All rights under this Article shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound.  Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing.

Section 7.10.  SCOPE OF ARTICLE.  The rights granted by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or

advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity.   The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11.  RELIANCE OF PROVISIONS   Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article

Section 7.12  INTERPRETATION.   The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01.  CORPORATE SEAL   The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02.  CHECKS.  All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate

Section 8.03.  CONTRACTS

(a)   General Rule.  Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b)   Statutory Form of Execution of Instruments   Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

24

Section 8.04.  INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)    General Rule.  A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)    the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)    the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)    the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders

(b)    Quorum.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05  DEPOSITS.  All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.  CORPORATE RECORDS

(a)    Required Records.   The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent.  Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

25

(b)   Right of Inspection   Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom.   A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder, in every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder   The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8 07   FINANCIAL REPORTS.   Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year. The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries   The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed   Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

(1)   Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation

(2)   Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8 08   AMENDMENT OF BYLAWS.   These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders   See Section 2.03(b) (relating to notice of action by shareholders on bylaws)

26

## CERTIFICATION

I, _Brooke Cothran_, Secretary of Tunbridge Inc., hereby certify that the attached is a true and correct copy of the written consent executed by the Shareholders of Tunbridge Inc., on the _84h_ day of _September_, 2011.

_Brooke J. Cothran_
Secretary

## UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

## IN LIEU OF MEETING OF THE SHAREHOLDERS OF TUNBRIDGE INC.

The undersigned Shareholders of Tunbridge Inc. (the "Corporation"), pursuant to 15 Pa.

C.S.A. § 1766(a), consent in writing to the following

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in

force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A"

shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this $8th$ day of September, 2011 by unanimous consent of the

Shareholders of the Corporation, as evidenced by their signatures below.

_____
Lajos Bodo, Shareholder

_____
Brooke P. Cottman, Shareholder

_____
Edward Coslett, Jr., Shareholder

Exhibit C

# BYLAWS

## OF

## SCARBOROUGH MEWS, INC.

(a Pennsylvania corporation)

## ARTICLE I

## OFFICES AND FISCAL YEAR

Section 1.01.   REGISTERED OFFICE.   The registered office of the corporation in Pennsylvania shall be at 340 Media Station Road, Media, PA 19063 until otherwise established by an amendment of the articles or by the board of directors and a record of such change is filed with the Department of State in the manner provided by law.

Section 1.02.   OTHER OFFICES.   The corporation may also have offices at such other places within or without Pennsylvania as the board of directors may from time to time appoint or the business of the corporation may require.

Section 1.03.   FISCAL YEAR.   The fiscal year of the, corporation shall begin the 1st day of January in each year.

## ARTICLE II

## NOTICE - WAIVERS - MEETINGS GENERALLY

Section 2.01.   MANNER OF GIVING NOTICE.

(a)   General Rule.   Whenever written notice is required to be given to any person under the provisions of the Business Corporation Law or by the Articles or these bylaws, it may be given to the person either personally or by sending a copy thereof by first class or express mail, postage prepaid, or by telegram (with messenger service specified), telex or TWX (with answerback received) or courier service, charges prepaid, or by facsimile transmission, to the address (or to the telex, TWX or facsimile number) of the person appearing on the books of the corporation or, in the case of directors, supplied by the directors to the corporation for the purpose of notice.  If the notice is sent by mail, telegraph or courier service, it shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a telegraph office or courier service for delivery to that person or, in the case of telex or TWX, when dispatched or, in the case of facsimile, when received.  A notice of meeting shall specify the place, day and hour of the meeting and any other information required by any other provision of the Business Corporation Law, the articles or these bylaws.

1

(b)      Adjourned Shareholder Meetings.  When a meeting of shareholders is adjourned, it shall not be necessary to give any notice of the adjourned meeting or of the business to be transacted at an adjourned meeting, other than by announcement at the meeting at which the adjournment is taken, unless the board fixes a new record date for the adjourned meeting or these bylaws require notice of the business to be transacted and such notice has not previously been given.

Section 2.02.  NOTICE OF MEETINGS OF BOARD OF DIRECTORS.  Notice of a regular meeting of the board of directors need not be given.  Notice of every special meeting of the board of directors shall be given to each director by telephone or in writing at least 24 hours (in the case of notice by telephone, telex, TWX or facsimile transmission) or 48 hours (in the case of notice by telegraph, courier sex-vice or express mail) or five days (in the case of notice by first class mail) before the time at which the meeting is to be held.  Every such notice shall state the time and place of the meeting.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board need be specified in a notice of a meeting.

Section 2.03   NOTICE OF MEETINGS OF SHAREHOLDERS.

(a)      General Rule.  Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary to each shareholder of record entitled to vote at the meeting at least:

(1)      ten days prior to the day named for a meeting called to consider a fundamental transaction under 15 Pa. C.S. Chapter 19 regarding amendments of articles of incorporation, mergers, consolidations, share exchanges, sale of assets, divisions, conversions, liquidations and dissolution; or

(2)      five days prior to the day named for the meeting in any other case.

If the secretary neglects or refuses to give notice of a meeting, the person or persons calling the meeting may do so.  In the case of a special meeting of shareholders, the notice shall specify the general nature of the business to be transacted, and in all cases the notice shall comply with the express requirements of this section.  The corporation shall not have a duty to augment the notice.

(b)      Notice of Action by Shareholders on Bylaws.  In the case of a meeting of shareholders that has as one of its purposes action on the bylaws, written notice shall be given to each shareholder that the purpose, or one of the purposes, of the meeting is to consider the adoption, amendment or repeal of the bylaws.  There shall be included in, or enclosed with, the notice a copy of the proposed amendment or a summary of the changes to be effected thereby

2

Section 2.04.   WAIVER OF NOTICE

(a)   <u>Written Waiver</u>.   Whenever any written notice is required to be given under the provisions of the Business Corporation law, the articles or these bylaws, a waiver thereof in writing, signed by the person or persons entitled to the notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of the notice.  Except as otherwise required by this subsection, neither the business to be transacted at, nor the purpose of, a meeting need be specified in the waiver of notice of the meeting.  In the case of a special meeting of shareholders, the waiver of notice shall specify the general nature of the business to be transacted.

(b)   <u>Waiver by Attendance</u>.   Attendance of a person at any meeting shall constitute a waiver of notice of the meeting except where a person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting was not lawfully called or convened.

Section 2.05.   MODIFICATION OF PROPOSAL CONTAINED IN NOTICE. Whenever the language of a proposed resolution is included in a written notice of a meeting required to be given under the provisions of the Business Corporation Law or the articles or these bylaws, the meeting considering the resolution may without further notice adopt it with such clarifying or other amendments as do not enlarge its original purpose.

Section 2.06.   EXCEPTION TO REQUIREMENT OF NOTICE.

(a)   <u>General Rule</u>.   Whenever any notice or communication is required to be given to any person under the provisions of the Business Corporation Law or by the articles or these bylaws or by the terms of any agreement or other instrument or as a condition precedent to taking any corporate action and communication with that person is then unlawful, the giving of the notice or communication to that person shall not be required.

(b)   <u>Shareholders Without Forwarding Addresses</u>.   Notice or other communications shall not be sent to any shareholder with whom the corporation has been unable to communicate for more than 24 consecutive months because communications to the shareholder are returned unclaimed or the shareholder has otherwise failed to provide the corporation with a current address.  Whenever the shareholder provides the corporation with a current address, the corporation shall commence sending notices and other communications to the shareholder in the same manner as to other shareholders.

Section 2.07.   USE OF CONFERENCE TELEPHONE AND SIMILAR EQUIPMENT One or more persons may participate in a meeting of the board of directors or the shareholders of the corporation by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other.  Participation in a meeting pursuant to this section shall constitute presence in person at the meeting.

3

ARTICLE III

SHAREHOLDERS

Section 3.01    PLACE OF MEETING.    All meetings of the shareholders of the corporation shall be held at the registered office of the corporation unless another place is designated by the board of directors in the notice of a meeting.

Section 3.02.    ANNUAL MEETING.    The board of directors ma y fix the date and time of the annual meeting of the shareholders, but if no such date and time is fixed by the board, the meeting for any calendar year shall be held on the 15th day of April in such year, if not a legal holiday under the laws of Pennsylvania, and, if a legal holiday, then on the next succeeding business day, not a Saturday, at 10:00 o'clock, A M , and at said meeting the shareholders then entitled to vote shall elect directors and shall transact such other business as may properly be brought before the meeting. If the annual meeting shall not have been called and held within six months after the designated time, any shareholder' may call the meeting at any time thereafter. Except as otherwise provided in the articles, at least one meeting of the shareholder shall be held in each calendar year for the election of directors.

Section 3.03.    SPECIAL MEETINGS.

(a)    Call of Special Meetings.    Special meetings of the shareholders may be called at any time:

(1)    by the board of directors; or

(2)    unless otherwise provided in the articles, by shareholders entitled to cast at least 20% of the vote that all shareholders are entitled to cast at the particular meeting

(b)    Fixing Time of Meeting.    At any time, upon written request of any person who has called a special meeting, it shall be the duty of the secretary to fix the time of the meeting which shall be held not more than 60 days after the receipt of the request. If the secretary neglects or refuses to fix a time of the meeting, the person or persons calling the meeting may do so

Section 3.04.    QUORUM AND ADJOURNMENT.

(a)    General Rule    A meeting of shareholders of the corporation duly called shall not be organized for the transaction of business unless a quorum is present. The presence of shareholders entitled to cast at least a majority of the votes that all shareholders are entitled to cast on a particular matter to be acted upon at the meeting shall constitute a quorum for the purposes of consideration and action on the matter. Shares of the corporation, owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this

4

corporation, as such, shall not be counted in determining the total number of outstanding shares for quorum purposes at any given time.

(b)     Withdrawal of a Quorum.  The shareholders present at a duly organized meeting can continue to do business until adjournment notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

(c)     Adjournment for Lack of Quorum.  If a meeting cannot be organized because a quorum has not attended, those present may, except as provided in the Business Corporation Law, adjourn the meeting to such time and place as they may determine.

(d)     Adjournments Generally.  Any meeting at which directors are to be elected shall be adjourned only from day to day, or for such longer periods not exceeding 15 days each as the shareholders present and entitled to vote shall direct, until the directors have been elected.  Any other regular or special meeting may be adjourned for such period as the shareholders present and entitled to vote shall direct.

(e)     Electing Directors at Adjourned Meeting.  Those shareholders entitled to vote who attend a meeting called for the election of directors that has been previously adjourned for lack of a quorum, although less than a quorum as fixed in this section shall nevertheless constitute a quorum for the purpose of electing directors.

(f)     Other Action in Absence of Quorum.  Those shareholders entitled to vote who attend a meeting of shareholders that has been previously adjourned for one or more periods aggregating at least 15 days because of an absence of a quorum, although less than a quorum as fixed in this section, shall nevertheless constitute a quorum for the purpose of acting upon any matter set forth in the notice of the meeting if the notice states that those shareholders who attend the adjourned meeting shall nevertheless constitute a quorum for the purpose of acting upon the matter.

Section 3.05.  ACTION BY SHAREHOLDERS

(a)     General Rule.  Except as otherwise provided in the Business Corporation Law or the articles or these bylaws, whenever any corporate action is to be taken by vote of the shareholders of the corporation, it shall be authorized upon receiving the affirmative vote of a majority of the votes cast by all shareholders entitled to vote thereon.

(b)     Interested Shareholders.  Any merger or other transaction authorized under 15 Pa.C.S. Subchapter 19C between the corporation or subsidiary thereof and a shareholder of this corporation, or any voluntary liquidation authorized under 15 Pa.C.S. Subchapter 19F in which a shareholder is treated differently from other shareholders of the same class (other than any dissenting shareholders), shall require the affirmative vote of the shareholders entitled to cast at least a majority of the votes that all shareholders other than the interested shareholder are entitled to cast with respect to the transaction, without counting the vote of the interested shareholder.  For the purposes of the preceding sentence, interested

shareholder shall include the shareholder who is a party to the transaction or who is treated differently from other shareholders and any person, or group of persons, that is acting jointly or in concert with the interested shareholder and any person who, directly or indirectly, controls, is controlled by or is under common control with the interested shareholder. An interested shareholder shall not include any person who, in good faith and not for the purpose of circumventing this subsection, is an agent, bank, broker, nominee or trustee for one or more other persons, to the extent that the other person or persons are not interested shareholders.

 (c) <u>Exceptions</u>. Subsection (b) shall not apply to a transaction:

  (1) that has been approved by a majority vote of the board of directors without counting the vote of directors who:

   (i) are directors or officers of, or have a material equity interest in, the interested shareholder; or

   (ii) were nominated for election as a director by the interested shareholder, and first elected as a director, within 24 months of the date of the vote on the proposed transaction; or

  (2) in which the consideration to be received by the shareholders for shares of any class of which shares are owned by the interested shareholder is not less than the highest amount paid by the interested shareholder in acquiring shares of the same class.

 (d) <u>Additional Approvals</u>. The approvals required by subsection (b) shall be in addition to, and not in lieu of, any other approval required by the Business Corporation Law, the articles or these bylaws, or otherwise.

 Section 3.06. ORGANIZATION. At every meeting of the shareholders, the chairman of the board, if there be one, or, in the case of vacancy in office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by vote of the shareholders present, shall act as chairman of the meeting. The secretary or, in the absence of the secretary, an assistant secretary, or in the absence of both the secretary and assistant secretaries, a person appointed by the chairman of the meeting, shall act as secretary.

 Section 3.07. VOTING RIGHTS OF SHAREHOLDERS. Unless otherwise provided in the articles, every shareholder of the corporation shall be entitled to one vote for every share standing in the name of the shareholder on the books of the corporation.

Section 3.08.   VOTING AND OTHER ACTION BY PROXY.

(a)   <u>General Rule</u>.

(1)   Every shareholder entitled to vote at a meeting of shareholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person to act for the shareholder by proxy.

(2)   The presence of, or vote or other action at a meeting of shareholders, or the expression of consent or dissent to corporate action in writing, by a proxy of a shareholder shall constitute the presence of, or vote or action by, or written consent or dissent of the shareholder.

(3)   Where two or more proxies of a shareholder are present, the corporation shall, unless otherwise expressly provided in the proxy, accept as the vote of all shares represented thereby the vote cast by a majority of them and, if a majority of the proxies cannot agree whether the shares represented shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among those persons.

(b)   <u>Execution and Filing</u>.   Every proxy shall be executed in writing by the shareholder or by the duly authorized attorney-in-fact of the shareholder and filed with the secretary of the corporation.   A telegram, telex, cablegram, datagram or similar transmission from a shareholder or attorney-in-fact, or a photographic, facsimile or similar reproduction of a writing executed by a shareholder or attorney-in-fact:

(1)   may be treated as properly executed for purposes of this section; and

(2)   shall be so treated if it sets forth a confidential and unique identification number or other mark furnished by the corporation to the shareholder for the purposes of a particular meeting or transaction.

(c)   <u>Revocation</u>.   A proxy, unless coupled with an interest, shall be revocable at will, notwithstanding any other agreement or any provision in the proxy to the contrary, but the revocation of a proxy shall not be effective until written notice thereof has been given to the secretary of the corporation.   An unrevoked proxy shall not be valid after three years from the date of its execution unless a longer time is expressly provided therein.   A proxy shall not be revoked by the death or incapacity of the maker unless, before the vote is counted or the authority is exercised, written notice of the death or incapacity is given to the secretary of the corporation.

(d)   <u>Expenses</u>.   Unless otherwise restricted in the articles, the corporation shall pay the reasonable expenses of solicitation of votes, proxies or consents of shareholders

7

by or on behalf of the board of directors or its nominees for election to the board, including solicitation by professional proxy solicitors and otherwise.

Section 3.09.  VOTING BY FIDUCIARIES AND PLEDGEES.   Shares of the corporation standing in the name of a trustee or other fiduciary and shares held by an assignee for the benefit of creditors or by a receiver may be voted by the trustee, fiduciary, assignee or receiver.  A shareholder whose shares are pledged shall be entitled to vote the shares until the shares have been transferred into the name of the pledgee, or a nominee of the pledgee, but nothing in this section shall affect the validity of a proxy given to a pledgee or nominee.

Section 3.10.  VOTING BY JOINT HOLDERS OF SHARES.

(a)     General Rule.  Where shares of the corporation are held jointly or as tenants in common by two or more persons, as fiduciaries or otherwise:

(1)     if only one or more of such persons is present in person or by proxy, all of the shares standing in the names of such persons shall be deemed to be represented for the purpose of determining a quorum and the corporation shall accept as the vote of all the shares the vote cast by a joint owner or a majority of them; and

(2)     if the persons are equally divided upon whether the shares held by them shall be voted or upon the manner of voting the shares, the voting of the shares shall be divided equally among the persons without prejudice to the rights of the joint owners or the beneficial owners thereof among themselves.

(b)     Exception.  If there has been filed with the secretary of the corporation a copy, certified by an attorney at law to be correct, of the relevant portions of the agreement under which the shares are held or the instrument by which the trust or estate was created or the order of court appointing them or of an order of court directing the voting of the shares, the persons specified as having such voting power in the document latest in date of operative effect so filed, and only those persons, shall be entitled to vote the shares but only in accordance therewith.

Section 3.11.  VOTING BY CORPORATIONS.

(a)     Voting by Corporate Shareholders.  Any corporation that is a shareholder of this corporation may vote by any of its officers or agents, or by proxy appointed by any officer or agent, unless some other person, by resolution of the board of directors of the other corporation or provision of its articles or bylaws, a copy of which resolution or provision certified to be correct by one of its officers has been filed with the secretary of this corporation, is appointed its general or special proxy in which case that person shall be entitled to vote the shares.

8

      (b)   <u>Controlled Shares</u>   Shares of this corporation owned, directly or indirectly, by it and controlled, directly or indirectly, by the board of directors of this corporation, as such, shall not be voted at any meeting and shall not be counted in determining the total number of outstanding shares for voting purposes at any given time

Section 3.12.  DETERMINATION OF SHAREHOLDERS OF RECORD.

      (a)   <u>Fixing Record Date</u>.  The board of directors may fix a time prior to the date of any meeting of shareholders as a record date for the determination of the shareholders entitled to notice of, or to vote at, the meeting, which time, except in the case of an adjourned meeting, shall be not more than 90 days prior to the date of the meeting of shareholders.  Only shareholders of record on the date fixed shall be so entitled notwithstanding any transfer of shares on' the books of the corporation after any record date fixed as provided in this subsection  The board of directors may similarly fix a record date for the determination of shareholders of record for any other purpose.  When a determination of shareholders of record has been made as provided in this section for purposes of a meeting, the determination shall apply to any adjournment thereof unless the board fixes a new record date for the adjourned meeting

      (b)   <u>Determination When a Record Date is Not Fixed</u>.  If a record date is not fixed:

      (1)   The record date for determining shareholders entitled to notice of or to vote at a meeting of shareholders shall be at the close of business on the date next preceding the day on which notice is given or, if notice is waived, at the close of business on the day immediately preceding the day on which the meeting is held.

      (2)   The record date for determining shareholders entitled to express consent or dissent to corporate action in writing without a meeting, when prior action by the board of directors is not necessary, to call a special meeting of the shareholders or propose an amendment of the articles, shall be the close of business on the day on which the first written consent or dissent, request for a special meeting or petition proposing an amendment of the articles is filed with the secretary of the corporation.

      (3)   The record date for determining shareholders for any other purpose shall be at the close of business on the day on which the board of directors adopts the resolution relating thereto

Section 3.13.  VOTING LISTS.

      (a)   <u>General Rule</u>.  The officer or agent having charge of the transfer books for shares of the corporation shall make a complete list of the shareholders entitled to vote at any meeting of shareholders, arranged in alphabetical order, with the address of and the number

of shares held by each. The list shall be produced and kept open at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole time of the meeting for the purposes thereof.

(b)    Effect of List. Failure to comply with the requirements of this section shall not effect the validity of any action taken at a meeting prior to a demand at the meeting by any shareholder entitled to vote thereat to examine the list. The original share register or transfer book, or a duplicate thereof kept in this Commonwealth, shall be prima facie evidence as to who are the shareholders entitled to examine the list or share register or transfer book or to vote at any meeting of shareholders.

Section 3.14.   JUDGES OF ELECTION.

(a)    Appointment   In advance of any meeting of shareholders of the corporation, the board of directors may appoint judges of election, who need not be shareholders, to act at the meeting or any adjournment thereof. If judges of election are not so appointed, the presiding officer of the meeting may, and on the request of any shareholder shall, appoint judges of election at the meeting. The number of judges shall be one or three. A person who is a candidate for office to be filled at the meeting shall not act as a judge.

(b)    Vacancies   In case any person appointed as a judge fails to appear or fails or refuses to act, the vacancy may be filled by appointment made by the board of directors in advance of the convening of the meeting or at the meeting by the presiding officer thereof.

(c)    Duties.   The judges of election shall determine the number of shares outstanding and the voting power of each, the shares represented at the meeting, the existence of a quorum, the authenticity, validity and effect of proxies, receive votes or ballots, hear and determine all challenges and questions in any way arising in connection with the right to vote, count and tabulate all votes, determine the result and do such acts as may be proper to conduct the election or vote with fairness to all shareholders. The judges of election shall perform their duties impartially, in good faith, to the best of their ability and as expeditiously as is practical. If there are three judges of election, the decision, act or certificate of a majority shall be effective in all respects as the decision, act or certificate of all.

(d)    Report.   On request of the presiding officer of the meeting, or of any shareholder, the judge shall make a report in writing of any challenge or question or matter determined by them, and execute a certificate of any fact found by them. Any report or certificate made by them shall be prima facie evidence of the facts stated therein.

Section 3.15.   CONSENT OF SHAREHOLDERS IN LIEU OF MEETING.

(a)    Unanimous Written Consent.   Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the

shareholders who would be entitled to vote at a meeting for such purpose shall be filed with the secretary of the corporation.

(b)     Partial Written Consent   Any action required or permitted to be taken at a meeting of the shareholders or of a class of shareholders may be taken without a meeting upon the written consent of shareholders who would have been entitled to cast the minimum number of votes that would be necessary to authorize the action at a meeting at which all shareholders entitled to vote thereon were present and voting.  The consents shall be filed with the secretary of the corporation.  The action shall not become effective until after at least ten days' written notice of the action has been given to each shareholder entitled to vote thereon who has not consented thereto.

Section 3.16   MINORS AS SECURITY HOLDERS.  The corporation may treat a minor who holds shares or obligations of the corporation as having capacity to receive and to empower others to receive dividends, interest, principal and other payments or distributions, to vote or express consent or dissent and to make elections and exercise rights relating to such shares or obligations unless, in the case of payments or distributions on shares, the corporate officer responsible for maintaining the list of shareholders or the transfer agent of the corporation or, in the case of payments or distributions on obligations, the treasurer or paying officer or agent has received written notice that the holder is a minor.

## ARTICLE IV

## BOARD OF DIRECTORS

Section 4.01   POWERS; PERSONAL LIABILITY.

(a)     General Rule   Unless otherwise provided by statute all powers vested by law in the corporation shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, the board of directors.

(b)     Standard of Care; Justifiable Reliance   A director shall stand in a fiduciary relation to the corporation and shall is perform his or her duties as a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner the director reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances  In performing his or her duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:

(1)     One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.

11

(2)    Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.

(3)    A committee of the board upon which the director does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.

A director shall not be considered to be acting in good faith if the director has knowledge concerning the matter in question that would cause his or her reliance to be unwarranted.

(c)    Consideration of Factors.  In discharging the duties of their respective positions, the board of directors, committees of the board and individual directors may, in considering the best interests of the corporation, consider the effects of any action upon employees, upon suppliers and customers of the corporation and upon communities in which offices or other establishments of the corporation are located, and all other pertinent factors. The consideration of those factors shall not constitute a violation of subsection (b).

(d)    Presumption.  Absent breach of fiduciary duty, lack of good faith or self-dealing, actions taken as a director or any failure to take any action shall be presumed to be in the best interests of the corporation.

(e)    Personal Liability of Directors.

(1)    A director shall not be personally liable, as such, for monetary damages for any action taken, or any failure to take any action, unless:

(i)    the director has breached or failed to perform the duties of his or her office under this section; and

(ii)    the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.

(2)    The provisions of paragraph (1) shall not apply to the responsibility or liability of a director pursuant to any criminal statute, or the liability of a director for the payment of taxes pursuant to local, State or Federal law.

(f)    Notation of Dissent.  A director who is present at a meeting of the board of directors, or of a committee of the board, at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his or her dissent is entered in the minutes of the meeting or unless the director files a written dissent to the action with the secretary of the meeting before the adjournment thereof or transmits the dissent in writing to the secretary of the corporation immediately after the adjournment of the meeting. The right to dissent shall not apply to a director who voted in favor of the action. Nothing in this section

12

shall bar a director from asserting that minutes of the meeting incorrectly omitted his or her dissent if, promptly upon receipt of a copy of such minutes, the director notifies the secretary in writing, of the asserted omission or inaccuracy.

Section 4.02   QUALIFICATION AND SELECTION OF DIRECTORS.

(a)   Qualifications  Each director of the corporation shall be a natural person of full age who need not be a resident of Pennsylvania or a shareholder of the corporation.

(b)   Election of Directors.  Except as otherwise provided in these bylaws, directors of the corporation shall be elected by the shareholders.  In elections for directors, voting need not be by ballot, except upon demand made by a shareholder entitled to vote at the election and before the voting begins.  The candidates receiving the highest number of votes from each class or group of classes, if any, entitled to elect directors separately up to the number of directors to be elected by the class or group of classes shall be elected.  If at any meeting of shareholders, directors of more than one class are to be elected, each class of directors shall be elected in a separate election.

(c)   Cumulative Voting.  Unless the articles provide for straight voting, in each election of directors every shareholder entitled to vote shall have the right to multiply the number of votes to which the shareholder may be entitled by the total number of directors to be elected in the same election by the holders of the class or classes of shares of which his or her shares are a part and the shareholders may cast the whole number of his or her votes for one candidate or may distribute them among two or more candidates.

Section 4.03.   NUMBER AND TERM OF OFFICE.

(a)   Number.  The board of directors shall consist of three directors – one Class A director, one Class B director and one Class C director.  Only shareholders owning Class A stock of the corporation shall be entitled to cast votes to elect the Class A director.  Only shareholders owning Class B stock of the corporation shall be entitled to cast votes to elect the Class B director.  Only shareholders owning Class C stock of the corporation shall be entitled to cast votes to elect the Class C director.  The term of appointment of each of the Class A Director, the Class B Director and the Class C Director shall be one year.

(b)   Independent Advisor.  The shareholders shall cast votes to select an independent advisor once annually at the same time the shareholders cast votes to elect the directors.  The independent advisor shall not be a director and shall not be given notice of nor attend any regular or special meetings of the board of directors unless and until the board is unable to reach a resolution by the required number of director votes on a particular matter or issue during a regular or special meeting.  Should the board become deadlocked in this manner, any director may call a special meeting of the board for the sole purpose of resolving any such deadlock and, at least ten days prior to such meeting, give notice to the independent advisor that the meeting will take place and that the independent advisor should attend.  At the meeting the

13

independent advisor will be permitted to cast one vote as if he or she were a director for the sole purpose of breaking the deadlock.

(c)     Term of Office.  Each director or independent advisor shall hold office until the expiration of the term for which he or she was elected and until a successor has been selected and qualified or until his or her earlier death, resignation or removal  A decrease in the number of directors shall not have the effect of shortening the term of any incumbent director

(d)     Resignation  Any director or independent advisor may resign at any time upon written notice to the corporation.  The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as shall be specified in the notice of resignation.

Section 4.04.   VACANCIES.

(a)     General Rule.  Vacancies in the board of directors, including vacancies resulting from an increase in the number of directors, and vacancies of the independent advisor position, shall be filled by a majority vote of the shareholders who are ~~be~~ entitled to select a director to fill the directorship, or independent advisorship, as applicable  In the event of a vacancy, the corporation shall immediately give notice to the shareholders of such vacancy so that a shareholder meeting may be called for the purpose of casting votes for a replacement director or independent advisor  Each director or independent advisor so elected shall serve for the balance of the unexpired term, and until a successor has been selected and qualified, or until his or her earlier death, resignation or removal.

(b)     Action by Directors in the Event of an Unfilled Vacancy  If there is an unfilled vacancy in the board, the remaining director may act only with the unanimous approval of the shareholders, or in the event of a tie, with the approval of half of the shareholders and the independent director.

Section 4.05.   REMOVAL OF DIRECTORS.

(a)     Removal by the Shareholders  The entire board of directors, or any class of the board, or any individual director may be removed from office without assigning any cause by the vote of shareholders, or of the holders of a class or series of shares, entitled to elect directors, or the class of directors  In case the board or a class of the board or any one or more directors are so removed, new directors may be elected at the same meeting  The board of directors may be removed at any time with or without cause by the unanimous vote or consent of shareholders entitled to vote thereon.

(b)     Removal by the Board  The board of directors may declare vacant the office of a director who has been judicially declared of unsound mind or who has been convicted of an offense punishable by imprisonment for a term of more than one year or if, within 60 days after notice of his or her selection, the director does not accept the office either in writing or by attending a meeting of the board of directors.

14

(c)     Removal of Directors Elected by Cumulative Voting.  An individual director shall not be removed (unless the entire board or class of the board is removed) if sufficient votes are cast against the resolution for his removal which, if cumulatively voted at an annual or other regular election of directors, would be sufficient to elect one or more directors to the board or to the class.

Section 4.06.  PLACE OF MEETINGS.  Meetings of the board of directors may be held at such place within or without Pennsylvania as the board of directors may from time to time appoint or as may be designated in the notice of the meeting.

Section 4.07.  ORGANIZATION OF MEETINGS.  At every meeting of the board of directors, the chairman of the board, if there be one, or, in the case of a vacancy in the office or absence of the chairman of the board, one of the following officers present in the order stated: the vice chairman of the board, if there be one, the president, the vice presidents in their order of rank and seniority, or a person chosen by a majority of the directors present, shall act as chairman of the meeting.  The secretary or, in the absence of the secretary, an assistant secretary, or, in the absence of the secretary and the assistant secretaries, any person appointed by the chairman of the meeting, shall act as secretary.

Section 4.08.  REGULAR MEETINGS.  Regular meetings of the board of directors shall be held at such time and place as shall be designated from time to time by resolution of the board of directors.

Section 4.09.  SPECIAL MEETINGS.  Special meetings of the board of directors shall be held whenever called by the chairman or by two or more of the directors.

Section 4.10.  QUORUM OF AND ACTION BY DIRECTORS.

(a)     General Rule.  A majority of the directors in office of the corporation shall be necessary to constitute a quorum for the transaction of business and the acts of a majority of the directors present and voting at a meeting at which a quorum is present shall be the acts of the board of directors.  In the case of a vacancy in the board of directors, the remaining director and the independent advisor shall constitute a quorum.

(b)     Action by Written Consent.  Any action required or permitted to be taken at a meeting of the directors may be taken without a meeting if, prior or subsequent to the action, a consent or consents thereto by all of the directors in office is filed with the secretary of the corporation.

Section 4.11.  EXECUTIVE AND OTHER COMMITTEES.

(a)     Establishment and Powers.  The board of directors may, by resolution adopted by a majority of the directors in office, establish one or more committees to consist of one or more directors of the corporation.  Any committee, to the extent provided in the resolution of the board of directors, shall have and may exercise all of the powers and authority

15

of the board of directors except that a committee shall not have any power or authority as to the following:

(1)     The submission to shareholders of any action requiring approval of shareholders under the Business is Corporation Law.

(2)     The creation or filling of vacancies in the board of directors.

(3)     The adoption, amendment or repeal of these bylaws.

(4)     The amendment or repeal of any resolution of the board that by its terms is amendable or repealable only by the board.

(5)     Action on matters committed by a resolution of the board of directors to another committee of the board.

(b)     <u>Alternate Committee Members</u>.  The board may designate one or more directors as alternate members of any committee who may replace any absent or disqualified member at any meeting of the committee or for the purposes of any written action by the committee.  In the absence or disqualification of a member and alternate member or members of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another director to act at the meeting in the place of the absent or disqualified member.

(c)     <u>Term</u>.  Each committee of the board shall serve at the pleasure of the board.

(d)     <u>Committee Procedures</u>.  The term "board of directors" or' "board," when used in any provision of these bylaws relating to the organization or procedures of or the manner of taking action by the board of directors, shall be construed to include and refer to any executive or other committee of the board.

Section 4.12.  COMPENSATION  The board of directors shall have the authority to fix compensation of directors for their services as directors and a director may be a salaried officer of the corporation.

## ARTICLE V

## OFFICERS

Section 5.01.  OFFICERS GENERALLY.

(a)     <u>Number, Qualification and Designation</u>.  The officers of the corporation shall be a president, a secretary, a treasurer, and such other officers as may be elected in accordance with the provisions of Section 5.03.  Officers may but need not be directors or

shareholders of the corporation. The president and secretary shall be natural persons of full age The treasurer may be a corporation, but if a natural person shall be of full age. The board of directors may elect from among the members of the board a chairman of the board and a vice chairman of the board who shall be officers of the corporation Any number of offices may be held by the same person.

        (b)    <u>Resignations</u>. Any officer may resign at any time upon written notice to the corporation. The resignation shall be effective upon receipt thereof by the corporation or at such subsequent time as may be specified in the notice of resignation.

        (c)    <u>Bonding</u>. The corporation may secure the fidelity of any or all of its officers by bond or otherwise

        (d)    <u>Standard of Care</u>. Except as otherwise provided in the articles, an officer shall perform his or her duties as an officer in good faith, in a manner he or she reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. A person who so performs his or her duties shall not be liable by reason of having been an officer of the corporation.

    Section 5.02   ELECTION AND TERM OF OFFICE. The officers of the corporation, except those elected by delegated authority pursuant to Section 5 03, shall be elected annually by the board of directors, and each such officer shall hold office for a term of one year and until a successor has been selected and qualified or until his or her earlier death, resignation or removal.

    Section 5 03.   SUBORDINATE OFFICERS, COMMITTEES AND AGENTS.   The board of directors may from time to time elect such other officers and appoint such committees, employees or other agents as the business of the corporation may require, including one or more assistant secretaries, and one or more assistant treasurers, each of whom shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the board of directors may from time to time determine. The board of directors may delegate to any officer or committee the power to elect subordinate officers and to retain or appoint employees or other agents, or committees thereof and to prescribe the authority and duties of such subordinate officers, committees, employees or other agents.

    Section 5.04   REMOVAL OF OFFICERS AND AGENTS   Any officer or agent of the corporation may be removed by the board of directors with or without cause. The removal shall be without prejudice to the contract rights, if any, of any person so removed. Election or appointment of an officer or agent shall not of itself create contract rights.

    Section 5.05.   VACANCIES.   A vacancy in any office because of death, resignation, removal, disqualification, or any other cause, shall be filled by the board of directors or by the officer or committee to which the power to fill such office has been delegated pursuant to

Section 5.03, as the case may be, and if the office is one for which these bylaws prescribe a term, shall be filled for the unexpired portion of the term.

Section 5.06.  AUTHORITY.  All officers of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by or pursuant to resolution or orders of the board of directors or in the absence of controlling provisions in the resolutions or orders of the board of directors, as may be determined by or pursuant to these bylaws.

Section 5.07.  THE CHAIRMAN OF THE BOARD.  The chairman of the board if there be one, or in the absence of the chairman, the vice chairman of the board, shall preside at all meetings of the shareholders and of the board of directors and shall perform such other duties as may from time to time be requested by the board of directors.

Section 5.08.  THE PRESIDENT.  The president shall be the chief executive officer of the corporation and shall have general supervision over the business and operations of the corporation, subject however, to the control of the board of directors.  The president shall sign, execute, and acknowledge, in the name of the corporation, deeds, mortgages, contracts or other instruments authorized by the board of directors, except in cases where the signing and execution thereof shall be expressly delegated by the board of directors, or by these bylaws, to some other officer or agent of the corporation; and, in general, shall perform all duties incident to the office of president and such other duties as from time to time may be assigned by the board of directors.

Section 5.09.  THE SECRETARY.  The secretary or an assistant secretary shall attend all meetings of the shareholders and of the board of directors and shall record all votes of the shareholders and of the directors and the minutes of the meetings of the shareholders and of the board of directors and of committees of the board in a book or books to be kept for that purpose; shall see that notices are given and records and reports properly kept and filed by the corporation as required by law; shall be the custodian of the seal of the corporation and see that it is affixed to all documents to be executed on behalf of the corporation under its seal; and, in general, shall perform all duties incident to the office of secretary, and such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.10.  THE TREASURER.  The treasurer or an assistant treasurer shall have or provide for the custody of the funds or other property of the corporation; shall collect and receive or provide for the collection and receipt of moneys earned by or in any manner due to or received by the corporation; shall deposit all funds in his or her custody as treasurer in such banks or other places of deposit as the board of directors may from time to time designate; shall, whenever so required by the board of directors, render an account showing all transactions as treasurer and the financial condition of the corporation; and, in general, shall discharge such other duties as may from time to time be assigned by the board of directors or the president.

Section 5.11.  SALARIES.  The salaries of the officers elected by the board of directors shall be fixed from time to time by the board of directors or by such officer as may be designated by resolution of the board.  The salaries or other compensation of any other officers, employees and other agents shall be fixed from time to time by the officer or committee to which the power to elect such officers or to retain or appoint such employees or other agents has been delegated pursuant to Section 5.03.  No officer shall be prevented from receiving such salary or other compensation by reason of the fact that the officer is also a director of the corporation.

Section 5.12.  DISALLOWED COMPENSATION.  Any payments made to an officer or employee of the corporation such as a salary, commission, bonus, interest, rent, travel or entertainment expense incurred by him, which shall be disallowed in whole or in part as a deductible expense by the Internal Revenue Service, shall be reimbursed by such officer or employee to the corporation to the full extent of such disallowance.  It shall be the duty of the directors, as a Board, to enforce payment of each such amount disallowed.  In lieu of payment by the officer or employee, subject to the determination of the directors, proportionate amounts may be withheld from future compensation payments until the amount owed to the corporation has been recovered.

## ARTICLE VI

## CERTIFICATES OF STOCK, TRANSFER, ETC.

Section 6.01.  SHARE CERTIFICATES.  If the articles state that the corporation shall issue uncertificated shares, the corporation shall give shareholders all information concerning their shares as is required by law.  If the corporation issues certificates, such certificates for shares of the corporation shall be in such form as approved by the board of directors, and shall state that the corporation is incorporated under the laws of Pennsylvania, the name of the person to whom issued, and the number and class of shares and the designation of the series (if any) that the certificate represents.  The share register or transfer books and blank share certificates shall be kept by the secretary or by any transfer agent or registrar designated by the board of directors for that purpose.

Section 6.02.  ISSUANCE.  The share certificates of the corporation shall be numbered and registered in the share register or transfer books of the corporation as they are issued.  They shall be signed by the president or a vice president and by the secretary or an assistant secretary or the treasurer or an assistant treasurer, and shall bear the corporate seal, which may be a facsimile, engraved or printed; but where such certificate is signed by a transfer agent or a registrar the signature of any corporate officer upon such certificate may be a facsimile, engraved or printed.  In case any officer who has signed, or whose facsimile signature has been placed upon, any share certificate shall have ceased to be such officer because of death, resignation or otherwise, before the certificate is issued, it may be issued with the same effect as if the officer had not ceased to be such at the date of its issue.  The provisions of this Section 6.02 shall be subject to any inconsistent or contrary agreement at the time between the corporation and any transfer agent or registrar.

19

Section 6.03.  TRANSFER.  Transfers of shares shall be made on the share register or transfer books of the corporation upon surrender of the certificate therefor, endorsed by the person named in the certificate or by an attorney lawfully constituted in writing.  No transfer shall be made inconsistent with the provisions of the Uniform Commercial Code, 13 Pa.C.S. § 8101 et seq., and its amendments and supplements.

Section 6.04.  RECORD HOLDER OF SHARES.  The corporation shall be entitled to treat the person in whose name any share or shares of the corporation stand on the books of the corporation as the absolute owner thereof, and shall not be bound to recognize any equitable or other claim to, or interest in, such share or shares on the part of any other person.

Section 6.05.  LOST, DESTROYED OR MUTILATED CERTIFICATES.  The holder of any shares of the corporation shall immediately notify the corporation of any loss, destruction or mutilation of the certificate therefor, and the board of directors may, in its discretion, cause a new certificate or certificates to be issued to such holder, in case of mutilation of the certificate, upon the surrender of the mutilated certificate or, in case of loss or destruction of the certificate, upon satisfactory proof of such loss or destruction and, if the board of directors shall so determine, the deposit of a bond in such form and in such sum, and with such surety or sureties, as it may direct.

### ARTICLE VII

### INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER AUTHORIZED REPRESENTATIVES

Section 7.01.  SCOPE OF INDEMNIFICATION.

(a)    General Rule.  The corporation shall indemnify an indemnified representative against any liability incurred in connection with any proceeding in which the indemnified representative may be involved as a party or otherwise by reason of the fact that such person is or was serving in an indemnified capacity, including, without limitation, liabilities resulting from any actual or alleged breach or neglect of duty, error, misstatement or misleading statement, negligence, gross negligence or act giving rise to strict or products liability, except:

(1)    where such indemnification is expressly prohibited by applicable law;

(2)    where the conduct of the indemnified representative has been finally determined pursuant to Section 7.06 or otherwise:

(i)    to constitute willful misconduct or recklessness within the meaning of 15 Pa. C.S. § 513(b) and 1746(b) and 42 Pa C.S § 8365(b)

or any superseding provision of law sufficient in the circumstances to bar indemnification against liabilities arising from the conduct; or

(ii)     to be based upon or attributable to the receipt by the indemnified representative from the corporation of a personal benefit to which the indemnified representative is not legally entitled; or

(3)     to the extent such indemnification has been finally determined in a final adjudication pursuant to Section 7.06 to be otherwise unlawful.

(b)     Partial Payment.   If an indemnified representative is entitled to indemnification in respect of a portion, but not all, of any liabilities to which such person may be subject, the corporation shall indemnify such indemnified representative to the maximum extent for such portion of the liabilities.

(c)     Presumption.   The termination of a proceeding by judgment, order, settlement or conviction or upon a plea of nolo contenders or its equivalent shall not of itself create a presumption that the indemnified representative is not entitled to indemnification.

(d)     Definitions.  For purposes of this Article:

(1)     "indemnified capacity" means any and all past, present and future service by an indemnified representative in one or more capacities as a director, officer, employee or agent of the corporation, or, at the request of the corporation, as a director, officer,' employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise;

(2)     "indemnified representative" means any and all directors and officers of the corporation and any other person designated as an indemnified representative by the board of directors of the corporation (which may, but need not, include any person serving at the request of the corporation, as a director, officer, employee, agent, fiduciary or trustee of another corporation, partnership, joint venture, trust, employee benefit plan or other entity or enterprise);

(3)     "liability" means any damage, judgment, amount paid in settlement, fine, penalty, punitive damages, excise tax assessed with respect to an employee benefit plan, or cost or expense, of any nature (including, without limitation, attorneys I fees and disbursements) and

(4)     "proceeding" means any threatened, pending or completed action, suit, appeal or other proceeding of any nature, whether civil, criminal, administrative or investigative, whether formal or informal, and whether brought by or in the right of the corporation, a class of its security holders or otherwise.

Section 7.02. PROCEEDINGS INITIATED BY INDEMNIFIED REPRESENTATIVES. Notwithstanding any other provision of this Article, the corporation shall not indemnify under this Article an indemnified representative for any liability incurred in a proceeding initiated (which shall not be deemed to include counterclaims or affirmative defenses) or participated in as an intervenor or amicus curiae by the person seeking indemnification unless such initiation of or participation in the proceeding is authorized, either before or after its commencement, by the affirmative vote of a majority of the directors in office. This section does not apply to a reimbursement of expenses incurred in successfully prosecuting or defending an arbitration under Section 7.06 or otherwise successfully prosecuting or defending the rights of an indemnified representative granted by or pursuant to this Article.

Section 7.03. ADVANCING EXPENSES. The corporation shall pay the expenses (including attorneys, fees and disbursements) incurred in good faith by an indemnified representative in advance of the final disposition of a proceeding described in Section 7.01 or the initiation of or participation in which is authorized pursuant to Section 7.02 upon receipt of an undertaking by or on behalf of the indemnified representative to repay the amount if it is ultimately determined pursuant to Section 7.06 that such person is not entitled to be indemnified by the corporation pursuant to this Article. The financial ability of an indemnified representative to repay an advance shall not be a prerequisite to the making of such advance.

Section 7.04. SECURING OF INDEMNIFICATION OBLIGATIONS. to further effect, satisfy or secure the indemnification obligations provided herein or otherwise, the corporation may maintain insurance, obtain a letter of credit, act as self-insurer, create a reserve, trust, escrow, cash collateral or other fund or account, enter into indemnification agreements, pledge or grant a security interest in any assets or properties of the corporation, or use any other mechanism or arrangement whatsoever in such amounts, at such costs, and upon such other terms and conditions as the board of directors shall deem appropriate. Absent fraud, the determination of the board of directors with respect to such amounts, costs, terms and conditions shall be conclusive against all security holders, officers and directors and shall not be subject to voidability.

Section 7.05. PAYMENT OF INDEMNIFICATION. An indemnified representative shall be entitled to indemnification within 30 days after a written request for indemnification has been delivered to the secretary of the corporation.

Section 7.06. ARBITRATION.

   (a)   General Rule   Any dispute related to the right to indemnification, contribution or advancement of expenses as provided under this Article, except with respect to indemnification for liabilities arising under the Securities Act of 1933 that the corporation has undertaken to submit to a court for adjudication, shall be decided only by arbitration in the metropolitan area in which the principal executive offices of the corporation are located at the time, in accordance with the commercial arbitration rules then in effect of the American Arbitration Association, before a panel of three arbitrators, one of whom shall be selected by

22

the corporation, the second of whom shall be selected by the indemnified representative and third of whom shall be selected by the other two arbitrators. In the absence of the American Arbitration Association, or if for any reason arbitration under the arbitration rules of the American Arbitration Association cannot be initiated, or if one of the parties fails or refuses to select an arbitrator or if the arbitrators selected by the corporation and the indemnified representative cannot agree on the selection of the third arbitrator within 30 days after such time as the corporation and the indemnified representative have each been notified of the selection of the other's arbitrator, the necessary arbitrator or arbitrators shall be selected by the presiding judge of the court of general jurisdiction in such metropolitan area.

(b)   Burden of Proof.   The party or parties challenging the right of an indemnified representative to the benefits of this Article shall have the burden of proof.

(c)   Expenses. The corporation shall reimburse an indemnified representative for the expenses (including attorneys' fees and disbursements) incurred in successfully prosecuting or defending such arbitration.

(d)   Effect.   Any award entered by the arbitrators shall be final, binding and nonappealable and judgment may be entered thereon by any party in accordance with applicable law in any court of competent jurisdiction, except that the corporation shall be entitled to interpose as a defense in any such judicial enforcement proceeding any prior final judicial determination adverse to the indemnified representative under Section 7.01(a)(2) in a proceeding not directly involving indemnification under this Article. This arbitration provision shall be specifically enforceable.

Section 7.07.   CONTRIBUTION.   If the indemnification provided for in this Article or otherwise is unavailable for any reason in respect of any liability or portion thereof, the corporation shall contribute to the liabilities to which the indemnified representative may be subject in such proportion as is appropriate to reflect the intent of this Article or otherwise.

Section 7.08.   MANDATORY INDEMNIFICATION OF DIRECTORS, OFFICERS, ETC.   To the extent that an authorized representative of the corporation has been successful on the merits or otherwise in defense of any action or proceeding referred to in 15 Pa. C.S. § 1741 or 1742 or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees and disbursements) actually and reasonably incurred by such person in connection therewith.

Section 7.09.   CONTRACT RIGHTS; AMENDMENT OR REPEAL.   All rights under this Article shall be deemed a contract between the corporation and the indemnified representative pursuant to which the corporation and each indemnified representative intend to be legally bound. Any repeal, amendment or modification hereof shall be prospective only and shall not affect any rights or obligations then existing.

Section 7.10.   SCOPE OF ARTICLE.   The rights granted by this Article shall not be deemed exclusive of any other rights to which those seeking indemnification, contribution or

advancement of expenses may be entitled under any statute, agreement, vote of shareholders or disinterested directors or otherwise both as to action in an indemnified capacity and as to action in any other capacity. The indemnification, contribution and advancement of expenses provided by or granted pursuant to this Article shall continue as to a person who has ceased to be an indemnified representative in respect of matters arising prior to such time, and shall inure to the benefit of the heirs, executors, administrators and personal representatives of such a person.

Section 7.11. RELIANCE OF PROVISIONS. Each person who shall act as an indemnified representative of the corporation shall be deemed to be doing so in reliance upon the rights provided in this Article.

Section 7.12 INTERPRETATION. The provisions of this Article are intended to constitute bylaws authorized by 15 Pa. C.S. § 513 and 1746 and 42 Pa. C.S. § 8365.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01. CORPORATE SEAL. The corporation seal shall have inscribed thereon the name of the corporation, the year of its organization and the words "Corporate Seal, Pennsylvania".

Section 8.02. CHECKS. All checks, notes, bills of exchange or other orders in writing shall be signed by such person or persons as the board of directors or any person authorized by resolution of the board of directors may from time to time designate.

Section 8.03 CONTRACTS.

(a) General Rule. Except as otherwise provided in the Business Corporation Law in the case of transactions that require action by the shareholders, the board of directors may authorize any officer or agent to enter into any contract or to execute or deliver any instrument on behalf of the corporation, and such authority may be general or confined to specific instances.

(b) Statutory Form of Execution of Instruments. Any note, mortgage, evidence of indebtedness, contract or other document, or any assignment or endorsement thereof, executed or entered into between the corporation and any other person, when signed by one or more officers or agents having actual or apparent authority to sign it, or by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of the corporation, shall be held to have been properly executed for and in behalf of the corporation, without prejudice to the rights of the corporation against any person who shall have executed the instrument in excess of his or her actual authority.

24

Section 8.04.   INTERESTED DIRECTORS OR OFFICERS; QUORUM.

(a)     General Rule.  A contract or transaction between the corporation and one or more of its directors or officers or between the corporation and another corporation, partnership, joint venture, trust or other enterprise in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because his, her or their votes are counted for that purpose, if:

(1)     the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors even though the disinterested directors are less than a quorum;

(2)     the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon and the contract or transaction is specifically approved in good faith by vote of those shareholders; or

(3)     the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the shareholders.

(b)     Quorum.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the board which authorizes a contract or transaction specified in subsection (a).

Section 8.05.   DEPOSITS   All funds of the corporation shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the board of directors may approve or designate, and all such funds shall be withdrawn only upon checks signed by such one or more officers or employees as the board of directors shall from time to time determine.

Section 8.06.   CORPORATE RECORDS

(a)     Required Records.  The corporation shall keep complete and accurate books and records of account, minutes of the proceedings of the incorporators, shareholders and directors and a share register giving the names and addresses of all shareholders and the number and class of shares held by each.  The share register shall be kept at either the registered office of the corporation in Pennsylvania or at its principal place of business wherever situated or at the office of its registrar or transfer agent.  Any books, minutes or other records may be in written form or any other form capable of being converted into written form within a reasonable time.

(b)   <u>Right of Inspection</u>.   Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom.   A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder.   In every instance where an attorney or other agent is the person who seeks the right of inspection, the demand, shall be accompanied by a verified power of attorney or other writing that authorizes the attorney or other agent to so act on behalf of the shareholder.   The demand shall be directed to the corporation at its registered office in Pennsylvania or at its principal place of business wherever situated.

Section 8.07.   FINANCIAL REPORTS.   Unless otherwise agreed between the corporation and a shareholder, the corporation shall furnish to its shareholders annual financial statements, including at least a balance sheet as of the end of each fiscal year and a statement of income and expenses for the fiscal year.   The financial statements shall be prepared on the basis of generally accepted accounting principles, if the corporation prepares financial statements for the fiscal year on that basis for any purpose, and may be consolidated statements of the corporation and one or more of its subsidiaries.   The financial statements shall be mailed by the corporation to each of its shareholders entitled thereto within 120 days after the close of each fiscal year and, after the mailing and upon written request, shall be mailed by the corporation to any shareholder or beneficial owner entitled thereto to whom a copy of the most recent annual financial statements has not previously been mailed   Statements that are audited or reviewed by a public accountant shall be accompanied by the report of the accountant; in other cases, each copy shall be accompanied by a statement of the person in charge of the financial records of the corporation:

(1)   Stating his reasonable belief as to whether or not the financial statements were prepared in accordance with generally accepted accounting principles and, if not, describing the basis of presentation.

(2)   Describing any material respects in which the financial statements were not prepared on a basis consistent with those prepared for the previous year.

Section 8.08.   AMENDMENT OF BYLAWS.   These bylaws may be amended or repealed, or new bylaws may be adopted only by vote of the shareholders at any duly organized annual or special meeting of shareholders.   See Section 2.03(b) (relating to notice of action by shareholders on bylaws).

## CERTIFICATION

I, _Brooke S. Cottman_ Secretary of Scarborough Mews, Inc., hereby certify that the attached is a true and correct copy of the written consent executed by the Shareholders of Scarborough Mews, Inc., on the _8th_ day of _September_, 2011.

_Brooke S. Cottman_
_____
Secretary

## UNANIMOUS WRITTEN CONSENT OF SHAREHOLDERS

## IN LIEU OF MEETING OF THE SHAREHOLDERS OF SCARBOROUGH MEWS, INC.

The undersigned Shareholders of Scarborough Mews, Inc. (the "Corporation"), pursuant to 15 Pa. C.S.A. § 1766(a), consent in writing to the following.

APPROVED, the Shareholders consent that the Bylaws of the Corporation previously in force shall be repealed.

APPROVED, the Shareholders consent that the Bylaws attached hereto as Exhibit "A" shall be adopted and shall become the Bylaws of the Corporation.

EFFECTIVE, as of this 8th day of September 2011 by unanimous consent of the Shareholders of the Corporation, as evidenced by their signatures below.


_____
Lajos Bodo, Shareholder


_____
Brooke P. Cottman, Shareholder


_____
Edward W. Coslett, Jr., Shareholder

Exhibit D

# AptRentz, LLC

**For property located at:** _____ Media Station Apartments, 340 Media Station Road, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____ ✔

**Partnership(s):** _____ Media Station Apartments, LP _____ ✓

**Agent(s):** _____ AptRentz, LLC _____

# Management
# Agreement

List of Provisions

Section 1 Appointment of Managing Agent
   1.1    Appointment and Acceptance
   1.2    Description of Premises
   1.3    Term
   1.4    Management Office
   1.5    Apartment for On-Site Staff

Section 2 Bank Accounts
   2.1    Operating (and/or) Reserve Account(s)
   2.1.1  Initial Deposit and Contingency Reserve
   2.2    Security Deposit Account
   2.3    Fidelity Bond

Section 3 Collection of Rents and Other Receipts
   3.1    Agent's Authority
   3.2    Special Charges
   3.3    Security Deposits

Section 4 Disbursements from Operating (and/or) Reserve Accounts
   4.1    Operating Expenses
   4.2    Debt Service

Section 5 Agent Not Required to Advance Funds
Section 6 Financial and Other Reports
   6.1    Partnership's Right to Audit
Section 7 Advertising
Section 8 Leasing and Renting
   8.1    Agent's Authority to Lease Premises
   8.2    No Other Rental Agent
   8.3    Rental Rates
   8.4    Enforcement of Leases

Section 9 Employees
   9.1    Agent's Authority to Hire
   9.2    Partnership Pays Employee Expenses
   9.3    Agent's Authority to file returns
   9.4    Workers' Compensation Insurance
   9.5    Hold Harmless, Labor Laws

Section 10 Maintenance and Repair
   10.1   Approval for Exceptional Maintenance Expense
Section 11 Contracts, Utilities and Services

Section 12 Relationship of Agent to Partnership
Section 13 Save Harmless
Section 14 Liability Insurance
Section 15 Agent Assumes No Liability
Section 16 Partnership Responsible for All Expenses of Litigation
   16.1   Fees for Legal Advice
Section 17 Agent's Compensation and Expenses
   17.1   For Management Services
   17.2   For Apartment Leasing
   17.3   For Commercial Leasing
   17.4   For Modernization (Rehab/Construction)
   17.5   For Fire Restoration
   17.6   For Other Items of Mutual Agreement
   17.7   Interest on Unpaid Sums
Section 18 Representations

Section 19 Structural Changes
Section 20 Building Compliance
Section 21 Termination
   21.1   Termination by Either Party
   21.2   Termination for Cause
         a) Breach of Agreement
         b) Failure to Act, etc.
         c) Excessive Damage
         d) Inadequate Insurance
   21.3   Termination Compensation
         Partnership Responsible for
   21.4   Payments
   21.5   Sale of Premises
Section 22 Indemnification Survives Termination
Section 23 Headings
Section 24 Force Majeur
Section 25 Complete Agreement

Section 26 Rights Cumulative; No Waiver
Section 27 Applicable Law and Partial Invalidity
Section 28 Notices
Section 29 Agreement Binding Upon Successors and Assigns

Power of Attorney

This Agreement is made this _____ 12th _____ day of _____ June _____ ✓, 2017 ,

by and between _____ Media Station Apartments, LP _____ ("Partnership") and

_____ AptRentz, LLC _____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____ Media _____ Station Apartments _____, located at _____ 340 Media Station Road, Media, PA 19063 _____ consisting of the land, buildings, and other improvements described as: two parcels of land totaling approximately 24 acres, parking for 390 vehicles, 3 - three and four-story apartment buildings containing a total of 204 apartment units, a detached rental office, in-ground pool, activity court, and leased parking garages.

### 1.3 Term

The term of this Agreement shall be for an initial period of ____ five (5) year(s)    ("initial    term")    from    the _____ 12th ____ Day of _____ June 2017 _____ ✓, and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office. Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants. The specific apartment(s) shall be the Partnership's choice.

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____ Media Station Management _____ Operating (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____ 166,000.00 _____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $_ 166,000.00 _ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits

and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

**3.2 Special Charges**

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

**3.3 Security Deposits**

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

**4.1 Operating Expenses**

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

**4.2 Debt Service**

Partnership shall give Agent advance written notice of at least ___10 business___ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including

interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____20th_____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month. In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable. Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws. The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s). All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises. Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases. Agent shall execute all leases as agent for the Partnership. All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s). No lease shall be in excess of _____1_____ years(s) without written approval by Partnership. The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises. Partnership agrees to promptly forward all inquiries about lease to Agent.

## 8.3 Rental Rates

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

## 8.4 Enforcement of Leases

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____without prior approval by Partnership. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership. Agent may select the attorney of its choice to handle such litigation.

# SECTION 9, EMPLOYEES

## 9.1 Agent's Authority to Hire

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

## 9.2 Partnership Pays Employee Expenses

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.

## 9.3 Agent's Authority to File Returns

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

### 9.4 Workers' Compensation Insurance

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

### 9.5 Hold Harmless, Labor Laws

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

## SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

### 10.1 Approval for Exceptional Maintenance Expenses

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $____15,000.00____, unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

## SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $____15,000.00____, unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within ____10 business____ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of ____60 business____days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.

### 16.1 Fees for Legal Advice

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.

## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i)_____$6,700.00_____ ✓ per month or (ii)_____3.00%_____of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month for the duration of this Agreement. Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due. The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income. Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
N/A

### 17.3 For Commercial Leasing
N/A

### 17.4 For Modernization (Rehab/Construction)

$2,000.00 per unit Fee

**17.5 For Fire Restoration**

N/A
_____

**17.6 For Other Items of Mutual Agreement**

Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts.
_____

**17.7 For Interest on Unpaid Sums**

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____ days after such sums have become due, shall bear interest at the rate of _____10.00_____% per annum.

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner
_____

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters. Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of _____60_____ days' written notice prior to the end of said initial term or following term year.

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a) Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured. However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Partnership set forth herein.

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

## 21.3 Termination Compensation

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred. Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills. In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination;

and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of ____PA____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Media Station Apartments, LP_____ ✓_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this _____12ᵗʰ_____ day of ___June___ , 20 _17_ .

Witness

_____

_____

_____

_____

Partnership

X _Barabu J. Catt_ PRES

Company

_Media Station Apartments, LP_

Address

_340 Media Station Rd._

City, State, Zip

_Media, PA 19063_

Agent

Firm _AptRentz, LLC_

Name _[signature]_ _Jennie Mopsik, as managing agent_

_____

Submitted by

'16

Exhibit E

# AptRentz, LLC

**For property located at:** _____ Tunbridge Apartments, 274 Glen Riddle Road, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____ ✔

**Partnership(s):** _____ Tunbridge Apartments, LP _____ ✓

**Agent(s):** _____ AptRentz, LLC _____

# Management Agreement

List of Provisions

**Section 1 Appointment of Managing Agent**
   1.1    Appointment and Acceptance
   1.2    Description of Premises
   1.3    Term
   1.4    Management Office
   1.5    Apartment for On-Site Staff

**Section 2 Bank Accounts**
   2.1    Operating (and/or) Reserve Account(s)
   2.1.1  Initial Deposit and Contingency Reserve
   2.2    Security Deposit Account
   2.3    Fidelity Bond

**Section 3 Collection of Rents and Other Receipts**
   3.1    Agent's Authority
   3.2    Special Charges
   3.3    Security Deposits

**Section 4 Disbursements from Operating (and/or) Reserve Accounts**
   4.1    Operating Expenses
   4.2    Debt Service

**Section 5 Agent Not Required to Advance Funds**
**Section 6 Financial and Other Reports**
   6.1    Partnership's Right to Audit
**Section 7 Advertising**
**Section 8 Leasing and Renting**
   8.1    Agent's Authority to Lease Premises
   8.2    No Other Rental Agent
   8.3    Rental Rates
   8.4    Enforcement of Leases

**Section 9 Employees**
   9.1    Agent's Authority to Hire
   9.2    Partnership Pays Employee Expenses
   9.3    Agent's Authority to file returns
   9.4    Workers' Compensation Insurance
   9.5    Hold Harmless, Labor Laws

**Section 10 Maintenance and Repair**
           Approval for Exceptional Maintenance
   10.1   Expense
**Section 11 Contracts, Utilities and Services**

**Section 12 Relationship of Agent to Partnership**
**Section 13 Save Harmless**
**Section 14 Liability Insurance**
**Section 15 Agent Assumes No Liability**
**Section 16 Partnership Responsible for All Expenses of Litigation**
   16.1   Fees for Legal Advice
**Section 17 Agent's Compensation and Expenses**
   17.1   For Management Services
   17.2   For Apartment Leasing
   17.3   For Commercial Leasing
           For Modernization
   17.4   (Rehab/Construction)
   17.5   For Fire Restoration
           For Other Items of Mutual
   17.6   Agreement
   17.7   Interest on Unpaid Sums
**Section 18 Representations**

**Section 19 Structural Changes**
**Section 20 Building Compliance**
**Section 21 Termination**
   21.1   Termination by Either Party
   21.2   Termination for Cause
           a) Breach of Agreement
           b) Failure to Act, etc.
           c) Excessive Damage
           d) Inadequate Insurance
   21.3   Termination Compensation
           Partnership Responsible for
   21.4   Payments
   21.5   Sale of Premises
**Section 22 Indemnification Survives Termination**
**Section 23 Headings**
**Section 24 Force Majeur**
**Section 25 Complete Agreement**

**Section 26 Rights Cumulative; No Waiver**
**Section 27 Applicable Law and Partial Invalidity**
**Section 28 Notices**
**Section 29 Agreement Binding Upon Successors and Assigns**

      Power of Attorney

*2*

This Agreement is made this _____ 12th ____ ✓ day of _____ June _____, 2017 ,

by and between _____ Tunbridge Apartments, LP _____ ("Partnership") and

_____ AptRentz, LLC _____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein. Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____ Tunbridge Apartments , located at_____ 274 Glen Riddle Road, Media, PA 19063 _____consisting of the land, buildings, and other improvements.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____ five (5) _____ year(s) ("initial term") from the _____ 12th _____ Day of _____ June 2017 _____ ✓, and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein. Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office. Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants. The specific apartment(s) shall be the Partnership's choice.

3

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____ **Tunbridge Management** _____ Operating (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____100,000.00_____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $___100,000.00___ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

### 3.2 Special Charges

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

### 3.3 Security Deposits

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 Operating Expenses

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 Debt Service

Partnership shall give Agent advance written notice of at least __10 business__ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____ 20th _____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month.  In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable.  Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws.  The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s).  All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises.  Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases.  Agent shall execute all leases as agent for the Partnership. All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s).  No lease shall be in excess of _____ 1 _____ years(s) without written approval by Partnership. The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises.  Partnership agrees to promptly forward all inquiries about lease to Agent.

### 8.3 Rental Rates

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

**8.4 Enforcement of Leases**

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises.  Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income.  Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies.  Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____without prior approval by Partnership.  Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership.  Agent may select the attorney of its choice to handle such litigation.

---

## SECTION 9, EMPLOYEES

**9.1 Agent's Authority to Hire**

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises.  All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

**9.2 Partnership Pays Employee Expenses**

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses.  Agent shall not be liable to such employees for their wages or compensation.

**9.3 Agent's Authority to File Returns**

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force.  In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like.  Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

**9.4 Workers' Compensation Insurance**

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

**9.5 Hold Harmless, Labor Laws**

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

---

## SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

**10.1 Approval for Exceptional Maintenance Expenses**

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $ 15,000.00 , unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

---

## SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $ 15,000.00 unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

---

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as



expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within ___10 business___ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of __60 business__ days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law. Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.

9

16.1 Fees for Legal Advice

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them. IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.

## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i) _____$3,650.00_____ per month or (ii)_____3.00%_____ of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month            for the duration of this Agreement. Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due. The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income. Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
_____N/A_____

### 17.3 For Commercial Leasing
_____N/A_____

### 17.4 For Modernization (Rehab/Construction)
_____$2,000.00 per unit Fee_____

### 17.5 For Fire Restoration
_____N/A_____

### 17.6 For Other Items of Mutual Agreement
_____Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts._____

### 17.7 For Interest on Unpaid Sums

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____ days after such sums have become due, shall bear interest at the rate of _____10.00_____ % per annum.

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters.  Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

**21.1 Termination by Either Party**

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of _____ 60 _____ days' written notice prior to the end of said initial term of following term year.

**21.2 Termination for Cause**

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a)Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured.  However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice.  Such termination shall not release the indemnities of Partnership set forth herein.

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

**21.3 Termination Compensation**

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial

term or term year in which the termination occurred. Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills. In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of ____PA____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Tunbridge Apartments, LP_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this _____12ᵗʰ_____ day of __June__ _____,20 _17_ .

**Witness**

_____

_____

_____

_____

**Partnership**

X _Brooke J. Cutt_

**Company**

_Tunbridge  Apartments, LP_

**Address**

_274 Glen Riddle   Road_

**City, State, Zip**

_Media,  PA  19063_

**Agent**

Firm __AptRentz, LLC__

Name _____ _Jennie Mopsik, as managing agent_

_____

**Submitted by**

Exhibit F

# AptRentz, LLC

**For property located at:** _____ Scarborough Mews, 501 North Orange Street, Media, PA 19063 _____

**Effective:** _____ June 12, 2017 _____                 ✔

**Partnership(s):** _____ Scarborough Mews , LP _____          ✔

**Agent(s):** _____ AptRentz, LLC _____

# Management Agreement

**List of Provisions**

**Section 1 Appointment of Managing Agent**
  1.1     Appointment and Acceptance
  1.2     Description of Premises
  1.3     Term
  1.4     Management Office
  1.5     Apartment for On-Site Staff

**Section 2 Bank Accounts**
  2.1     Operating (and/or) Reserve Account(s)
  2.1.1  Initial Deposit and Contingency Reserve
  2.2     Security Deposit Account
  2.3     Fidelity Bond

**Section 3 Collection of Rents and Other Receipts**
  3.1     Agent's Authority
  3.2     Special Charges
  3.3     Security Deposits

**Section 4 Disbursements from Operating (and/or) Reserve Accounts**
  4.1     Operating Expenses
  4.2     Debt Service

**Section 5 Agent Not Required to Advance Funds**
**Section 6 Financial and Other Reports**
  6.1     Partnership's Right to Audit
**Section 7 Advertising**
**Section 8 Leasing and Renting**
  8.1     Agent's Authority to Lease Premises
  8.2     No Other Rental Agent
  8.3     Rental Rates
  8.4     Enforcement of Leases

**Section 9 Employees**
  9.1     Agent's Authority to Hire
  9.2     Partnership Pays Employee Expenses
  9.3     Agent's Authority to file returns
  9.4     Workers' Compensation Insurance
  9.5     Hold Harmless, Labor Laws

**Section 10 Maintenance and Repair**
  10.1    Approval for Exceptional Maintenance Expense
**Section 11 Contracts, Utilities and Services**

**Section 12 Relationship of Agent to Partnership**
**Section 13 Save Harmless**
**Section 14 Liability Insurance**
**Section 15 Agent Assumes No Liability**
**Section 16 Partnership Responsible for All Expenses of Litigation**
  16.1    Fees for Legal Advice
**Section 17 Agent's Compensation and Expenses**
  17.1    For Management Services
  17.2    For Apartment Leasing
  17.3    For Commercial Leasing
            For Modernization
  17.4    (Rehab/Construction)
  17.5    For Fire Restoration
            For Other Items of Mutual
  17.6    Agreement
  17.7    Interest on Unpaid Sums
**Section 18 Representations**

**Section 19 Structural Changes**
**Section 20 Building Compliance**
**Section 21 Termination**
  21.1    Termination by Either Party
  21.2    Termination for Cause
            a) Breach of Agreement
            b) Failure to Act, etc.
            c) Excessive Damage
            d) Inadequate Insurance
  21.3    Termination Compensation
            Partnership Responsible for
  21.4    Payments
  21.5    Sale of Premises
**Section 22 Indemnification Survives Termination**
**Section 23 Headings**
**Section 24 Force Majeur**
**Section 25 Complete Agreement**
**Section 26 Rights Cumulative; No Waiver**
**Section 27 Applicable Law and Partial Invalidity**
**Section 28 Notices**
**Section 29 Agreement Binding Upon Successors and Assigns**

    Power of Attorney

This Agreement is made this _____12th_____ ✓ day of _____June_____, 2017 ,

by and between _____Scarborough Mews, LP_____ ("Partnership") and _____AptRentz, LLC_____ ("Agent").

## SECTION 1, APPOINTMENT AND ACCEPTANCE

### 1.1 Appointment and Acceptance

Partnership hereby appoints Agent as sole and exclusive Agent of Partnership to lease and manage the property described in paragraph 1.2 upon the terms and conditions provided herein.  Agent accepts the appointment and agrees to furnish the services of its organization for the leasing and management of the Premises; and Partnership agrees to pay all expenses in connection with such services.

### 1.2 Description of Premises

The property to be managed by Agent under this Agreement ("Premises") is known as _____Scarborough Mews_____, located at_____501 North Orange Street, Media, PA 19063_____consisting of the land, buildings, and other improvements.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____five (5)_____ year(s) ("initial term") from the _____12th____✓Day of_____June 2017_____, and thereafter shall be automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein.  Each of said one-year renewal periods is referred to as "term year".

### 1.4 Management Office

Partnership shall provide adequate space on the Premises for a management office.  Partnership shall pay all expenses related to such office, including, but not limited to, furnishings, equipment, postage and office supplies, electricity and other utilities, and telephone.

### 1.5 Apartment for On-Site Staff

Partnership shall provide a suitable apartment(s) on the Premises for the use of an on-site manager and/or a resident facilities manager and their families, rent-free, except that such resident staff shall pay for heat and utilities in the same manner as other tenants.  The specific apartment(s) shall be the Partnership's choice.

*3*

## SECTION 2, BANK ACCOUNTS

The various bank accounts established under this Agreement shall be established in the Partnership's name but under Agent's control. Agent's designees shall be the only parties authorized to draw upon such accounts. No amounts deposited in any accounts established under this Agreement shall in any event be commingled with any other funds of Agent.

### 2.1 Operating (and/or) Reserve Account(s)

Agent shall establish a separate account(s) known as the _____Scarborough Mews Management_____ Operating (and/or) Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Partnership subject to disbursement of expenses by Agent as described in this Agreement.

### 2.1.1 Initial Deposit and Contingency Reserve

Immediately upon commencement of this Agreement, Partnership shall remit to Agent the sum of $_____13,000.00_____ to be deposited in the Operating (and/or) Reserve Account(s) as initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $___13,000.00_____ as a contingency reserve. Partnership agrees to maintain the contingency reserve stated above at all times in the Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Partnership under this Agreement as they become due. Partnership and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

### 2.2 Security Deposits

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals. Such account shall be maintained in accordance with applicable state or local laws, if any.

### 2.3 Fidelity Bond

Agent shall cause all personnel who handle or are responsible for safekeeping of any monies of Partnership to be covered by fidelity bond with a company determined by Agent. Such a bond shall be secured at Partnership's expense. If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Partnership's expense. Partnership shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

## SECTION 3, COLLECTIONS OF RENTS AND OTHER RECIPTS

### 3.1 Agent's Authority

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Partnership's account in connection with the management and operation of the Premises. Such receipts (except tenants' security deposits

and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraph 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

**3.2 Special Charges**

If permitted by applicable law, Agent may collect from tenants any or all of the following: an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing. Agent need not account to Partnership for such charges and/or commission.

**3.3 Security Deposits**

Agent shall collect, deposit, and disburse tenant's security deposits in accordance with the terms of each tenant's lease. Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds. Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

**4.1 Operating Expenses**

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

**4.2 Debt Service**

Partnership shall give Agent advance written notice of at least ____10 business____ days if Partnership desires Agent to make an additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises. If Partnership notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Partnership shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

## SECTION 5, AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Partnership shall, immediately upon notice, remit to Agent sufficient funds to cover deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Partnership, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Partnership, such advance shall be considered a loan subject to repayment with interest, and Partnership hereby agrees to reimburse Agent, including

5

interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Partnership.

## SECTION 6, DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

By the _____20th_____ day of each month, Agent shall furnish Partnership with a statement of cash receipts and disbursements from the operation of the Premises during the previous month. In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Partnership such other reports as are agreed on by both parties.

### 6.1 Partnership's Right to Audit

Partnership shall have t right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Partnership.

## SECTION 7, ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem property and advisable. Agent is authorized to place signed on Premises advertising the Premises for rent, provided such signs comply with applicable laws. The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s). All advertising shall make clear that Agent is the manager and NOT the Partnership of the Premises.

## SECTION 8, LEASING AND RENTING

### 8.1 Agent's Authority to Lease Premises

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises. Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases. Agent shall execute all leases as agent for the Partnership. All coast of leasing shall be paid out of the Operating (and/or) Reserve Account(s). No lease shall be in excess of _____1_____years(s) without written approval by Partnership. The form of the lease shall be agreed upon by Partnership and Agent.

### 8.2 No Other Rental Agent

During the term of this Agreement, Partnership shall not authorize any other person, firm, or corporation to negotiate or act as leasing or rental agent with respect to any leases for space in the Premises. Partnership agrees to promptly forward all inquiries about lease to Agent.

**8.3 Rental Rates**

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

**8.4 Enforcement of Leases**

Agent is authorized to institute, in Partnership's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting of dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $_____N/A_____ without prior approval by Partnership. Attorney's fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Partnership. Agent may select the attorney of its choice to handle such litigation.

---

## SECTION 9, EMPLOYEES

**9.1 Agent's Authority to Hire**

Agent is authorized to hire, supervise, discharge, and pay all employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Partnership/Agent, and Agent shall not be liable to Partnership or others for any act or omission on the part of such employees.

**9.2 Partnership Pays Employee Expenses**

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and feral taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and worker's compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s) and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.

**9.3 Agent's Authority to File Returns**

Agent shall do and perform all actus required of an employer with respect to the Premises and shall execute and file al tax and other returns required under the applicable feral, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force. In connection with such filing, Partnership shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like. Partnership shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve Account(s).

7

## 9.4 Workers' Compensation Insurance

Agent shall, at Partnership's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

## 9.5 Hold Harmless, Labor Laws

Agent shall be responsible for compliance with all applicable state or federal labor laws. Partnership shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Partnership's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws. Partnership's obligation with respect to such violation(s) shall include payment of all settlements, judgements, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorney's fees.

## SECTION 10, MAINTENANCE AND REPAIR

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements. Agent is also authorized to decorate the Premises and to purchase or rent, on Partnership's behalf, all equipment necessary for the management, maintenance, or operation of the Premises. Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s). This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

## 10.1 Approval for Exceptional Maintenance Expenses

The expense to be incurred for any one items of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $    15,000.00    , unless such expense is specifically authorized by Partnership, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency. In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of an essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Partnership's expense without prior approval.

## SECTION 11, CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to excess $    15,000.00    unless approved by Partnership, and to enter into agreements in Partnership's name for all necessary repairs, maintenance, minor alterations, and utility services. Agent shall, in Partnership's name and at Partnership's expense, make contracts on Partnership's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises. All utility deposits shall be the Partnership's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Partnership's request.

## SECTION 12, RELATIONSHIP OF AGENT TO PARTNERSHIP

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Partnership, in Partnership's name, and for Partnership's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Partnership, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the Partnership or operation of the Premises. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Partnership. Neither party shall have the power to bind or obligate the other except as expressly set forth in the Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13, SAVE HARMLESS

Partnership shall indemnify, defend, and save Agent harmless from all loss, damage, cost expense (including attorney's fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14, LIABILITY INSURANCE

Partnership shall obtain and keep in force adequate insurance against physical damage (e.g. fire with extended coverage endorsement, boiler and machinery, etc...) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises. The amounts and types of insurance shall be acceptable to both Partnership and Agent, and any deductible required under such insurance policies shall be Partnership's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises. Liability insurance shall be adequate to protect the interest of both Partnership and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Partnership agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such polices within ___10 business___ days of eth execution of this Agreement. If Partnership fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s). Said policies shall provide that notice of default or cancellation shall be sent to Agent as well as Partnership and shall require a minimum of ___60 business___ days' written notice to Agent before any cancellation of or changes to said policies.

## SECTION 15, AGENT ASSUMES NO LIABILTIY

Agent assumes no liability whatsoever for any acts or missions of Partnership, or any previous Partnerships of the Premises, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Partnership or in the performance of any obligation owed by any tenant to Partnership pursuant to any lease or otherwise. Nor does Agent assume any liability for previously unknown violations of environmental or other regulation which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Partnership in writing, an Partnership shall promptly cure them.

## SECTION 16, PARTNERSHIP RESPONSIBLE FOR ALL EXPENSE OF LITIGATION

Partnership shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Partnership, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including but not limited to, any law prohibit or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided however, that Partnership shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law.  Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Partnership in any such proceeding or suit.

### 16.1 Fees for Legal Advice

Partnership shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them.  IF such expenditure also benefits others for whom Agent in this Agreement acts in similar capacity, Partnership agrees to pay an apportioned amount of such expense.

## SECTION 17, AGENT'S COMPENSATION AND EXPENSES

As compensation for the service provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Partnership shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i)_____$675.00_____ per month or (ii)_____3.00%_____of the total monthly gross receipts from the Premises, payable by the _____20th_____ day of each (1) calendar month for the duration of this Agreement.  Payments due Agent for period of less than a calendar month shall be prorated over the number of days for which compensation is due.  The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, amenity income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income.  Gross receipts shall not be deemed to include the special charges listed in paragraph 3.2, or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

### 17.2 For Apartment Leasing
_____N/A_____

### 17.3 For Commercial Leasing
_____N/A_____

### 17.4 For Modernization (Rehab/Construction)
_____$2,000.00 per unit Fee_____

**17.5 For Fire Restoration**

N/A

**17.6 For Other Items of Mutual Agreement**

Bonus equal to 10.00% of Annual Fee as result of 10.00% increase of gross receipts.

**17.7 For Interest on Unpaid Sums**

Any sums due Agent under any provision of this Agreement, and not paid within _____30_____ days after such sums have become due, shall bear interest at the rate of _____10.00_____ % per annum.

## SECTION 18, REPRESNTATIONS

Partnership represents and warrants: That Partnership has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Partnership's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statues, laws, ordinances, rules, regulations, orders or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19, STRUCTURAL CHANGES

Partnership expressly withholds from Agent any power or authority make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Partnership other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name:

Brooke P. Cottman, Partner

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Partnership appropriately.

## SECTION 20, BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or with any stature, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Partnership promptly of forward to Partnership promptly any compliances, warnings, notices, or summonses received by Agent relating to such matters. Partnership represents that to the best of Partnership's knowledge the Premises and all such equipment comply with all of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statutes, or regulations.

## SECTION 21, TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Partnership or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of ____60____ days' written notice prior to the end of said initial term of following term year.

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligation which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

a)Breach of Agreement – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured. However, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

b) Failure to Act, Etc.- In the event that any insurance required of Partnership is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Partnership, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent in its sole discretion considers that the action or position of Partnership or its represented with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Partnership of its election to do so, which termination shall be effective upon the service of such notice. Such termination shall not release the indemnities of Partnership set forth herein.

*12*

c) Excessive Damage – Upon the destruction of or substantial damage to the Premises by any cause, or taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

d) Inadequate Insurance – If Agent deems that the liability insurance obtained by Partnership per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Partnership and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of the notice to Partnership.

## 21.3 Termination Compensation

If (i) Partnership terminates this Agreement before the end of the initial term or any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Partnership under paragraph 21.2(a) above or pursuant to the provision of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Partnership shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice of termination is given to Agent or to Partnership multiplied by the number of month and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred. Such damages, plus any amounts accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement, to the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s) shall be paid by Partnership to Agent upon demand.

## 21.4 Partnership Responsibility for Payments

Upon termination of or withdrawal from this Agreement, Partnership shall assume the obligation of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Partnership and Reusability for payment of all unpaid bills. In addition, Partnership shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Partnership's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts. Agent shall deliver to Partnership, within ninety (90) days after the end of the month in which this Agreement is terminate, any balance of monies due Partnership or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of terminator or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

## 21.5 Sale of Premises

In the event that the Premises are sold by Partnership during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately. Upon transfer of Partnership, this Agreement shall terminate by mutual consent of Partnership and Agent.

---

## SECTION 22, INDEMNIFICATION SURVIVES TERMINATION

All representation and warranties of the parties contained herein shall survive the termination of this Agreement. All provisions of this Agreement that require Partnership to have insured or defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination;

and if Agent is or becomes involved in any proceeding or litigation by reason of having been Partnership's Agent, such provisions shall apply as if they Agreement were still in effect.

## SECTION 23, HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in construction or interpretation of any provision of this Agreement.

## SECTION 24, FORCE MAJEUR

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar cause not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25, COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Partnership and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Partnership and Agent relating to the Premises covered by this Agreement. No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Partnership and Agent. Except as otherwise provided herein, any and all amendments, additions, deflections to this Agreement shall be null and void unless approved by Partnership and Agent in writing. Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein.

## SECTION 26, RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the occurrence of an event of default under this Agreement. The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in the Agreement, shall not impair any such right or remedy or be constructed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults. Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

*14*

## SECTION 27, APPLICABLE LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all aspects be controlled and governed by the laws of the State of _____PA_____. If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Partnership.

## SECTION 28, NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Partnership and Agent individually may specify hereafter in writing:

Agent:_____AptRentz, LLC_____

Partnership: _____Scarborough Mews, LP_____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "give" or "delivered" upon personal delivery thereof or forty-eight (48) hours after having been deposited in the United States mails as provided herein.

## SECTION 29, NOTICES

This agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns.

**SIGNATURES**

IN WITNESS WHEROF, the parties hereto have affixed or caused to be affixed their respective signatures this ____12ᵗʰ_____ day of ___June_____ ,20 _17___ .

**Witness**

_____

_____

_____

_____

**Partnership**

X _Rachel S. Catt_____

**Company**

_Scarborough  Mews,  LP_____

**Address**

_501  North  Orange  Street____

**City, State, Zip**

_Media,  PA  19063_____

**Agent**

Firm _AptRentz, LLC_____

Name _____ Jennie Mopsik
                          as Managing agent

_____

**Submitted by**

Exhibit G

*noeducate.com*

# PROPERTY MANAGEMENT AGREEMENT

This property management agreement is intended for real estate owners to execute with those managing their property for rental purposes. Download this property management agreement for free and have it customized for your unique real estate legal needs today.

**REMINDER**: This form has been prepared for general informational use only. Because this sample contract does not represent the unique facts and circumstances of your situation, it is highly recommended that you seek legal advice from an appropriately licensed attorney.

# Property Management Agreement Sample

**For Property located at:** _____. **Beginning on the**
_____ **day of** _____ **and ending the end of** _____.

**Owner:**
_____ **Agent:**
_____ This
Agreement is made this _____ day of _____, _____, by and between
_____ (the "Owner")
and _____, (the "Agent").

## SECTION 1 APPOINTMENT OF MANAGING AGENT

### 1.1 Appointment and Acceptance

Owner hereby appoints Agent as sole and exclusive Agent of Owner to lease and manage the
property described in paragraph 1.2 upon the terms and conditions provided herein.  Agent accepts
the appointment and agrees to furnish the services of its organization for the leasing and management
of the Premises; and Owner agrees to pay all expenses in connection with those services.

### 1.2 Description of Premises

The Property to be managed by Agent under this Agreement is known as
_____, located at
_____, consisting of the land,
buildings, and other improvements located at
_____, in the **State**
**of** _____.

### 1.3 Term

The term of this Agreement shall be for an initial period of _____ year(s) (the "initial term") from
the _____ to _____ and
including the last day of _____, and thereafter shall be

automatically renewed from year to year unless terminated as provided in sections 21 or 27 herein.

Each of said one-year renewal periods is referred to as a "term year."

**1.4 Management Office**

*Add address if applicable.* *added language*

**1.5 Apartment For On-Site Staff**

*Add address if applicable.* *added language*

**SECTION 2 BANK ACCOUNTS** *added language*

**2.1 Operating (And/Or) Reserve Account(s)**

Agent shall establish a separate account(s) known as the

_____ (and/or)

Reserve Account(s), separate and apart from Agent's corporate accounts, for the deposit of receipts collected as described herein, in a bank or other institution whose deposits are insured by the federal government. Such depository shall be selected by the Agent. However, Agent shall not be held liable in the event of bankruptcy or failure of a depository. Funds in the Operating (and/or) Reserve Account(s) remain the property of Owner subject to disbursement of expenses by Agent as described in this Agreement.

**2.1.1 Initial Deposit and Contingency Reserve**

Immediately upon commencement of this Agreement, Owner shall remit to Agent the sum of $ _____ to be deposited in the Operating (and/or) Reserve Account(s) as an initial deposit representing the estimated disbursements to be made in the first month following the commencement of this Agreement, plus an additional sum of $ _____ as a contingency reserve. Owner agrees to maintain the contingency reserve stated above at all times in Operating (and/or) Reserve Account(s) to enable Agent to pay the obligations of Owner under this Agreement as they become due. Owner and Agent shall review the amount of the contingency reserve from time to time and shall agree in writing on a new contingency reserve amount when such is required.

**2.2 Security Deposit Account**

Agent shall, if required by law, maintain a separate interest-bearing account for tenant security deposits and advance rentals.  Such account shall be maintained in accordance with applicable state or local laws, if any.

**2.3 Fidelity Bond**

Agent shall cause all personnel who handle or are responsible for the safekeeping of any monies of Owner to be covered by a fidelity bond in the amount of $ _____ with a company *removed* determined by Agent.  Such bond shall be secured at Agent's expense.  If a fidelity bond cannot be obtained, an arrest and conviction bond shall be obtained at Agent's expense.  **Owner** shall save Agent harmless from any loss or damages caused by such personnel if no bond can be obtained.

**SECTION 3 COLLECTION OF RENTS AND OTHER RECEIPTS**

**.1 Agent's Authority**

Agent shall collect (and give receipts for, if necessary) all rents, charges and other amounts receivable on Owner's account in connection with the management and operation of the Premises.  Such receipts (except tenant's security deposits and advance rentals, which shall be handled as specified in paragraphs 2.2 and 3.3 hereof; and special charges, which shall be handled as specified in paragraphs 3.2 hereof) shall be deposited in the Operating (and/or) Reserve Account(s) maintained by Agent for the Premises.

**3.2 Special Charges**

If permitted by applicable law, Agent may collect from tenants any or all of the following:  an administrative charge for late payment of rent, a charge for returned or non-negotiable checks, a credit report fee, an administrative charge and/or broker's commission for subleasing.  Agent need not account to Owner for such charges and/or commission.

**3.3 Security Deposits**

Agent shall collect, deposit, and disburse tenants' security deposits in accordance with the terms of

each tenant's lease.  Agent shall pay tenants interest upon such security deposits only if required by law to do so; otherwise, any interest earned on tenant security deposits is to be retained by Agent as compensation for administering these funds.  Agent shall comply with all applicable state or local laws concerning the responsibility for security deposits and interest, if any.

## SECTION 4 DISBURSEMENTS FROM OPERATING (AND/OR) RESERVE ACCOUNT(S)

### 4.1 Operating Expenses

From the Operating (and/or) Reserve Account(s), Agent is hereby authorized to pay or reimburse itself for all expenses and costs of operating the Premises and for all other sums due Agent under this Agreement, including Agent's compensation under section 17.

### 4.2 Debt Service

Owner shall give Agent advance written notice of at least 30 days if Owner desires Agent to make any additional monthly or recurring payments (such as mortgage indebtedness, general taxes, or special assessments, or fire, steam boiler, or other insurance premiums) out of the proceeds from the Premises.  If Owner notifies Agent to make such payments after the beginning of the term of this Agreement, Agent shall have the authority to name a new contingency reserve amount pursuant to paragraph 2.1.1 of this Agreement, and Owner shall maintain this new contingency reserve amount at all times in the Operating (and/or) Reserve Account(s).

### 4.3 Net Proceeds

*removed*

To the extent that funds are available, and after maintaining the cash contingency reserve amount as specified in paragraph 2.1.1, Agent shall transmit cash balances to Owner periodically, as follows:  monthly.  Such periodic cash balances shall be remitted to the following person(s), in the percentage(s) specified, and at the address(es) shown:

| Name | % | Address |
|------|---|---------|
| _____ | ____ | _____ |

‗        ‗   ‗

_____ ____ _____

‗        ‗   ‗

_____ ____ _____

‗        ‗   ‗

_____ ____ _____

‗        ‗   ‗

## SECTION 5 AGENT NOT REQUIRED TO ADVANCE FUNDS

In the event that the balance in the Operating (and/or) Reserve Account(s) is at any time insufficient to pay disbursements due and payable under paragraphs 4.1 and 4.2 above, Owner shall, immediately upon notice, remit to Agent sufficient funds to cover the deficiency and replenish the contingency reserve. In no event shall Agent be required to use its own funds to pay such disbursements. Nor shall Agent be required to advance any monies to Owner, to the Security Deposit Account, or to the Operating (and/or) Reserve Account(s).

If Agent elects to advance any money in connection with the Premises to pay any expenses for Owner, such advance shall be considered a loan subject to repayment with interest, and Owner hereby agrees to reimburse Agent, including interest as provided in paragraph 17.7, and hereby authorizes Agent to deduct such amounts from any monies due Owner.

## SECTION 6 FINANCIAL AND OTHER REPORTS

*changed to 20 days*

By the tenth day of each month, Agent shall furnish Owner with a statement of cash receipts and disbursements from the operation of the Premises during the previous month. In addition, Agent shall, on a mutually acceptable schedule, prepare and submit to Owner such other reports as are agreed on by both parties.

*removed*

**It is important for the Owner to review these statements <u>each</u> month. Monthly reports are held open to correct errors for 90 days, and then become final, subject to an annual audit that may be required by the Owner per paragraph 6.1.**

**6.1 Owner's Right To Audit**

Owner shall have the right to request periodic audits of all applicable accounts managed by Agent, and the cost of such audit(s) shall be paid by Owner.

## SECTION 7 ADVERTISING

Agent is authorized to advertise the Premises or portions thereof for rent, using periodicals, signs, plans, brochures, or displays, or such other means as Agent may deem proper and advisable. Agent is authorized to place signs on the Premises advertising the Premises for rent, provided such signs comply with applicable laws. The cost of such advertising shall be paid out of the Operating (and/or) Reserve Account(s). All advertising shall make clear that Agent is the manager and NOT the Owner of the Premises. Newspaper ads that share space with other properties managed by the Agent shall be prorated based on: **Actual lineage of the ad devoted to the Owner's property plus a prorated share of any headlines and/or signature lines.** *removed*

## SECTION 8 LEASING AND RENTING

**8.1 Agent's Authority To Lease Premises**

Agent shall use all reasonable efforts to keep the Premises rented by procuring tenants for the Premises. Agent is authorized to negotiate, prepare, and execute all leases, including all renewals and extensions of leases (and expansions of space in the Premises, if applicable) and to cancel and modify existing leases. Agent shall execute all leases as agent for the Owner. All costs of leasing shall be paid out of the Operating (and/or) Reserve Account(s). No lease shall be in excess of _____ year(s) without written approval by Owner. The form of the lease shall be agreed upon by Owner and Agent.

**8.2 No Other Rental Agent**

During the term of this Agreement, Owner shall not authorize any other person, firm or corporation to negotiate or act as leasing or rental agent with respect to any lease for space in the Premises. Owner agrees to promptly forward all inquiries about leases to Agent.

**8.3 Rental Rates**

Agent is authorized to establish and change or revise all rents, fees, or deposits, and any other charges chargeable with respect to the Premises.

## 8.4 Enforcement of Leases

Agent is authorized to institute, in Owner's name, all legal actions or proceedings for the enforcement of any lease term, for the collection of rent or other income from the Premises, or for the evicting or dispossessing of tenants or other persons from the Premises. Agent is authorized to sign and serve such notices as Agent deems necessary for lease enforcement, including the collection of rent or other income. Agent is authorized, when expedient, to settle, compromise, and release such legal actions or suits or reinstate such tenancies. Any monies for such settlements paid out by Agent shall not exceed $ _____ without prior approval by Owner. Attorneys' fees, filing fees, court costs, and other necessary expenses incurred in connection with such actions and not recovered from tenants shall be paid out of the Operating (and/or) Reserve Account(s) or reimbursed directly to Agent by Owner. Agent may select the attorney of its choice to handle such litigation.

## SECTION 9 EMPLOYEES

## 9.1 Agent's Authority to Hire

Agent is authorized to hire, supervise, discharge, and pay all servants, employees, contractors, or other personnel necessary to be employed in the management, maintenance, and operation of the Premises. All employees shall be deemed employees of the Owner, and Agent shall not be liable to Owner or others for any act or omission on the part of such employees. *charged to Partnership / Agent*

## 9.2 Owner Pays Employee Expenses

All wages and fringe benefits payable to such employees hired per paragraph 9.1 above, and all local, state, and federal taxes and assessments (including but not limited to Social Security taxes, unemployment insurance, and workers' compensation insurance) incident to the employment of such personnel, shall be paid by Agent out of the Operating (and/or) Reserve Account(s). *and shall be treated as operating expenses. Agent shall not be liable to such employees for their wages or compensation.*

## 9.3 Agent's Authority to File Returns

Agent shall do and perform all acts required of an employer with respect to the Premises and shall

execute and file all tax and other returns required under the applicable federal, state, and local laws, regulations, and/or ordinances governing employment, and all other statements and reports pertaining to labor employed in connection with the Premises and under any similar federal or state law now or hereafter in force.  In connection with such filings, Owner shall upon request promptly execute and deliver to Agent all necessary powers of attorney, notices of appointment, and the like.  Owner shall be responsible for all amounts required to be paid under the foregoing laws, and Agent shall pay the same from the Operating (and/or) Reserve account(s).

**9.4 Workers' Compensation Insurance**

Agent shall, at Owner's expense, maintain workers' compensation insurance covering all liability of the employer under established workers' compensation laws.

**9.5 Hold Harmless, Labor Laws**

Agent shall be responsible for compliance with all applicable state or federal labor laws.  Owner shall indemnify, defend, and save Agent harmless from all claims, investigations, and suits, or from Owner's actions or failures to act, with respect to any alleged or actual violation of state or federal labor laws.  Owner's obligation with respect to such violation(s) shall include payment of all settlements, judgments, damages, liquidated damages, penalties, forfeitures, back pay awards, court costs, litigation expenses, and attorneys' fees.

**SECTION 10 MAINTENANCE AND REPAIR**

Agent is authorized to make or cause to be made, through contracted services or otherwise, all ordinary repairs and replacements reasonably necessary to preserve the Premises in its present condition and for the operating efficiency of the Premises, and all alterations required to comply with lease requirements, governmental regulations, or insurance requirements.  Agent is also authorized to decorate the Premises and to purchase or rent, on Owner's behalf, all equipment, tools, appliances, materials, supplies, uniforms, and other items necessary for the management, maintenance, or operation of the Premises.  Such maintenance and decorating expenses shall be paid out of the Operating (and/or) Reserve Account(s).  This section applies except where decorating and/or maintenance are at tenants' expense as stipulated in a lease.

**10.1 Approval For Exceptional Maintenance Expense**

The expense to be incurred for any one item of maintenance, alteration, refurbishing, or repair shall not exceed the sum of $ _____, unless such expense is specifically authorized by Owner, or is incurred under such circumstances as Agent shall reasonably deem to be an emergency.  In an emergency where repairs are immediately necessary for the preservation and safety of the Premises, or to avoid the suspension of any essential service to the Premises, or to avoid danger to life or property, or to comply with federal, state, or local law, such emergency repairs shall be made by Agent at Owner's expense without prior approval.

## SECTION 11 CONTRACTS, UTILITIES AND SERVICES

Agent is authorized to negotiate contracts for nonrecurring items of expense, not to exceed $ _____ unless approved by Owner, and to enter into agreements in Owner's name for all necessary repairs, maintenance, minor alterations, and utility services.  Agent shall, in Owner's name and at Owner's expense, make contracts on Owner's behalf for electricity, gas, telephone, fuel, or water, and such other services as Agent shall deem necessary or prudent for the operation of the Premises.  All utility deposits shall be the Owner's responsibility, except that Agent may pay same from the Operating (and/or) Reserve Account(s) at Owner's request.

## SECTION 12 RELATIONSHIP OF AGENT TO OWNER

The relationship of the parties to this Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Owner, in Owner's name, and for Owner's account.  In taking any action under this Agreement, Agent shall be acting only as Agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with the ownership or operation of the Premises.  Nor shall Agent at any time during the period of this Agreement be considered a direct employee of Owner.  Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

## SECTION 13 SAVE HARMLESS

Owner shall indemnify, defend, and save Agent harmless from all loss, damage, cost, expense (including attorneys' fees), liability, or claims for personal injury or property damage incurred or occurring in, on, or about the Premises.

## SECTION 14 LIABILITY INSURANCE

Owner shall obtain and keep in force adequate insurance against physical damage (e.g., fire with extended coverage endorsement, boiler and machinery, etc.) and against liability for loss, damage, or injury to property or persons which might arise out of the occupancy, management, operation, or maintenance of the Premises.  The amounts and types of insurance shall be acceptable to both Owner and Agent, and any deductible required under such insurance policies shall be Owner's expense.  Agent shall be covered as an additional insured on all liability insurance maintained with respect to the Premises.  Liability insurance shall be adequate to protect the interests of both Owner and Agent and in form, substance, and amounts reasonably satisfactory to Agent.  Owner agrees to furnish Agent with certificates evidencing such insurance or with duplicate copies of such policies within 30 days of the execution of this Agreement.  If Owner fails to do so, Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the Operating (and/or) Reserve Account(s).  Said Policies shall provide that notice of default or cancellation shall be sent to Agent as well as Owner and shall require a minimum of 30 days' written notice to Agent before any cancellation of or changes to said policies.

*changed to 10*

*Changed to 60*

## SECTION 15 AGENT ASSUMES NO LIABILITY

Agent assumes no liability whatsoever for any acts or omissions of Owner, or any previous owners of the Premises, or any previous management or other agent of either.  Agent assumes no liability for any failure of or default by any tenant in the payment of any rent or other charges due Owner or in the performance of any obligations owed by any tenant to Owner pursuant to any lease or otherwise.  Nor does Agent assume any liability for previously unknown violations of environmental or other regulations which may become known during the period this Agreement is in effect.  Any such regulatory violations or hazards discovered by Agent shall be brought to the attention of Owner in writing, and Owner shall promptly cure them.

## SECTION 16 OWNER RESPONSIBLE FOR ALL EXPENSES OF LITIGATION

Owner shall pay all expenses incurred by Agent, including, but not limited to, reasonable attorneys' fees and Agent's costs and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding, or suit involving an alleged violation by Agent or Owner, or both, of any law pertaining to fair employment, fair credit reporting, environmental protection, rent control, taxes, or fair housing, including, but not limited to, any law prohibiting or making illegal discrimination on the basis of race, sex, creed, color, religion, national origin, or mental or physical handicap, provided, however, that Owner shall not be responsible to Agent for any such expenses in the event Agent is finally adjudged to have personally, and not in a representative capacity, violated any such law.  Nothing contained in this Agreement shall obligate Agent to employ legal counsel to represent Owner in any such proceeding or suit.

### 16.1 Fees for Legal Advice

Owner shall pay reasonable expenses incurred by Agent in obtaining legal advice regarding compliance with any law affecting the Premises or activities related to them.  If such expenditure also benefits others for whom Agent in this Agreement acts in a similar capacity, Owner agrees to pay an apportioned amount of such expense.

### SECTION 17 AGENT'S COMPENSATION AND EXPENSES

As compensation for the services provided by Agent under this Agreement (and exclusive of reimbursement of expenses to which Agent is entitled hereunder), Owner shall pay Agent as follows:

### 17.1 For Management Services

The greater of (i) $ _6,700_ per month or (ii) _3_ % of the total monthly gross _added_
receipts from the Premises, payable by the 25th day of the current month for the duration of this _changed to 20_
Agreement.  Payments due Agent for periods of less than a calendar month shall be prorated over the number of days for which compensation is due.  The percentage amount set forth in (ii) above shall be based upon the total gross receipts from the Premises during the preceding month.

The term "gross receipts" shall be deemed to include all rents and other income and charges from the normal operation of the Premises, including, but not limited to, rents, parking fees, laundry income, forfeited security deposits, pet deposits, other fees and deposits, and other miscellaneous income.  Gross receipts shall NOT be deemed to include the special charges listed in paragraph 3.2,

or excess interest on security deposits (from paragraph 3.3), or income arising out of the sale of real property or the settlement of fire or other casualty losses and items of a similar nature.

## 17.2 For Apartment Leasing

New 1 Year lease is ½ of 1st month's rent; Renewal of a 1 Year lease is ¼ of 1st month rent.  *removed*

New 6 Month lease is ¼ of 1st month's rent; Renewal 6 Month lease is 1/8 of 1st month rent.  *removed*

## 17.3 For Commercial Leasing

*Not applicable*

## 17.4 For Modernization (Rehabilitation/Construction) Repairs & Replacements

5% of the gross amount of any single contract or bill exceeding $ _____ will be charged for supervision, unless handled directly by the Owner.  *changed to $2k per unit*

## 17.5 For Fire Restoration

*Same as paragraph 17.4.*

## 17.6 For Other Items of Mutual Agreement

*removed*  The Agent is to have the privilege of re-writing any insurance, at competitive rates, on the property expiring during the life of this contract, but will not be held responsible for the writing of said insurance.  A company of comparable rating must be used.  The Owner understands that the Agent is directly involved as a partner in a full-line insurance agency.  At the Owner's direction, the Agent will secure competitive bids yearly.

*added*  *Bonus equal to 10% of annual fee as a result of 10% increase of gross receipts*

## 17.7 Interest on Unpaid Sums

Any sums due Agent under any provision of this Agreement, and not paid within 10 days after such sums have become due, shall bear interest at the rate of 10% per annum.  *changed to 30*

## SECTION 18 REPRESENTATIONS

Owner represents and warrants:  That Owner has full power and authority to enter this Agreement; that there are no written or oral agreements affecting the Premises other than tenant leases, copies of which have been furnished to Agent; that there are no recorded easements, restrictions, reservations, or rights of way which adversely affect the use of the Premises for the purposes intended under this Agreement; that to the best of Owner's knowledge, the property is zoned for the intended use; that all leasing and other permits for the operation of the Premises have been secured and are current; that the building and its construction and operation do not violate any applicable statutes, laws, ordinances, rules, regulations, orders, or the like (including, but not limited to, those pertaining to hazardous or toxic substances); that the building does not contain any asbestos, urea, formaldehyde, radon, or other toxic or hazardous substance; and that no unsafe condition exists.

## SECTION 19 STRUCTURAL CHANGES

Owner expressly withholds from Agent any power or authority to make any structural changes in any building, or to make any other major alterations or additions in or to any such building or to any equipment in any such building, or to incur any expense chargeable to Owner other than expenses related to exercising the express powers vested in Agent through this Agreement, without the prior written consent of the following person:

Name: _____

However, such emergency repairs as may be required because of danger to life or property, or which are immediately necessary for the preservation and safety of the Premises or the safety of the tenants and occupants thereof, or required to avoid the suspension of any necessary service to the Premises, or to comply with any applicable federal, state, or local laws, regulations, or ordinances, shall be authorized pursuant to paragraph 10.1 of this Agreement, and Agent shall notify Owner appropriately.

## SECTION 20 BUILDING COMPLIANCE

Agent does not assume and is given no responsibility for compliance of the Premises or any building thereon or any equipment therein with the requirements of any building codes or wit any statue, ordinance, law, or regulation of any government body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly any complaints, warnings, notices, summonses received by Agent relating to such matters.  Owner represents that to

the best of Owner's knowledge the Premises and all such equipment comply with all such requirements, and Owner authorizes Agent to disclose the ownership of the Premises to any such officials and agrees to indemnify and hold Agent, its representatives, servants, and employees, harmless of and from all loss, cost, expense, and liability whatsoever which may be imposed by reason of any present or future violation or alleged violation of such laws, ordinances, statues, or regulations.

## SECTION 21 TERMINATION

### 21.1 Termination by Either Party

This Agreement may be terminated by either Owner or Agent, with or without cause, at the end of the initial term or of any following term year upon the giving of 30 days' written notice prior to the end of said initial term or following term year. *Changed to 60*

### 21.2 Termination for Cause

Notwithstanding the foregoing, this Agreement shall terminate in any event, and all obligations of the parties hereunder shall cease (except as to liabilities or obligations which have accrued or arisen prior to such termination, or which accrue pursuant to paragraph 21.3 as a result of such termination, and obligations to insure and indemnify), upon the occurrence of any of the following events:

> (a) BREACH OF AGREEMENT – Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured.  HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

(b) FAILURE TO ACT, ETC. – In the event that any insurance required of Owner is not maintained without any lapse, or it is alleged or charged that the Premises, or any portion thereof, or any act or failure to act by Owner, its agent and employees with respect to the Premises, fails to comply with any law or regulation, or any order or ruling of any public authority, and Agent, in its sole discretion, considers that the action or position of Owner or its representatives with respect thereto may result in damage or liability to Agent, or disciplinary proceeding with respect to Agent's license, Agent shall have the right to terminate this Agreement at any time by written notice to Owner of its election to do so, which termination shall be effective upon the service of such notice.  Such termination shall not release the indemnities of Owner set forth herein.

(c) EXCESSIVE DAMAGE – Upon the destruction of or substantial damage to the Premises by any cause, or the taking of all or a substantial portion of the Premises by eminent domain, in either case making it impossible or impracticable to continue operation of the Premises.

(d) INADEQUATE INSURANCE – If Agent deems that the liability insurance obtained by Owner per section 14 is not reasonably satisfactory to protect its interest under this Agreement, and if Owner and Agent cannot agree as to adequate insurance, Agent shall have the right to cancel this Agreement upon the service of notice to Owner.

**21.3 Termination Compensation _____ Month Minimum**

If (i) Owner terminates this Agreement before the end of the initial term of any subsequent term year as provided in paragraph 21.1 above for any reason other than for a breach by Agent under paragraph 21.2(a) above, or if (ii) Agent terminates this Agreement for a breach by Owner under paragraph 21.2(a) above or pursuant to the provisions of paragraphs 21.2(b) or 21.2(d) above, then in any such event, Owner shall be obligated to pay Agent as liquidated damages an amount equal to the management fee earned by Agent, as determined under paragraph 17.1 above, for the calendar month immediately preceding the month in which the notice is given to Agent or to Owner, multiplied by the number of months and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred.  Such damages, plus any amounts

accruing to Agent prior to such termination, shall be due and payable upon termination of this Agreement.  To the extent that funds are available, such sums shall be payable from the Operating (and/or) Reserve Account(s).  Any amount due in excess of the funds available from the Operating (and/or) Reserve Account(s) shall be paid by Owner to Agent upon demand.

### 21.4 Owner Responsible For Payments

Upon termination of or withdrawal from this Agreement, Owner shall assume the obligations of any contract or outstanding bill executed by Agent under this Agreement for and on behalf of Owner and responsibility for payment of all unpaid bills.  In addition, Owner shall furnish Agent security, in an amount satisfactory to Agent, against any obligations or liabilities which Agent may have properly incurred on Owner's behalf under this Agreement.

Agent may withhold funds for ninety (90) days after the end of the month in which this Agreement is terminated, in order to pay bills previously incurred but not yet invoiced and to close accounts.  Agent shall deliver to Owner, within ninety (90) days after the end of the month in which this Agreement is terminated, any balance of monies due Owner or of tenant security deposits, or both, which were held by Agent with respect to the Premises, as well as a final accounting reflecting the balance of income and expenses with respect to the Premises as of the date of termination or withdrawal, and all records, contracts, leases, receipts for deposits, and other papers or documents which pertain to the Premises.

### 21.5 Sale of Premises

In the event that the Premises are sold by Owner during the period of this Agreement, Agent shall have exclusive rights of representation in the sale as stated in a specific sales agreement to be negotiated separately.  Upon transfer of ownership, this Agreement shall terminate by mutual consent of Owner and Agent under the terms and conditions set forth below.  **(See Addendum A)**

**In the event of any sale, the Agent shall receive a _____% sales commission based on the gross sales price.  This exclusive right-to-sell shall survive the termination of this agreement for 120 days.**

### SECTION 22 INDEMNIFICATION SURVIVES TERMINATION

All representations and warranties of the parties contained herein shall survive the termination of this Agreement.  All provisions of this Agreement that require Owner to have insured or to defend, reimburse, or indemnify Agent (including, but not limited to, paragraphs 2.1, 2.3, 5, 8.4, 9.2, 9.5, 13, 14, 15, 16, 17.7, 20, 21.3, and 21.4) shall survive any termination; and if Agent is or becomes involved in any proceeding or litigation by reason of having been Owner's Agent, such provisions shall apply as if this Agreement were still in effect.

## SECTION 23 HEADINGS

All headings and subheadings employed within this Agreement and in the accompanying List of Provisions are inserted only for convenience and ease of reference and are not to be considered in the construction or interpretation of any provision of this Agreement.

## SECTION 24 FORCE MAJEURE

Any delays in the performance of any obligation of Agent under this Agreement shall be excused to the extent that such delays are caused by wars, national emergencies, natural disasters, strikes, labor disputes, utility failures, governmental regulations, riots, adverse weather, and other similar causes not within the control of Agent, and any time periods required for performance shall be extended accordingly.

## SECTION 25 COMPLETE AGREEMENT

This Agreement, including any specified attachments, constitutes the entire agreement between Owner and Agent with respect to the management and operation of the Premises and supersedes and replaces any and all previous management agreements entered into or/and negotiated between Owner and Agent relating to the Premises covered by this Agreement.  No change to this Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent.  Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing.  Each party to this Agreement hereby acknowledges and agrees that the other party has made no warranties, representations, covenants, or agreements, express or implied, to such party, other than those expressly set forth herein, and that each party, in entering into and executing this Agreement, has relied upon no warranties, representations, covenants, or agreements, express or implied, to such

party, other than those expressly set forth herein.

## SECTION 26 RIGHTS CUMULATIVE; NO WAIVER

No right or remedy herein conferred upon or reserved to either of the parties to this Agreement is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given under this Agreement or now or hereafter legally existing upon the occurrence of an event of default under this Agreement.  The failure of either party to this Agreement to insist at any time upon the strict observance or performance of any of the provisions of this Agreement, or to exercise any right or remedy as provided in this Agreement, shall not impair any such right or remedy or be construed as a waiver or relinquishment of such right or remedy with respect to subsequent defaults.  Every right and remedy given by this Agreement to the parties to it may be exercised from time to time and as often as may be deemed expedient by those parties.

## SECTION 27 APPLICABLE  LAW AND PARTIAL INVALIDITY

The execution, interpretation, and performance of this Agreement shall in all respects be controlled and governed by the laws of the State of _____.  If any part of this Agreement shall be declared invalid or unenforceable, Agent shall have the option to terminate this Agreement by notice to Owner.

## SECTION 28 NOTICES

Any notices, demands, consents, and reports necessary or provided for under this Agreement shall be in writing and shall be addressed as follows, or at such other address as Owner and Agent individually may specify hereafter in writing:


Agent: _____

_____

_____

_____

Owner: _____

Mailing
Address: _____

_____

Contact
Phone: _____

Contact
Email: _____

Such notice or other communication may be mailed by United States registered or certified mail, return receipt requested, postage prepaid, and may be deposited in a United States Post Office or a depository for the receipt of mail regularly maintained by the post office. Such notices, demands, consents, and reports may also be delivered by hand or by any other receipted method or means permitted by law. For purposes of this Agreement, notices shall be deemed to have been "given" or "delivered" upon personal delivery thereof of forty-eight (48) hours after having been deposited in the United States mails as provided herein.

**SECTION 29 AGREEMENT BINDING UPON SUCCESSORS AND ASSIGNS**

This Agreement shall be binding upon the parties hereto and their respective personal representatives, heirs, administrators, executors, successors and assigns. *removed*

**Signatures**

IN WITNESS WHEREOF, the parties hereto have affixed or caused to be affixed their respective signatures this _____ day of _____, _____.

**Witnesses:** _____

**Owner:** _____

**Agent:** _____

_____

_____

**PRO By:** _____

**Submitted by:** _____

State of _____ )

County of _____ )

The foregoing instrument was acknowledged, subscribed and sworn before me this _____ day of _____, _____, by

_____.

My
Commission _____
Expires:

                    Notary Public

State of _____ )

County of _____ )

   The foregoing instrument was acknowledged, subscribed and sworn before me this _____ day of

_____, _____,

by _____.

My
Commission _____
Expires:

          Notary Public

Exhibit H

**James F. Proud Esq., P.C.**
25 E 2nd Street
Media, PA 19063
610-892-7700
jfproud@gmail.com


February 21, 2018

Via E-Mail: mediastation@verizon.net

Brooke P. Cottman
1015 Brooks Lane
Delray Beach, Florida 33483

   Re:  Proposed Loans from New York Community Bank
       to Media Station, L.P. and Tunbridge, L.P.

Dear Mr. Cottman:

  As you may be aware, I have recently been retained to replace Kevin Flynn as the Director of the Class A stock for Media Station, Inc., Tunbridge, Inc., Scarborough Mews, Inc. and Ventura, Inc. I am confident that we can work together in a positive and profitable relationship, and you can reach out to me anytime to discuss these businesses.

  I am familiar with the proposed loans from New York Community Bank to Media Station, L.P. and Tunbridge, L.P. As you know, my predecessor Kevin Flynn had reserved the right to approve the amount of the loan and other terms. Nevertheless, you have proceeded unilaterally by setting the loan amounts as well as the language of the note, mortgage and related loan documents. We learned yesterday that these loans were scheduled to close tomorrow, February 22, 2018, and that the last condition of the loan closing was the submission of the Ownership and I.D. Forms for Bodo Family of Media Limited Partnership, which need to be signed by Deborah Convery and Shirley Bodo. I am attaching those signed forms, and consent to their submission to the bank, provided that the following conditions are satisfied:

  1. AptRentz, LLC shall not receive payments or act as the construction manager or property manager. An independent construction manager shall be retained no later than March 6, 2018 to oversee the renovation projects and the spending of the loan proceeds, with full transparency being provided as to the spending of the loan proceeds. Branch Coslett and maintenance supervisor Richard Beckley met with and apparently approved of Bob Ellis as a prospective construction manager, and we would agree to Bob's appointment if you would also agree.

  2. No later than March 6, 2018, an independent advisor/director shall be appointed pursuant to Section 4.03(b) of the Bylaws.

1

3. Section 11.1(11) of the proposed Mortgages and section 14 of the Commitment Letters contain a representation and warranty that that there is no suit pending against or affecting the Borrower or any Principal of the Borrower (either direct or indirect), so these terms must be modified in light of the pending suit, or the suit must be discontinued before closing on the loans.

Provided that the above conditions are met, you are authorized to submit the attached forms to the bank, and to proceed with the closing on the loans.

I look forward to a very positive and profitable relationship going forward.

Very truly yours,

JAMES F. PROUD

cc:     Michael N. Onufrak, Esquire (w/encl.) (Via E-Mail: @whiteandwilliams.com)
        Guy N. Paolino, Esquire (w/encl.) (Via E-Mail: gpaolino@fbpdlaw.com)
        Dr. H. Branch Coslett (w/encl.) (Via E-Mail: hbc@mail.med.upenn.edu)
        Edward P. Lawlor, Esquire (w/encl.) (Via E-Mail: elawlor3@gmail.com)
        H. Fintan McHugh, Esquire (w/encl.) (Via E-Mail: hfm@petrikin.com)

Exhibit I

Brooke Cottman

July 30, 2018

<u>By E-Mail</u>

James F. Proud, Esquire
201 W. Front Street
Media, PA 19063

Dr. H. Branch Coslett
2003 Wallace Street
Philadelphia, PA 19130

**Re: Payments to AptRentz, LLC**

Gentlemen:

As you know, the Directors of Tunbridge and Scarborough Mews recently voted in favor of
paying AptRentz the past-due management and renovation fees owed under its contracts with
Tunbridge and Scarborough Mews.  The vote was 2-0 in favor of issuing the payments.  I note
that Jim Proud refused to vote despite serving as the Director for the Bodo family stockholders.
Please be advised that the payments have been made to AptRentz and the details should be
available on AppFolio.

With respect to Media Station, it was and is my position that the previous Director for the Bodo
family interests (Kevin Flynn) approved the AptRentz contract for Media Station.  The terms of
AptRentz's agreement with Media Station are similar to those in place for Tunbridge.  The total
past due management and renovation fees due AptRentz from Media Station is currently
$170,463.23.

Notwithstanding Kevin Flynn's prior approval of the AptRentz-Media Station agreement, in an
effort to avoid additional conflict I proposed that the current Directors of Media Station vote on
whether to authorize payment of the funds.  Despite my numerous pleas, as well as those of my
attorneys, Jim Proud refused to vote on the issue when it was raised at the meeting and has not
met with me or my attorneys to discuss this matter afterwards.  My attorney sent detailed
information about the AptRentz debt to Jim and offered to meet with him to resolve the issue.

At present, it is unclear whether Jim Proud intends to take action to discharge his duties as a
Director of Media Station.  It is also unclear whether Jim Proud is a full-fledged Director having
all of the powers, rights, and responsibilities bestowed upon a Director under Pennsylvania law.

Under the circumstances, I intend to pay the disputed sum of $170,463.23 into escrow on the first of August.

I ask Jim to call me or my attorney to resolve this issue.

Sincerely,


Brooke P. Cottman


cc:   Guy Paolino, Esquire
      Michael N. Onufrak, Esquire

Under the circumstances, I intend to pay the disputed sum of $170,463.23 into escrow on the first of August.

I ask Jim to call me or my attorney to resolve this issue.

Sincerely,

Brooke P. Cottman

cc:     Guy Paolino, Esquire
        Michael N. Onufrak, Esquire